Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

JAN 1 3 2025    11:57 pm

By: _____
Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 19-56304 |
| | : | |
| **SONJA WILLIAMS ROSS,** | : | CHAPTER 7 |
| Debtor.. | : | |
| vs. | : | |
| Craig A. Alexander., | : | |
| Respondent. | : | |

## REQUEST FOR CLERK'S ENTRY OF DEFAULT AGAINST RESPONDENT CRAIG ALEXANDER

**TO THE CLERK OF THE UNITED STATES BANKRUPTCY COURT:**

Pursuant to **Federal Rule of Civil Procedure 55(a),** made applicable to these proceedings by **Federal Rule of Bankruptcy Procedure 7055,** Movant Sonja Ross (formerly Williams), acting pro se, respectfully requests that the Clerk enter default against Respondent Craig Alexander for failure to plead or otherwise defend against the **Motion for Sanctions for Willful Violation of the Automatic Stay** (Docket #229), filed on **December 18, 2024.**

## 1. Procedural History

1. **Filing of the Motion for Sanctions:**
    - o On December 18, 2024, Movant filed the **Motion for Sanctions for Willful Violation of the Automatic Stay** (Docket #229) against Craig Alexander and Delta Air Lines, Inc., alleging violations of **11 U.S.C. § 362(a).**
2. **Service of the Motion:**
    - o Respondent Craig Alexander was properly served with the Motion via:
        - ■ **Email** to his attorney of record on December 18, 2024.

- ■ **U.S. Mail** to his Attorney address, at The Ellis Firm, Ste 1500
  3500 Lenox Road Atlanta, GA 30326 and
- ■ **Notice filed in the related state court proceedings on December 20, 2024.**
- ■ **Alexander's Attorney of record filed into the case on November 24, 2024 (DKT No. 220) of which would have also gotten notice.**
  - ○ Proof of service is attached hereto as **Exhibit A**.
3. **Delta Air Lines' Response:**
   - ○ On **December 30, 2024**, Delta Air Lines, Inc. filed a timely response to the Motion for Sanctions, engaging in the litigation and addressing the allegations.
4. **Craig Alexander's Failure to Respond:**
   - ○ Despite proper service, Craig Alexander has failed to file any response, objection, or other pleading by the deadline provided under the **Federal Rules of Bankruptcy Procedure** and this Court's local rules.
   - ○ As of the date of this Request, Craig Alexander has not appeared, pleaded, or otherwise defended against the allegations in the Motion for Sanctions.
5. **Court's Reaffirmation of Jurisdiction and Automatic Stay:**
   - ○ On **December 13, 2024**, this Court reopened the bankruptcy case, reaffirmed its **exclusive jurisdiction** over QrewLive™ under **28 U.S.C. § 1334(e)**, and reinstated the automatic stay pursuant to **11 U.S.C. § 362(a)**.

## 2. Legal Basis for Entry of Default

Under **Federal Rule of Civil Procedure 55(a)**:

> *When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.*

In this case:

1. **Proper Service:** Craig Alexander was properly served, as evidenced by the attached proof of service (Exhibit A), which confirms compliance with **Federal Rule of Bankruptcy Procedure 7004** and **9014(b)**.

2. **Failure to Respond:** Despite having actual and constructive notice of the Motion for Sanctions, Craig Alexander has failed to respond or defend within the time allowed by law.

3. **Mandatory Default Entry:** The Clerk must enter default when the requirements of Rule 55(a) are met (*New York Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir. 1996)).

## 3. Delta's Timely Response as Contrast

Delta Air Lines, Inc. filed a timely response on December 30, 2024, demonstrating its engagement with the allegations raised in the Motion for Sanctions. In contrast, Craig Alexander's failure to respond further highlights his disregard for this Court's jurisdiction and the claims brought against him. This inaction constitutes grounds for default.

## 4. Relief Requested

Movant respectfully requests that the Clerk:

1. **Enter default** against Craig Alexander pursuant to **Federal Rule of Civil Procedure 55(a)** for his failure to plead or otherwise defend against the **Motion for Sanctions for Willful Violation of the Automatic Stay** (Docket #229).

2. **Confirm entry of default** to allow Movant to proceed with a motion for default judgment against Craig Alexander.

Respectfully submitted this 13th day of January, 2025.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

Sonja Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com

**Debtor, Acting Pro Se**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 19-56304** |
| | : | |
| **SONJA WILLIAMS ROSS,** | : | **CHAPTER 7** |
| **Debtor..** | : | |
| vs. | : | |
| **Craig A. Alexander.,** | | : |
| **Respondent.** | : | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on **January 13, 2025**, a true and correct copy of the foregoing **Request for Clerk's Entry of Default** was served via email upon the following parties:

**Willie C. Ellis, Jr.**
Ellis Legal Group LLC
*Attorney for Craig Alexander*
The Ellis Firm, Ste 1500
3500 Lenox Road
Atlanta, GA 30326
will@call-ellis.com

**Office of the United States Trustee**
Northern District of Georgia
75 Ted Turner Drive SW, Room 362
Atlanta, GA 30303

Weidenbaum, David S. (USTP)
David.S.Weidenbaum@usdoj.gov

S. Gregory Hays
2964 Peachtree Road, NW Suite 555
Atlanta, GA 30302 -2153
ghays@haysconsulting.net

Respectfully submitted this 13th day of January, 2025.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

Sonja Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com

**Debtor, Acting Pro Se**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | **:** | **CASE NO. 19-56304** |
| | **:** | |
| **SONJA WILLIAMS ROSS,** | **:** | **CHAPTER 7** |
| **Debtor..** | **:** | |
| vs. | **:** | |
| **Craig A. Alexander.,** | **:** | |
| **Respondent.** | **:** | |

**REQUEST FOR CLERK'S ENTRY OF DEFAULT AGAINST**
**RESPONDENT CRAIG ALEXANDER**
**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 19-56304** |
| | : | |
| **SONJA NICOLE WILLIAMS** | : | **CHAPTER 7** |
| | : | |
| **Debtor.** | : | |

## MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AGAINST DELTA AIR LINES, INC. AND CRAIG ALEXANDER

**COMES NOW** the Debtor, Sonja Ross, formerly Williams (hereinafter "Debtor"), acting pro se, and respectfully submits this **Motion for Sanctions for Willful Violation of the Automatic Stay** pursuant to **11 U.S.C. § 362(k)** against Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander"). This Motion seeks redress for specific and deliberate violations of the automatic stay committed by the Defendants during the Debtor's Chapter 7 bankruptcy proceedings. These violations directly interfered with the protections afforded under **11 U.S.C. § 362(a)** and caused significant personal harm to the Debtor, including:

- Financial loss,
- Emotional distress,
- Reputational damage, and
- Procedural inequities.

At the time of the violations, **QrewLive™**, the Debtor's proprietary aviation trade secret, intellectual property, and confidential technology, was property of the bankruptcy estate under **11 U.S.C. § 541(a)** and subject to this Court's exclusive jurisdiction. Both Delta and Alexander acted with actual and constructive knowledge of the Debtor's bankruptcy filing and the automatic stay. Nevertheless, their actions—taken without leave or authorization from this Court—violated federal bankruptcy law and disrupted the orderly administration of the estate.

This Motion is narrowly tailored and does not interfere with or usurp the Chapter 7 Trustee's authority to administer estate property, including **QrewLive™**, or to pursue claims on behalf of the estate. Instead, the Debtor seeks redress for **personal harm** arising directly from the Defendants' willful violations of the automatic stay. The harms asserted here are distinct from claims involving the estate's value and include:

- Emotional distress,
- Reputational damage, and
- The burdens of litigation caused by the Defendants' unlawful conduct.

**WHEREFORE**, the Debtor respectfully requests that this Honorable Court:

1. Impose sanctions on Delta Air Lines, Inc. and Craig Alexander for their willful violations of the automatic stay;
2. Award compensatory damages to address the financial and personal harm caused by Defendants' actions;
3. Award punitive damages to deter future violations and uphold the protections of federal bankruptcy law; and
4. Grant such other relief as deemed just and proper to remedy the harm caused by Defendants' egregious conduct.

## I. INTRODUCTION

This motion arises from the deliberate and willful violations of the automatic stay imposed by 11 U.S.C. § 362(a) by Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") during the Debtor's Chapter 7 bankruptcy proceedings. The automatic stay is one of the most fundamental protections afforded to bankruptcy debtors, ensuring a temporary pause in creditor actions and any interference with property of the bankruptcy estate. The Defendants' conduct—undertaken with actual and constructive knowledge of the Debtor's bankruptcy filing—flagrantly disregarded these protections, undermining both the integrity of the bankruptcy process and the Debtor's rights under federal law.

The automatic stay safeguards procedural integrity by ensuring that estate property is administered exclusively under the supervision of the Bankruptcy Court. Defendants' willful violations undermined this integrity, disrupting the orderly administration of justice.

At the time of the Defendants' actions, QrewLive™, a proprietary aviation trade secret, intellectual property, and confidential technology developed by the Debtor, was property of the bankruptcy estate under 11 U.S.C. § 541(a). As estate property, QrewLive™ was subject to the exclusive jurisdiction of the Bankruptcy Court. Despite this, Delta and Alexander engaged in actions that sought to assert control over QrewLive™ and its derivative functionalities, including through:

- **State Court Litigation**: Alexander initiated litigation in state court asserting ownership of QrewLive™ without authorization from the Bankruptcy Court or the Chapter 7 Trustee, directly interfering with estate property. Delta actively facilitated or failed to intervene in this litigation, further enabling Alexander's unauthorized actions.
- **Commercial Exploitation**: Delta developed and deployed the Flight Family Communication ("FFC") platform, incorporating proprietary functionalities derived from QrewLive™ without Court approval, generating significant operational and financial benefits.
- **Other Unauthorized Actions**: The Defendants engaged in additional conduct that interfered with the orderly administration of the estate and violated the automatic stay.

These actions were taken with both actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ as estate property. Despite these protections, the Defendants knowingly acted in contravention of the automatic stay, demonstrating a disregard for their legal obligations under 11 U.S.C. § 362(a).

This motion does not infringe upon the Chapter 7 Trustee's authority to administer estate property or pursue claims on behalf of the estate. Instead, it seeks redress for distinct, personal harms suffered by the Debtor due to the Defendants' willful violations, including:

- **Emotional Distress**: The Debtor experienced significant emotional harm, including anxiety, sleeplessness, and mental anguish, due to unauthorized litigation and the exploitation of her proprietary technology.
- **Financial Harm**: Delta's unauthorized use of QrewLive™ resulted in significant financial loss to the bankruptcy estate, including lost licensing revenue and avoided development costs. The Debtor also incurred substantial legal fees defending against Alexander's baseless claims during the automatic stay.
- **Reputational Damage**: Delta's unauthorized commercialization of QrewLive™ without attribution and Alexander's assertions of personal ownership damaged the Debtor's professional credibility and diminished future business opportunities.

The Debtor's personal claims are distinct from the estate's value and reflect independent harm suffered due to the Defendants' egregious conduct. The automatic stay is intended to shield not only estate property but also the debtor from precisely this type of improper conduct.

Through this motion, the Debtor respectfully requests that this Court impose sanctions on Delta and Alexander for their willful violations of the automatic stay under 11 U.S.C. § 362(k). These sanctions should include:

1. **Compensatory Damages**: To address the financial and personal harm caused by the Defendants' actions.
2. **Punitive Damages**: To deter future violations and uphold the protections of federal bankruptcy law.
3. **Any Other Relief**: Deemed just and proper to remedy the harm caused by the Defendants' egregious conduct.

By addressing these violations, this Court will reinforce the importance of procedural safeguards, deter similar violations in future bankruptcy cases, and preserve public trust in the integrity of the judicial process.

## II. FACTUAL BACKGROUND

### A. The Debtor's Bankruptcy Filing

On April 23, 2019, the Debtor, Sonja Ross (formerly Williams), filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Georgia. This filing triggered the automatic stay under 11 U.S.C. § 362(a), which prohibited all actions to obtain possession of, or exercise control over, property of the bankruptcy estate without authorization from the Court.

As part of the bankruptcy proceedings, QrewLive™—the Debtor's proprietary aviation trade secret, intellectual property, and confidential technology—was explicitly listed as property of the estate under 11 U.S.C. § 541(a). Prior to bankruptcy, Qrewlive became a part of a larger business strategy, under Skyvier, Inc., in 2016 (an aviation industry related company); Debtor accepted a $50,000 loan; Debtor obtained a $10,000,000.00 investment commitment, which Debtor declined at closing to due to but not limited to terms and value of Debtor's collective technology properties. QrewLive™ is a valuable intellectual property asset with significant commercial potential and was subject to the exclusive jurisdiction of the Bankruptcy Court during the bankruptcy case.

The Chapter 7 Trustee was tasked with the exclusive authority to administer the estate, including any claims or rights associated with QrewLive™. As such, any litigation, development, or use of QrewLive™ required prior approval from either the Bankruptcy Court or the Trustee. Upon information and belief, because of Qrewlive, Alexander *and* Delta have launched a tool chest of technology inspired by and ripped directly from Qrewlive's playbook.

**B. Defendants' Knowledge of the Bankruptcy Filing**

Both Defendants, Delta Air Lines, Inc. and Craig Alexander, had actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the bankruptcy estate:

1. **Craig Alexander**:
   o As a former business associate of the Debtor and Debtor child's father, Alexander executed a Mutual Confidentiality Agreement (NDA) with Delta Air Lines, Inc. on August 22, 2016 under his company named, MABA Holdings, LLC. The NDA

explicitly identified QrewLive™ as proprietary and confidential and acknowledged its status as the "sole and exclusive property" of the Debtor.

- ○ Alexander's direct involvement in QrewLive™'s development and the NDA process provided him firsthand knowledge of its proprietary and estate-protected status.

2. **Delta Air Lines, Inc.**:
   - ○ Delta Air Lines executed the same NDA with Alexander and MABA Holdings, LLC., which clearly described QrewLive™ as proprietary and confidential. This agreement restricted the use of QrewLive™ to authorized purposes.
   - ○ Delta's ongoing relationship with Alexander and involvement in the litigation asserting control over QrewLive™ demonstrates its knowledge of the bankruptcy case and the platform's inclusion as an estate asset.
   - ○ Additionally, the public nature of bankruptcy filings provided constructive notice to both Defendants of the automatic stay and QrewLive™'s estate-protected status.

3. **Mental Impressions and Delta's Violation of the NDA Terms**

   Delta Air Lines entered into a Non-Disclosure Agreement (NDA) with MABA Holdings, LLC., (acting as Debtor's Agent) explicitly acknowledging QrewLive™ as proprietary and confidential technology. This agreement imposed strict restrictions on the use of QrewLive™, limiting it to authorized purposes and prohibiting its misappropriation. Despite these clear obligations, Delta leveraged mental impressions and concepts derived from QrewLive™ to develop its own technology, a direct violation of the NDA.

   Delta's internal policies further compound the significance of this violation. Under its supplier protocols, Delta was obligated to disclose to vendors if similar technology already existed which it inferred from its own *Ethics and Compliance* policy. However, Delta's blatant theft of Qrewlive from Debtor's bankruptcy estates chalks up to corporate greed, as Delta neither possessed comparable technology nor the foundational ideas behind QrewLive™, as evidenced by Delta and Alexander historical actions:

   - **2013: Delta** Announces a $140 Million Investment in Technology
     - ■ Delta lacked role-based text messaging technology.

- **2013: Alexander** received Debtor's Property, Qrewlive for Delta Pitch.
- **2014: Alexander** chance cockpit presentation to then-CEO Richard Anderson.
- **2014 (May 28, 2014): Delta** officially received Qrewlive documentation.
    - Delta provided its 5 Yr IT Plan to retro fit Qrewlive into their plans.
- **2014 (June 10, 2014):** Qrewlive is showcased again to Delta. Delta requested a Prototype of QTalk feature.
- **2014 (August):** AKQA, Designs Fly Delta App - Employee worked at ShockTheory (Debtor Tech Company) prior to arriving at AKQA. (14 years ago).
- **2015 (February 26, 2015):** An unauthorized version of Qrewlive/QTalk was presented to Delta by Alexander.
- **2016 (April):** Delta indicated Qrewlive was not a "good fit" and did not have the resources (after the Company that boasts of annual profits in excess of $5 billion and recently announced a $140 million investment in new tech.)
- **2016 (May): Delta** names new CEO, Edward Bastian who confirmed Delta still needed (Qrewlive) text messaging capabilities.
- **2016 (August): Delta** received detailed information on Qrewlive, signed NDA August 2016. Unleashing a treasure trove of confidential information and trade secrets.
- **2016 (August): Alexander** sued Debtor and her company ShockTheory *for ownership of* Qrewlive based upon a two year old Professional Service Agreement; Debtor filed bankruptcy. Alexander failed to follow up on his lawsuit, subsequently the lawsuit case file was administratively closed for lack of action.
- **2016 (September):** Delta floats the idea of buying Qrewlive, and leans into its requirement for Supply Chain Management, but never directs Alexander to become a vendor.
- **2016 (October): Delta goes dark.** *Upon information and belief,* **Delta** went dark on **Alexander**, while in Development. Sky Pro Tablet app, an estimated two-year development process. Refuse questions about Qrewlive integration.
- **2017 (April) TECH LAUNCH:** Delta *discreetly* introduced its "SkyPro Tablet App" to flight attendants, deliberately bypassing Alexander, and Delta Pilot to avoid scrutiny or association with QrewLive™.

- **2017 (May 24, 2017): Delta** shares Qrewlive did not fit a need. Upon information and belief, Delta hires BlueFletch, Tech company to build Qrewlive/FFC.
- **2018 (April) TECH LAUNCH: Delta** *quietly* launched the "Flight Family Communication" ("FFC") platform, enabling real-time digital communication among flight crews—a feature central to QrewLive™'s proprietary design.
- **2018 (November) - Present: Alexander** forced to use FFC (aka "Qrewlive") as a Pilot.
- **November 2018: Delta** posted a public announcement of Flight Family Communication on its website. Does not support it with media buys and advertisements, like other announcements.
    - *Delta reported a 45 percent decrease in the amount of time Delta employees spent traversing the jet bridge to talk with one another, a benefit to 50 percent of all Delta departures, and a 65 percent jump in the ability to depart on time when a team has less than the minimum allotted time to push out.*
- **2021: Alexander**, *as an* **individual,** *sued* **Delta Air Lines** for a ***billion dollars***. Never tell the child's mother, inventor ("Debtor") about Delta's theft Qrewlive.
- **2022:** Debtor reformulated Qrewlive™ on Skyvier's blockchain.
- **2023: Delta** concealed Flight Family Communication announcement and blocks public view of its highly successful outcomes using stolen intellectual property.
- **2023: Delta** served Debtor through Alexander's Attorney, Keenan Nix Reproduction of Documents.
- **2024  (April) TECH LAUNCH: Delta** updated its "Fly Delta 6.0" app, *intuitively embedding* and *incorporating* functionalities directly inspired by QrewLive™, enhancing user experience and operational efficiency.
- **2024:** Debtor forced to file for trademarks, provisional patents revealing trade secrets.

Delta's actions demonstrate a calculated strategy to exploit pre-petition ***and*** post-petition QrewLive™'s proprietary concepts and transform them into unauthorized applications, violating the NDA's core terms and the trust inherent in such agreements.

Furthermore, Delta Air Lines' broader business practices underscore this deliberate misappropriation. Delta launched its Supplier Diversity Portal on December 1, 2009, a

collaborative effort with CVM Solutions, LLC., designed to facilitate partnerships with small, minority, and women-owned businesses. However, Delta did not invite MABA Holdings, LLC., or its principal, Captain Craig A. Alexander (a full-time Delta pilot and a non-technological professional), to register in this portal—a standard protocol for potential suppliers under Delta's Supplier Code of Conduct.

Delta was acutely aware that Alexander lacked the capacity to deliver an enterprise-level platform like QrewLive™, given his role as a full-time pilot and the fact that MABA Holdings, LLC. functioned solely as a holding company. Despite this, Delta engaged with Alexander and QrewLive™ over a two-year period, executing an NDA while simultaneously avoiding the application of its supplier protocols. This omission was a deliberate attempt to retain control over QrewLive™'s concepts and derivatives without the oversight that formal supplier registration would have required.

**Key Takeaways:**

1. **Violation of NDA Terms:** Delta's development of technology based on mental impressions derived from QrewLive™ demonstrates a breach of its confidentiality obligations under the NDA.
2. **Pattern of Misappropriation:** The timeline of Delta's technology rollouts aligns closely with features inherent to QrewLive™, evidencing intentional and systematic exploitation of proprietary information.
3. **Deceptive Business Practices:** Delta bypassed its own Supplier Diversity protocols, sidestepping ethical supplier engagement processes and concealing its actions to misappropriate QrewLive™ for its own benefit.

These covert actions reveal a calculated disregard for the protections afforded by the NDA, as well as a broader strategy to misappropriate QrewLive™ while avoiding accountability. Delta's actions undermine trust in NDAs, ethical supplier relations, and the protection of proprietary innovations, demonstrating a deliberate and bad-faith exploitation akin to theft in the night..

## C. Defendants' Actions Violating the Automatic Stay

Despite their knowledge of the bankruptcy filing and the automatic stay, the Defendants engaged in the following actions that violated 11 U.S.C. § 362(a):

1. **Unauthorized State Court Litigation Involving QrewLive™**:
   - In July 2021, Alexander initiated litigation in state court asserting personal ownership of QrewLive™ without seeking authorization from the Bankruptcy Court or the Chapter 7 Trustee.
   - Delta actively facilitated or failed to intervene in this litigation, enabling its employee, Alexander to assert control over estate property in violation of the automatic stay.

2. **Commercial Exploitation of QrewLive™ Functionalities**:
   - During the pendency of the bankruptcy, Delta developed and deployed the Flight Family Communication ("FFC") platform, which incorporated key features and functionalities derived directly from QrewLive™, including:
     - **Real-time Role-Based Communication Tools**: To streamline crew coordination.
     - **Irregular Operations (IROPs) Management**: Tools designed to improve situational awareness and address operational inefficiencies.
     - **Workflow Efficiencies**: Consistent with QrewLive™'s proprietary design.
   - Delta's public disclosures highlight these functionalities, demonstrating their direct reliance on QrewLive™'s capabilities.

3. **Failure to Seek Court Authorization**:
   - Neither Delta nor Alexander sought permission from the Bankruptcy Court or the Chapter 7 Trustee to litigate, develop, or use QrewLive™ during the automatic stay. These actions constituted an unauthorized exercise of control over estate property, in direct violation of 11 U.S.C. § 362(a)(3).

The Defendants' unauthorized actions disrupted the procedural safeguards guaranteed under federal bankruptcy law, caused harm to the bankruptcy estate, and imposed substantial burdens on the Debtor.

**D. Harm Caused to the Debtor**

The Defendants' willful violations of the automatic stay caused significant harm to the Debtor, including:

1.  **Financial Harm**:
    - The Debtor incurred substantial legal fees defending against Alexander's unauthorized litigation.
    - Delta's unauthorized use of QrewLive™ deprived the estate of significant licensing or monetization opportunities, with comparable platforms generating licensing revenues of approximately $10 million annually. Additionally, Delta avoided development costs estimated at $50 million by exploiting QrewLive™'s functionalities.

2.  **Emotional Distress**:
    - The Defendants' actions caused severe emotional harm to the Debtor, including anxiety, sleeplessness, and mental anguish. The stress of defending unauthorized litigation and the exploitation of her proprietary technology compounded the emotional toll of the bankruptcy process.

3.  **Reputational Damage**:
    - Delta's unauthorized commercialization of QrewLive™ without attribution and Alexander's baseless assertions of ownership undermined the Debtor's professional credibility as an innovator and entrepreneur. These actions have materially impacted her ability to secure future business opportunities.

4.  **Disruption of the Bankruptcy Process**:
    - The Defendants' actions delayed the Chapter 7 Trustee's ability to investigate and monetize QrewLive™ as an estate asset, further burdening the administration of the bankruptcy estate and reducing its value for creditors.

**E. Summary of Defendants' Violations**

The Defendants' actions demonstrate a pattern of willful and egregious disregard for federal bankruptcy law, including:

- **Delta Air Lines' Misconduct**: Unauthorized commercialization of QrewLive™ through the FFC platform, which leveraged estate property for substantial operational and financial gain.
- **Craig Alexander's Misconduct**: Unauthorized initiation of state court litigation and continued procedural misconduct, asserting control over QrewLive™ in violation of the automatic stay.
- **Failure to Seek Authorization**: Both Defendants failed to obtain approval from the Bankruptcy Court or the Trustee, undermining the orderly administration of the estate.

These violations caused substantial harm to the Debtor and the estate, necessitating sanctions to remedy the harm and deter future misconduct.

## III. LEGAL FRAMEWORK

The automatic stay, codified in **11 U.S.C. § 362(a)**, is a fundamental protection afforded to bankruptcy debtors. It prohibits creditors and other parties from taking actions that interfere with the debtor or property of the bankruptcy estate without prior authorization from the Bankruptcy Court. This provision ensures an orderly and equitable administration of the bankruptcy estate while shielding the debtor from unauthorized actions during the pendency of the case.

### A. The Purpose and Scope of the Automatic Stay

The automatic stay serves several critical purposes, including:

1. **Preservation of Estate Property:**
   - Ensures that all property of the bankruptcy estate remains under the jurisdiction of the Bankruptcy Court.
   - Prohibits creditors and third parties from taking possession of or exercising control over estate property without authorization.

2. **Protection of Debtor Rights:**
   - Shields the debtor from harassment, litigation, and other actions that could disrupt the bankruptcy process.

3. **Equitable Treatment of Creditors:**

○ Prevents creditors from pursuing individual remedies at the expense of other creditors, ensuring a fair and orderly resolution.

Under **11 U.S.C. § 362(a)**, the automatic stay applies broadly and prohibits actions including:

- "Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." (§ 362(a)(3))
- "Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." (§ 362(a)(6))

These provisions create a clear mandate: creditors and other parties must obtain express court approval before acting in any way that interferes with the property of the estate or the debtor's rights.

### B. Consequences of Violating the Automatic Stay

Actions taken in violation of the automatic stay are **void ab initio**, meaning they are invalid from the outset. Courts have consistently upheld this principle:

- **Kalb v. Feuerstein, 308 U.S. 433 (1940):** Reinforced that actions in violation of the automatic stay are null and without effect.
- **In re Schwartz, 954 F.2d 569 (9th Cir. 1992):** Established that violations of the automatic stay are automatically void unless ratified by the Bankruptcy Court.

Violations of the automatic stay disrupt the integrity of the bankruptcy process and subject violators to liability under federal law.

### C. Remedies for Violations of the Automatic Stay

Under **11 U.S.C. § 362(k)(1)**, a debtor injured by a willful violation of the automatic stay is entitled to recover damages. These include:

1. **Compensatory Damages:**
   ○ Actual financial losses, including legal fees and costs incurred due to the violation.

- Emotional distress damages, which are recoverable if the violation caused significant personal harm.
  - **In re Dawson, 390 F.3d 1139 (9th Cir. 2004):** Confirmed that emotional distress damages are appropriate for willful violations causing significant harm.

2. **Punitive Damages:**
   - Awarded in cases of egregious, reckless, or bad-faith violations to deter future misconduct.
     - **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003):** Punitive damages are justified when violations are particularly egregious or undertaken in bad faith.

## D. Criteria for a Willful Violation

A violation of the automatic stay is willful if:

1. The violator had **knowledge** of the bankruptcy filing.
2. The violator committed an **intentional act** that violated the stay, even if there was no intent to violate bankruptcy law.
   - **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999):** Clarified that willfulness requires only knowledge of the bankruptcy and intent to act, not intent to violate the law.

Both Delta Air Lines, Inc. and Craig Alexander had actual or constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the bankruptcy estate. Despite this, they engaged in deliberate actions to assert control over QrewLive™, violating the automatic stay.

## E. The Bankruptcy Court's Exclusive Jurisdiction

Under **28 U.S.C. § 1334(e)(1)**, the Bankruptcy Court has exclusive jurisdiction over all property of the estate. This authority extends to:

- Enforcing the automatic stay.

- Voiding unauthorized actions that interfere with estate property.
- Imposing sanctions and awarding damages to remedy harm caused by stay violations.

The Court's authority to protect the estate and the debtor from unauthorized interference underscores the critical importance of compliance with the automatic stay.

### F. Application to the Defendants' Actions

The actions of Delta Air Lines, Inc. and Craig Alexander constitute willful violations of the automatic stay under **11 U.S.C. § 362(k)**:

1. **Delta Air Lines, Inc.:**
    - Developed and commercialized the Flight Family Communication (FFC) platform, incorporating proprietary functionalities derived from QrewLive™, without Court approval.
    - These acts directly interfered with estate property, violating § 362(a)(3).

2. **Craig Alexander:**
    - Initiated state court litigation asserting personal ownership of QrewLive™, despite its clear inclusion in the bankruptcy estate.
    - His actions disrupted the Trustee's administration of estate property, violating § 362(a)(3) and § 362(a)(6).

Both Defendants' willful disregard for the automatic stay caused significant harm to the Debtor and the bankruptcy estate, warranting sanctions, compensatory damages, and punitive damages to address their misconduct and deter future violations.

### IV. ARGUMENTS

The actions of Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") constitute clear and willful violations of the automatic stay under **11 U.S.C. § 362(a)**. These violations disrupted the procedural integrity of the bankruptcy process, caused significant harm to the Debtor, and obstructed the Trustee's administration of the bankruptcy estate. This section sets forth the legal and factual basis for imposing sanctions, awarding damages, and deterring future violations.

## A. Delta Air Lines, Inc. Willfully Violated the Automatic Stay

### 1. Unauthorized Exercise of Control Over Estate Property

Delta's actions constitute a willful violation of **11 U.S.C. § 362(a)(3)**, which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

- **QrewLive™ as Estate Property:** QrewLive™, the Debtor's proprietary aviation technology, was explicitly listed as property of the bankruptcy estate under **11 U.S.C. § 541(a)** and was under the exclusive jurisdiction of the Bankruptcy Court.
- **Delta's Unauthorized Actions:** Delta developed and deployed the Flight Family Communication (FFC) platform during the pendency of the bankruptcy, leveraging proprietary functionalities derived from QrewLive™ without authorization from the Court or the Chapter 7 Trustee. These actions directly interfered with estate property.

### 2. Delta's Actions Were Willful

Delta's violation of the automatic stay was willful because it had actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the estate:

- **Actual Knowledge:** Delta executed a Mutual Confidentiality Agreement (NDA) in 2016 that explicitly identified QrewLive™ as proprietary and confidential.
- **Constructive Knowledge:** The bankruptcy filing and QrewLive™'s inclusion as estate property were publicly available, providing constructive notice to Delta of the automatic stay's applicability. Despite this knowledge, Delta knowingly commercialized QrewLive™'s functionalities, demonstrating a blatant disregard for the protections afforded under federal bankruptcy law.

### 3. Harm Caused by Delta's Violations

Delta's actions caused substantial harm to the Debtor and the estate, including:

- **Financial Loss:** The estate was deprived of licensing revenues, conservatively estimated at $10 million annually, and Delta avoided development costs of approximately $50 million by exploiting QrewLive™.
- **Reputational Damage:** Delta's unauthorized use of QrewLive™ without attribution undermined the Debtor's professional credibility as an innovator and aviation technology leader.
- **Procedural Harm:** Delta's actions delayed the Trustee's ability to monetize QrewLive™ for the benefit of creditors, disrupting the equitable administration of the estate.

### B. Craig Alexander Willfully Violated the Automatic Stay

### 1. Interference with Estate Property Through Unauthorized Litigation

Alexander's initiation of state court litigation asserting ownership of QrewLive™ constitutes a direct violation of **11 U.S.C. § 362(a)(3)** and § 362(a)(6):

- **Assertion of Ownership:** Alexander's baseless claims over QrewLive™ interfered with the Trustee's exclusive authority to administer estate property.
- **Litigation Without Leave of Court:** Alexander initiated the litigation without seeking authorization from the Bankruptcy Court or coordinating with the Trustee, in direct violation of the automatic stay.

### 2. Alexander's Actions Were Willful

Alexander's willful violation of the automatic stay is evidenced by:

- **Knowledge of the Bankruptcy Filing:** As a former business associate of the Debtor, Alexander was aware of her bankruptcy case and the inclusion of QrewLive™ as estate property.
- **Intentional Interference:** Alexander deliberately pursued litigation to assert control over QrewLive™, despite knowing that his actions violated the automatic stay.

### 3. Harm Caused by Alexander's Violations

Alexander's actions caused substantial harm, including:

- **Legal Costs:** The Debtor was forced to incur significant legal fees to defend against Alexander's baseless litigation.
- **Emotional Distress:** The stress of defending unauthorized claims exacerbated the emotional burdens of the bankruptcy process.
- **Procedural Delays:** Alexander's litigation disrupted the Trustee's efforts to monetize QrewLive™, reducing its potential value to the estate.

## C. Procedural Misconduct and Disruption of the Bankruptcy Process

The actions of Delta and Alexander undermined the procedural integrity of the automatic stay and the Bankruptcy Court's exclusive jurisdiction over estate property.

### 1. Procedural Integrity of the Automatic Stay

The automatic stay is essential to maintaining a fair and orderly framework for bankruptcy proceedings. By circumventing this framework, the Defendants:

- Disrupted the Trustee's administration of QrewLive™.
- Undermined the equitable treatment of creditors by reducing the value of estate property.

### 2. Impact on the Trustee's Administration of the Estate

The Defendants' violations forced the Trustee to address unauthorized litigation and commercial use of estate property, delaying the monetization of QrewLive™ and increasing administrative costs.

### 3. Harm to Creditors

The unauthorized exploitation of QrewLive™ deprived the estate of valuable licensing and monetization opportunities, reducing the funds available for distribution to creditors.

## D. The Need for Sanctions and Deterrence

The Defendants' willful violations of the automatic stay warrant the imposition of sanctions to remedy the harm caused and deter future misconduct.

## 1. Compensatory Damages

Under **11 U.S.C. § 362(k)(1)**, the Debtor and the estate are entitled to recover compensatory damages, including:

- **Legal Costs:** Fees and expenses incurred to address the Defendants' violations.
- **Financial Losses:** Lost licensing revenues and avoided development costs caused by Delta's unauthorized use of QrewLive™.
- **Emotional Distress:** Damages for the mental anguish and reputational harm suffered by the Debtor.

## 2. Punitive Damages

Punitive damages are appropriate to deter egregious conduct and uphold the sanctity of the automatic stay:

- The Defendants' actions were reckless, intentional, and undertaken with knowledge of their obligations under bankruptcy law.
- Punitive damages will serve as a deterrent to prevent future violations by similarly situated parties.

## 3. Restoration of Procedural Integrity

By imposing sanctions, this Court will reinforce the fundamental protections of the automatic stay, ensuring that the bankruptcy process remains fair, equitable, and free from unauthorized interference.

## IN CONCLUSION

The actions of Delta Air Lines, Inc. and Craig Alexander demonstrate a pattern of willful and egregious violations of the automatic stay. These actions caused substantial harm to the Debtor and the estate, disrupted the administration of the bankruptcy process, and necessitates corrective action by this Court. The imposition of sanctions, compensatory damages, and punitive damages will not only remedy the harm caused but also deter future misconduct and reinforce the procedural integrity of bankruptcy law.

## V. CASE LAW

The automatic stay is a cornerstone of bankruptcy law, designed to protect debtors and estate property while ensuring the equitable administration of bankruptcy proceedings. The following case law underscores the principles governing the automatic stay, the consequences of its violation, and the remedies available to parties injured by willful violations.

### A. Violations of the Automatic Stay Are Void and Sanctionable

1.  **In re Schwartz, 954 F.2d 569 (9th Cir. 1992)**
    - **Principle:** Actions taken in violation of the automatic stay are void ab initio and without legal effect.
    - **Application:** This foundational ruling establishes that unauthorized litigation or other actions involving estate property during the automatic stay cannot stand, even if undertaken in good faith or without malicious intent.

2.  **Kalb v. Feuerstein, 308 U.S. 433 (1940)**
    - **Principle:** The Supreme Court emphasized the inviolability of the automatic stay, holding that violations undermine the integrity of the bankruptcy process and are subject to nullification.
    - **Application:** All actions by Delta Air Lines, Inc. and Craig Alexander involving QrewLive™ during the automatic stay are void ab initio, including litigation and commercial exploitation.

3.  **Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002)**
    - **Principle:** The automatic stay is mandatory and imposes a strict prohibition on creditor actions.
    - **Application:** This case underscores the duty of all parties with knowledge of the bankruptcy filing to cease actions affecting the estate or the debtor, reinforcing the willful nature of the Defendants' misconduct.

### B. Willful Violations of the Automatic Stay

1.  **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999)**

- ○ **Principle:** A willful violation occurs when the violator has knowledge of the bankruptcy case and intentionally performs an act that violates the stay. Malicious intent is not required.
- ○ **Application:** Both Delta and Alexander acted willfully by knowingly engaging in litigation and commercial exploitation of QrewLive™ after the Debtor's bankruptcy filing.

2. **In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325 (3d Cir. 1990)**
   - ○ **Principle:** Intent to violate the stay is irrelevant; knowledge of the bankruptcy filing and the act itself suffice to establish willfulness.
   - ○ **Application:** Delta and Alexander's actions demonstrate willful disregard for federal bankruptcy protections, warranting sanctions under 11 U.S.C. § 362(k).

## C. Damages for Emotional Distress and Financial Loss

1. **In re Dawson, 390 F.3d 1139 (9th Cir. 2004)**
   - ○ **Principle:** Emotional distress damages are recoverable under § 362(k) when a violation causes significant personal harm.
   - ○ **Application:** The anxiety, sleeplessness, and mental anguish experienced by the Debtor due to unauthorized litigation and the exploitation of her proprietary technology qualify as recoverable damages.

2. **In re Lile, 103 B.R. 830 (Bankr. S.D. Tex. 1989)**
   - ○ **Principle:** Evidentiary hearings are necessary to address complex damages, including emotional distress, reputational harm, and financial losses.
   - ○ **Application:** This case supports the Debtor's request for an evidentiary hearing to quantify damages and establish the full scope of harm caused by the Defendants' actions.

3. **In re Roman, 283 B.R. 1 (B.A.P. 9th Cir. 2002)**
   - ○ **Principle:** Actual damages, including legal fees and costs, are recoverable for willful violations of the stay.
   - ○ **Application:** The significant legal fees incurred by the Debtor in defending against Alexander's baseless litigation qualify as actual damages under § 362(k).

**D. Punitive Damages and Deterrence**

1. **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003)**
   - **Principle:** Punitive damages are appropriate in cases of egregious, reckless, or bad-faith violations of the automatic stay.
   - **Application:** The Defendants' knowing and deliberate violations, including Delta's commercial exploitation of QrewLive™ without attribution and Alexander's unauthorized litigation, meet the threshold for punitive damages.

2. **In re Roche, 361 B.R. 615 (Bankr. N.D. Ga. 2005)**
   - **Principle:** Punitive damages are necessary to deter future violations and emphasize the sanctity of the automatic stay.
   - **Application:** Awarding punitive damages will deter Delta and Alexander, and similarly situated parties, from disregarding federal bankruptcy law.

**E. Jurisdiction and Injunctive Relief**

1. **In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**
   - **Principle:** The Bankruptcy Court has exclusive jurisdiction over disputes involving property of the estate and actions affecting its administration.
   - **Application:** This Court has the authority to enjoin Delta and Alexander from continuing litigation or exploiting QrewLive™ and to void unauthorized actions taken during the stay.

2. **In re Spirtos, 221 F.3d 1079 (9th Cir. 2000)**
   - **Principle:** The Bankruptcy Court's authority extends to issuing injunctions and corrective orders to preserve estate property and enforce compliance with the automatic stay.
   - **Application:** Injunctive relief is necessary to prevent further harm and ensure that the Defendants adhere to federal bankruptcy law.

3. **In re Gallo, 539 B.R. 88 (Bankr. S.D.N.Y. 2015)**
   - **Principle:** Injunctive relief under 11 U.S.C. § 105(a) is appropriate to protect estate property and remedy ongoing harm caused by violations of the automatic stay.

  o  **Application:** The Court should issue injunctions prohibiting Delta and Alexander
     from further unauthorized actions and directing corrective measures to address
     procedural harm.

## F. Procedural Integrity and Accountability

1. **Law v. Siegel, 571 U.S. 415 (2014)**
   o  **Principle:** Bankruptcy Courts have inherent authority to impose sanctions for
      bad-faith conduct that undermines the integrity of the judicial process.
   o  **Application:** The Defendants' procedural misconduct, including unauthorized
      litigation and exploitation of estate property, justifies sanctions to uphold the
      integrity of the bankruptcy system.

2. **In re Quin v. County of Kauai Dep't of Transp., 733 F.3d 267 (9th Cir. 2013)**
   o  **Principle:** Courts must address procedural misconduct to ensure fairness and
      accountability in bankruptcy proceedings.
   o  **Application:** Corrective actions are necessary to address the procedural harm
      caused by the Defendants' unauthorized actions.

The Defendants' actions violated the automatic stay under 11 U.S.C. § 362(a), disrupted the
administration of the bankruptcy estate, and caused substantial harm to the Debtor. The case law
cited provides a robust framework for the remedies sought in this Motion, including
compensatory damages, punitive damages, injunctive relief, and corrective actions. By applying
these principles, this Court can address the harm caused, restore procedural integrity, and deter
future violations of the automatic stay.

## VI. RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that this Honorable Court grant the following
relief to address the harm caused by Delta Air Lines, Inc. and Craig Alexander's willful
violations of the automatic stay under **11 U.S.C. § 362(k):**

## 1. Declare Violations of the Automatic Stay

- **Findings of Fact:** Declare that the actions of Delta Air Lines, Inc. and Craig Alexander, as outlined herein, constitute willful violations of the automatic stay under **11 U.S.C. § 362(a).**

- **Void Unauthorized Actions:** Declare that all actions taken by the Defendants in violation of the automatic stay, including state court litigation and unauthorized use of QrewLive™, are void ab initio and without legal effect.

## 2. Award Compensatory Damages

- **To the Debtor:**
  - **Legal Fees:** Award all costs and fees incurred in defending against unauthorized litigation initiated by Alexander and addressing Delta's unauthorized use of QrewLive™.
  - **Emotional Distress:** Award damages for the mental anguish, sleeplessness, anxiety, and reputational harm caused by the Defendants' misconduct.

- **To the Bankruptcy Estate:**
  - **Lost Licensing Revenues:** Award damages for the estate's lost licensing opportunities, conservatively estimated at $10 million annually.
  - **Avoided Development Costs:** Compensate the estate for the approximate $50 million in avoided development costs resulting from Delta's unauthorized use of QrewLive™.

## 3. Award Punitive Damages

Impose punitive damages against Delta Air Lines, Inc. and Craig Alexander to:

- **Deterrence:** Deter future violations of the automatic stay by these or other parties.
- **Reaffirmation of Legal Protections:** Reinforce the importance of compliance with bankruptcy law and uphold the integrity of the judicial process.

## 4. Issue Injunctive Relief

Issue an injunction under **11 U.S.C. § 105(a)** to:

- Prohibit Delta Air Lines, Inc., Craig Alexander, and any affiliated parties from:
  - Continuing litigation or asserting claims relating to QrewLive™ in any forum without express authorization from this Court.
  - Engaging in any unauthorized use, development, or commercialization of QrewLive™ or its derivative functionalities.
- Require the Defendants to:
  - **Cease Exploitation:** Immediately cease the use of QrewLive™ or any related intellectual property.
  - **Submit Accounting:** Provide a detailed report of all actions taken during the bankruptcy proceedings involving QrewLive™, including development efforts, revenues earned, and parties involved.

### 5. Order Corrective Actions

Direct the Defendants to:

- **Discovery Disclosure:** Provide all withheld materials and communications related to QrewLive™, litigation efforts, or commercialization attempts to the Debtor and the Chapter 7 Trustee.
- **Restitution:** Compensate the bankruptcy estate for any damages caused by their unauthorized use and interference.

### 6. Request an Evidentiary Hearing

Direct that an evidentiary hearing be held to:

- Quantify the financial harm caused to the Debtor and the bankruptcy estate, including lost licensing revenue and avoided development costs.
- Document the emotional and reputational harm inflicted upon the Debtor.
- Clarify procedural inefficiencies caused by the Defendants' violations.

### 7. Additional Relief as Deemed Just and Proper

Grant such other and further relief as this Court deems just and equitable under the circumstances, including:

- **Referral for Review:** Referral of the Defendants' actions to appropriate disciplinary authorities for review of ethical violations, where applicable.
- **Acknowledgment of Personal Harm:** Recognize the Debtor's personal claims arising directly from the Defendants' willful violations, independent of the bankruptcy estate's value.

## IN CONCLUSION

By granting this relief, the Court will remedy the harm caused by Delta Air Lines, Inc. and Craig Alexander, deter future violations of the automatic stay, and reaffirm the integrity of the bankruptcy process. The requested sanctions and damages will not only compensate the Debtor and the bankruptcy estate for their losses but also protect the fundamental protections afforded under federal bankruptcy law.

## IV. CASE LAW

The automatic stay is a cornerstone of bankruptcy law, designed to protect debtors and ensure the orderly administration of the bankruptcy estate. Courts have repeatedly emphasized the mandatory nature of the automatic stay and the consequences for parties that willfully violate its protections. The following cases provide a robust framework for this Court's authority to impose sanctions, award damages, and issue injunctive relief in response to the Defendants' actions.

### Violations of the Automatic Stay Are Void and Sanctionable

1. **In re Schwartz, 954 F.2d 569 (9th Cir. 1992)**
   - Holds that actions taken in violation of the automatic stay are void ab initio and without legal effect.
   - Establishes that the automatic stay is a fundamental protection for debtors, and violations undermine the integrity of the bankruptcy process.
2. **Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002)**

- ○ Reinforces the mandatory nature of the automatic stay, requiring strict compliance by all parties.
- ○ Supports the imposition of sanctions to deter future violations and protect the rights of debtors.

3. **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999)**
   - ○ Defines a willful violation of the automatic stay as occurring when a party has knowledge of the bankruptcy filing and engages in intentional acts that violate the stay.
   - ○ Clarifies that intent to violate the stay is not required; only knowledge of the filing and the resulting actions suffice.

**Damages for Emotional Distress and Financial Loss**

1. **In re Dawson, 390 F.3d 1139 (9th Cir. 2004)**
   - ○ Affirms that emotional distress damages are recoverable under § 362(k) when a willful violation of the automatic stay causes significant personal harm.
   - ○ Recognizes the severe emotional toll that stay violations can impose on debtors, including anxiety, mental anguish, and reputational harm.

2. **In re Lile, 103 B.R. 830 (Bankr. S.D. Tex. 1989)**
   - ○ Supports the use of evidentiary hearings to address complex damages caused by stay violations, including financial loss, emotional distress, and reputational harm.
   - ○ Emphasizes the importance of transparency and a full factual record to ensure proper assessment of damages.

**Jurisdiction and Injunctive Relief**

1. **In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**
   - ○ Highlights the Bankruptcy Court's exclusive jurisdiction over estate property and disputes involving such property.
   - ○ Requires litigants to seek relief from the Bankruptcy Court before pursuing state court actions involving estate property, underscoring the preemptive scope of federal bankruptcy law.

2. **In re Spirtos, 221 F.3d 1079 (9th Cir. 2000)**

- ○ Confirms the Bankruptcy Court's exclusive authority to resolve disputes related to property of the estate.
- ○ Demonstrates the necessity of injunctive relief to prevent further violations of the automatic stay and protect estate property.

3. **In re Gallo, 539 B.R. 88 (Bankr. S.D.N.Y. 2015)**
   - ○ Justifies injunctive relief under 11 U.S.C. § 105(a) to prevent ongoing harm when violations of the automatic stay disrupt estate administration or debtor protections.
   - ○ Affirms the Court's authority to issue orders preserving the integrity of the bankruptcy process.

## Misuse of Evidence and Procedural Misconduct

1. **Law v. Siegel, 571 U.S. 415 (2014)**
   - ○ Addresses the Bankruptcy Court's authority to impose sanctions for bad-faith litigation conduct, including the misuse of tainted evidence.

2. **In re Quin v. County of Kauai Dep't of Transp., 733 F.3d 267 (9th Cir. 2013)**
   - ○ Demonstrates the consequences of failing to disclose relevant evidence or tampering with materials in bankruptcy cases, warranting sanctions and additional scrutiny.

3. **In re Denis v. Attorney General, 633 F.3d 201 (3d Cir. 2011)**
   - ○ Emphasizes the importance of maintaining the integrity of the judicial process, particularly when evidence is mishandled or misused in a manner that obstructs justice.

## Sanctions and Deterrence

1. **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003)**
   - ○ Supports punitive damages under § 362(k) in cases of egregious or bad-faith violations of the automatic stay.
   - ○ Demonstrates that punitive damages are a necessary deterrent to prevent future violations and uphold the integrity of bankruptcy protections.

2. **In re Atl. Bus. & Cmty. Corp., 901 F.2d 325 (3d Cir. 1990)**

- ○ Reinforces the Court's ability to impose punitive damages when violations are reckless, intentional, or egregious, ensuring that violators are held accountable.

**Procedural Integrity**

**In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**: The court underscored the importance of procedural integrity by reaffirming the Bankruptcy Court's exclusive jurisdiction over disputes involving estate property. Unauthorized actions by litigants undermine this integrity, warranting intervention and sanctions.

**Additional Arguments Based on Case Law**

1. **Transparency in Damages Assessment:**
   - ○ **In re Schwartz** and **In re Lile** both emphasize the need for evidentiary hearings to address complex damages caused by violations of the automatic stay.
   - ○ Debtor requests a hearing to establish the full extent of financial, emotional, and reputational harm.

2. **Jurisdiction and Injunctive Relief:**
   - ○ **In re Gruntz** and **In re Spirtos** confirm this Court's exclusive jurisdiction over QrewLive™ as a bankruptcy estate asset.
   - ○ Injunctive relief is necessary to prevent further violations of the automatic stay and protect the integrity of the bankruptcy process.

3. **Sanctions and Deterrence:**
   - ○ **Eskanos & Adler** and **In re Gagliardi** underscore the importance of sanctions in deterring violations of the automatic stay.
   - ○ Punitive damages are warranted to prevent future misconduct by Delta and Alexander and to uphold the fundamental protections of bankruptcy law.

## VII. CONCLUSION

The willful violations of the automatic stay by Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") constitute a grave breach of the protections afforded under 11 U.S.C. § 362(a). These violations—comprising unauthorized litigation, commercial exploitation, and

procedural misconduct—interfered with the orderly administration of the bankruptcy estate, caused substantial harm to the Debtor, and undermined the integrity of the judicial process.

The automatic stay is a cornerstone of bankruptcy law, designed to protect both estate property and the debtor from unauthorized actions, while ensuring an equitable and orderly framework for resolving disputes. The Defendants' actions flagrantly disregarded these protections, harming not only the Debtor but also the bankruptcy estate and its creditors. Such conduct compromises the sanctity of the automatic stay, disrupts the balance of the bankruptcy process, and necessitates decisive action by this Court to remedy the harm and deter future misconduct.

The relief sought in this Motion is narrowly tailored to address the personal harm suffered by the Debtor and the procedural disruptions caused by the Defendants' violations. Importantly, this Motion does not infringe upon the Chapter 7 Trustee's authority to administer estate property or pursue claims related to QrewLive™. Instead, it seeks redress for the specific and personal harms inflicted by Delta and Alexander's willful actions, which include:

- **Emotional Distress:** The stress of defending against unauthorized litigation and the exploitation of QrewLive™ has caused the Debtor significant emotional harm, including anxiety, sleeplessness, and reputational injury.
- **Financial Harm:** The Defendants' unauthorized use of QrewLive™ deprived the bankruptcy estate of substantial licensing and monetization opportunities, delayed its administration, and forced the Debtor to incur unnecessary legal expenses.
- **Procedural Inequities:** The Defendants' actions undermined the procedural safeguards of the bankruptcy process, delaying the Trustee's efforts to monetize QrewLive™ and diminishing the estate's overall value.

By addressing these violations and imposing sanctions, this Court will reaffirm the importance of the automatic stay and uphold the integrity of the bankruptcy system. The remedies requested are necessary to correct the harm caused, restore procedural fairness, and deter future violations by similarly situated parties.

**WHEREFORE, the Debtor respectfully requests that this Honorable Court:**

1. **Declare Violations of the Automatic Stay:**

   Declare that the actions of Delta Air Lines, Inc. and Craig Alexander constitute willful violations of the automatic stay under 11 U.S.C. § 362(a).

2. **Void Unauthorized Actions:**

   Void all actions taken by the Defendants in violation of the automatic stay, including state court litigation involving QrewLive™ and commercial exploitation of its proprietary functionalities.

3. **Award Compensatory Damages:**

   Award compensatory damages to the Debtor and the bankruptcy estate, including:

   - Legal fees and costs incurred by the Debtor due to unauthorized litigation.
   - Damages for emotional distress, mental anguish, and reputational harm.
   - Compensation for lost licensing revenue and monetization opportunities resulting from Delta's unauthorized use of QrewLive™.

4. **Impose Punitive Damages:**

   Impose punitive damages to deter future violations of the automatic stay and to underscore the critical importance of adherence to federal bankruptcy law.

5. **Issue Injunctive Relief:**

   Grant injunctive relief under 11 U.S.C. § 105(a) to:

   - Prohibit Delta Air Lines, Inc., Craig Alexander, and their agents from continuing litigation or exploiting QrewLive™ without prior Court authorization.
   - Enjoin all parties from interfering with the Trustee's administration of QrewLive™ and other estate property.

6. **Direct Corrective Actions:**

   Require the Defendants to:

   - Cease reliance on improperly obtained evidence or information.
   - Provide a detailed accounting of their actions involving QrewLive™ during the bankruptcy proceedings.
   - Ensure full compliance with the automatic stay and related Court orders.

7. **Schedule an Evidentiary Hearing:**

   Direct an evidentiary hearing to:

   - Quantify the financial and emotional harm caused to the Debtor.

- ○ Establish the full extent of the estate's financial losses resulting from the Defendants' misconduct.
- ○ Address procedural inequities arising from the Defendants' unauthorized actions.

8. **Grant Additional Relief:**

Grant such other and further relief as this Court deems just and proper to address the egregious nature of the Defendants' misconduct, including referral to appropriate disciplinary authorities for further investigation of ethical violations.

The Debtor has no intention to challenge any relief that overlaps with the Trustee's administration of the bankruptcy estate. Recognizing the global scale of Delta's operations and the worldwide expansion of this technology upon information and belief, the Debtor submits that a delay in addressing these violations would impose significant burdens on the Trustee to gain familiarity with the complexities of the case. By taking decisive action, this Court will not only remedy the substantial harm inflicted by the Defendants but also reaffirm the foundational protections of the automatic stay, deterring future violations and preserving public trust in the integrity of the bankruptcy process.

Respectfully submitted this 18 day of December, 2024.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

**Debtor, Acting Pro Se**

Sonja Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | **:** | **CASE NO. 19-56304** |
| | **:** | |
| **SONJA WILLIAMS ROSS,** | **:** | **CHAPTER 7** |
| **Debtor..** | **:** | |
| vs. | **:** | |
| **Craig A. Alexander.,** | **:** | |
| **Respondent.** | **:** | |

**REQUEST FOR CLERK'S ENTRY OF DEFAULT AGAINST**
**RESPONDENT CRAIG ALEXANDER**
**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 19-56304** |
| | : | |
| **SONJA NICOLE WILLIAMS** | : | **CHAPTER 7** |
| | : | |
| **Debtor.** | : | |

### CERTIFICATION OF SERVICE

I hereby certify that on this 16 day of December, 2024, I served a true and correct copy of the foregoing **MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AGAINST DELTA AIR LINES, INC. AND CRAIG ALEXANDER** by first-class mail, postage prepaid, and/or via electronic mail to the following parties:

**Willie C. Ellis, Jr.**
Ellis Legal Group LLC

*Attorney for Craig A.*
*Alexander, MABA Holdings,*
*LLC., and Shelia Alexander.*

**Darren Summerville**
Georgia Bar No. 691978
1226 Ponce de Leon Ave.
Atlanta, GA 30306
T: (770) 635-0030
F: (770) 635-0029
darren@summervillefirm.com

*Former Attorney for Craig A.*
*Alexander*

**Christine L. Mast**
Georgia Bar No. 461349
**Jacob D. Davis**

**Richard F. Waddington**
Chandler Law LLC
4080 McGinnis Ferry Road,
Building 500, Suite 502
Alpharetta, GA 30005
Email:
richard@chandler-law.net

*Attorney for Mike Rafi*

ANOZIE, LLP,
Nnamdi M. Anozie
Georgia Bar No. 211407
6120 Swiss Avenue #140838
Dallas, Texas, 75214.
T: 210-606-3440
E: nma@anoziellp.com

*Former Counsel For*
*Intervenor Sonja Ross*

**Office of the United States Trustee**
Northern District of Georgia
75 Ted Turner Dr
Room 362
Atlanta, GA 30303

**Mary Ida Townson**
United States Trustee
Region 21

**United States Department of Justice**
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Georgia Bar No. 382586

303 Peachtree Street,
Suite 4000
Atlanta, GA 30308-3243
(404) 614-7400 (phone)
(855) 889-4588 (fax)
cmast@hpylaw.com
jdavis@hpylaw.com

*Counsel for Defendants
Darren Summerville
Keenan Nix, Morgan & Morgan
Atlanta, PLLC*

Komal Patel, Esq.
Department 981
1030 Delta Boulevard
Atlanta, GA 30354-1989
komal.a.patel@delta.com

*Assistant General Counsel
Delta Air Lines, Inc.*

Keenan R.S. Nix, Esq.
Christopher J. Graddock, Esq.
Patrick A. Dawson, Esq.
Morgan & Morgan Atlanta,
PLLC
P.O. Box 57007
Atlanta, GA 30343-1007
knix@forthepeople.com
cgraddock@forthepeople.com
pdawson@forthepeople.com

.

Anna Green Cross, Esq.
Meredith C. Kincaid, Esq.
The Summerville Firm, LLC
1226 Ponce de Leon Ave, NE
Atlanta, GA 30306

anna@summervillelaw.com
meredith@summervillelaw.com

Lee Wallace, Esq.

**Kimberly L. Copeland**
Georgia Bar No. 186783

261 N. Brunswick St,
P.O. Box 1091,
Jesup, Georgia, 31546.
T: 912-530-7317
kim12cope@aol.com

*Former Counsel For
Intervenor Sonja Ross*

**David L. Balser**
Georgia Bar No. 035835

**Lawrence A. Slovensky**
Georgia Bar No. 653005

**James M. Brigman**
Georgia Bar No. 254905

**Charles G. Spalding, Jr**.
Georgia Bar No. 411926

KING & SPALDING, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: 404-572-4600
Fax: 404-572-5100

dbalser@kslaw.com
lslovensky@kslaw.com
mbrigman@kslaw.com
cspading@kslaw.com

**Julia C. Barret**t
Georgia Bar No. 354322
KING & SPALDING LLP
500 W. Second Street, Suite
1800
Austin, Texas 78701
Telephone: 512-457-2053
Fax: 512-457-2100
jbarrett@kslaw.com

Tel. (404) 331-4488

**Adriano O. Iqbal**
Georgia Bar No. 217122
adriano.o.iqbal@usdoj.go

*Trustee for Bankruptcy
Estate of Intervenor Sonja
Nicole Williams Ross*

Danielle J Eliot
GA Bar #142243

Law Office of Danielle J
Eliot PC 1001 Weatherstone
Pkwy, Suite 420 Woodstock,
GA 30188
Phone: 770-672-6735
danielle@djelawfirm.com

*Former Counsel For
Debtor Sonja Ross*

The Wallace Law Firm, LLC
6030 River Chase Circle
Atlanta, GA 30328
lee@thewallacelawfirm.com

**Attorney for
Delta Air Lines, Inc.**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted this 18 day of December, 2024.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

Sonja Williams Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com

**Debtor, Acting Pro Se**

1/13/25, 1:23 PM Shocktheory Mail - Re: In re: Sonja N. Williams f/k/a Sonja Ross; Objection to Motion to Reopen Bankruptcy Case (Service)

Case 19-56304-sms Doc 251 Filed 01/13/25 Entered 01/14/25 12:51:28 Desc Main
Document Page 44 of 97

**shocktheory**

Sonja Williams <sonja.ross@shocktheory.com>

---

## Re: In re: Sonja N. Williams f/k/a Sonja Ross; Objection to Motion to Reopen Bankruptcy Case (Service)

1 message

---

**Sonja Ross** <sonja.ross@shocktheory.com>                                      Wed, Dec 18, 2024 at 10:33 PM
To: "Willie Ellis Jr." <will@call-ellis.com>
Cc: "danielle@djelawfirm.com" <danielle@djelawfirm.com>, "ecfdjma@gmail.com" <ecfdjma@gmail.com>,
"R44723@notify.bestcase.com" <R44723@notify.bestcase.com>, "brianjamont@yahoo.com" <brianjamont@yahoo.com>,
"ljones@joneswalden.com" <ljones@joneswalden.com>, "jwdistribution@joneswalden.com"
<jwdistribution@joneswalden.com>, "cparker@joneswalden.com" <cparker@joneswalden.com>,
"cmccord@joneswalden.com" <cmccord@joneswalden.com>, "lpineyro@joneswalden.com" <lpineyro@joneswalden.com>,
"ewooden@joneswalden.com" <ewooden@joneswalden.com>, "bdernus@joneswalden.com" <bdernus@joneswalden.com>,
"paul@knightenlawfirm.com" <paul@knightenlawfirm.com>, "contact@knightenlawfirm.com"
<contact@knightenlawfirm.com>, "wlayng@gmail.com" <wlayng@gmail.com>, "ga34@ecfcbis.com" <ga34@ecfcbis.com>,
"adriano.o.iqbal@usdoj.gov" <adriano.o.iqbal@usdoj.gov>, "kim12cope@aol.com" <kim12cope@aol.com>, Germaine Austin
<germaine@beliesol.com>

Please find attached the Debtor's Motion for Sanctions against Interested Party and Delta Air Lines, Inc.

Also, please take notice of appointment of interim successor trustee and special meeting of creditors. See attached
notices for more information.

January 7, 2025, at 8:40 a.m.
The meeting will be held by zoom video meeting.
Go to Zoom.us/join.
Enter Meeting ID: 777 983 7645 and
Passcode: 4887773004 or call (470) 924-8824

Sonja Ross
(210) 960-6898

On Mon, Dec 9, 2024 at 7:34 PM Willie Ellis Jr. <will@call-ellis.com> wrote:

> All,
>
> Please find attached Interested Party's response to the Motion to Reopen. Thank you.
>
> 
> **Willie C. Ellis Jr.**
>
> # The Ellis Firm
>
> 3500 Lenox Road
>
> Ste. 1500
>
> Atlanta, Georgia 30326
>
> **Office:** 770-212-1432
>
> **Email:** will@call-ellis.com

1/13/25, 1:23 PM                    Shock Theory LLC Mail - In re: Sonja N. Williams f/k/a Sonja Ross; Objection to Motion to Reopen Bankruptcy Case (Service)

Case 19-56304-sms    Doc 251    Filed 01/13/25    Entered 01/14/25 12:51:38    Desc Main
                        Document         Page 45 of 97

**www.call-ellis.com**

This message and any attachments may contain confidential or privileged attorney-client communications or information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

---

**From:** Willie Ellis Jr. <will@call-ellis.com>
**Sent:** Friday, November 29, 2024 7:47 PM
**To:** danielle@djelawfirm.com; ecfdjma@gmail.com; R44723@notify.bestcase.com; brianjamont@yahoo.com; ljones@joneswalden.com; jwdistribution@joneswalden.com; cparker@joneswalden.com; cmccord@joneswalden.com; lpineyro@joneswalden.com; ewooden@joneswalden.com; bdernus@joneswalden.com; paul@knightenlawfirm.com; contact@knightenlawfirm.com; wlayng@gmail.com; ga34@ecfcbis.com; adriano.o.iqbal@usdoj.gov; kim12cope@aol.com; sonja.ross@shocktheory.com
**Cc:** Germaine Austin <germaine@beliesol.com>
**Subject:** In re: Sonja N. Williams f/k/a Sonja Ross; Objection to Motion to Reopen Bankruptcy Case (Service)

Good evening, all,

Please find attached a brief in opposition to the Motion to Reopen Bankruptcy Case that was filed today. The attachments referenced in the brief may be viewed using this link: https://www.dropbox.com/scl/fo/6advwzyfiwsaz8ywfpxoq/ABcrz8IaiqaHdN-atmr-dfw?rlkey=42fqlh2fxmzl2r8rzabldhiiy&st=y3dmioc3&dl=0.

Thank you.



**Willie C. Ellis Jr.**

# The Ellis Firm

3500 Lenox Road

Ste. 1500

Atlanta, Georgia 30326

**Office:** 770-212-1432

**Email:** will@call-ellis.com

1/13/25, 1:23 PM    Shook Theory, LLC - 251 In re: Sonja C. Williams 251 Sonja Note r Objection / 14 notion 12 (copies Bankruptcy Case Main)

Case 19-56304-sms    Doc 251    Filed 01/13/25    Entered 01/14/25 12:51:28    Desc Main
Document        Page 46 of 97

www.call-ellis.com

This message and any attachments may contain confidential or privileged attorney-client communications or information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

**5 attachments**

 **054186240258.pdf**
25K

 **054186238857.pdf**
132K

**State Court Notice 12-18-2024 - Notice.pdf**
622K

**054186244051-Delta-Alexander-12-18-2024-Supplemental.pdf**
1460K

**054186244051-Delta-Alexander-12-18-2024.pdf**
14043K

| Subject | **(Willie Ellis) Notification of Intent to File Motion for Sanctions and Damages** | roundcube |
|---|---|---|
| From | <sonja.ross@skyvier.com> | |
| To | Will <will@call-ellis.com>, Germaine <Germaine@Beliesol.com> | |
| Bcc | Allisonjfouche <Allisonjfouche@gmail.com>, CeliaAncella <CeliaAncella@gmail.com>, Valena <valena@theithing.com>, Salontysalon <salontysalon@gmail.com>, Tamera1robinson <tamera1robinson@gmail.com>, Sonja Ross <sonja.ross@shocktheory.com>, Kimberly L. Copeland <kim12cope@aol.com> | |
| Date | 2024-12-12 19:04 | |
| Priority | Highest | |

- Ross-Response-Ross-12122024-Final.pdf(~2.0 MB)
- 217 2.pdf(~319 KB)
- 054186168815-Qrewlive.pdf(~346 KB)
- 21A03275 Dismissal of attorney defendants.pdf(~151 KB)
- 21A03275 –Motion to Voluntarily Dismissal of Certain Defendants.pdf(~177 KB)

Dear Mr. Ellis,

I am writing to notify you of my intention to file a Motion for Sanctions and Damages Against You for Willful Violation of the Automatic Stay, Fraud on the Court, and Professional Misconduct. If you are represented by counsel, kindly provide their contact information at your earliest convenience.

The forthcoming motion will detail specific actions, including your submission of evidence from unrelated proceedings without notice, misrepresentation of facts regarding the automatic stay, and introduction of prejudicial filings in state court proceedings. These actions constitute clear violations of federal bankruptcy law under 11 U.S.C. § 362(a), ethical standards, and professional obligations.

Additionally, I want to ensure judicial economy on my part, as I am a single pro se litigant navigating a complex web of misrepresentations and procedural misconduct. To this end, I am sharing relevant information regarding the recent actions taken against my former attorney, Mr. Rafi. Mr. Rafi, who filed my bankruptcy documentation in succession to Mr. Summerville, has faced appropriate responses for his involvement in these proceedings. These details will soon become part of the public record, and I encourage you to review them.

For transparency, I have also copied King & Spalding to ensure all relevant parties are aware of this ongoing matter.

Should you wish to discuss this issue further or address any concerns in advance, I remain open to correspondence through appropriate channels. Otherwise, I will proceed with filing the motion as planned and notify all relevant parties, including the U.S. Trustee, as necessary.

I look forward to your response.

Sincerely,
Sonja Ross
Debtor, Pro Se
sonja@skyvier.com
(210) 960-6898

-------- Original Message --------
Subject: Re: Sonja Williams Ross, CASE NO. 19-56304
Date: 2024-12-12 18:44
From: sonja.ross@skyvier.com
To: Richard Waddington <richard@chandler-law.net>
Cc: Douglas Chandler <Douglas@chandler-law.net>, Al Myers <al@chandler-law.net>, "Kimberly L. Copeland" <kim12cope@aol.com>, "Adriano.o Iqbal" <adriano.o.iqbal@usdoj.gov>

Dear Mr. Waddington,

This is such a full-time job, again I appreciate your concern for my

health. None-the-less, thank you for your response to clarify, I
copied Ms. Copeland on the earlier email for transparency. However, I am
acting pro se, as reflected in my courtesy copy of the motion I intend
to file tomorrow in Bankruptcy Court. This decision was necessitated by
the procedural limitations on pro se litigants for e-filing and my
termination of all legal representation, including counsel involved in
my original bankruptcy case filed in April 2021.

Let me be unequivocally clear: I dispute the fees claimed by Mr. Rafi,
as outlined in the motion I am filing in the appropriate court for
adjudication. As the drafter of the purported settlement agreement, Mr.
Rafi is undoubtedly aware of the fee dispute arbitration clause included
within it. If Mr. Rafi persists in pursuing litigation on this matter,
it will constitute procedural abuse and retaliation, which I will
address through all appropriate legal channels.

My issue with Mr. Rafi extends beyond his fee demand. It encompasses his
breach of fiduciary duties and failure to protect my interests and
assets, the very reasons for which I retained his services. Upon
discovering his alignment with Mr. Summerville, then representing Mr.
Alexander, I realized the gravity of his betrayal. This conduct directly
undermined my claims and my trust in his representation.

As you are undoubtedly aware, Mr. Alexander's actions have been adverse
to both my interests and those of my bankruptcy estate. The U.S. Trustee
has twice clarified the implications of these actions, yet these
warnings appear to have been ignored. When Alexander filed his lawsuit,
Qrewlive was still property of my bankruptcy estate and subject to the
automatic stay under 11 U.S.C. § 362. Thus, the only party with
standing to act at that time was the Chapter 7 Trustee. Neither
Alexander, Delta Air Lines, nor I had the authority to bypass this
critical protection.

Despite this clear legal framework, Mr. Rafi delayed my ability to take
the necessary legal steps to protect my rights. His inaction, coupled
with his alignment with Alexander's narrative, caused irreparable harm
to my case. As outlined in my forthcoming motion, I am disputing his
fees because they were unearned and tied to conduct detrimental to my
interests. Furthermore, his counterclaim in State Court exacerbates this
harm. I strongly urge him to withdraw this counterclaim immediately to
prevent further escalation and additional legal consequences.

This situation is straightforward: Qrewlive, at the time of Alexander's
lawsuit, was a bankruptcy estate asset. Delta's misappropriation of the
technology, compounded by Alexander's baseless claims, violated
bankruptcy law and the estate's rights. These facts have been
corroborated by the U.S. Trustee's decision to reopen my bankruptcy case
to investigate these violations.

Your client must carefully consider his next steps. Continuing to pursue
this matter through resistance or misrepresentation will only add
unnecessary complexity to an already strained process and deepen the
harm caused. If I do not receive confirmation of your client's
withdrawal from the State Court case and counterclaim, I will seek
immediate relief in court.

Finally, I caution you, as Mr. Rafi's legal representative, about the
implications of this correspondence. The documentation and arguments
provided thus far demonstrate a collective failure by multiple parties
to recognize and respect the automatic stay and the rights of the
bankruptcy estate. Your acknowledgment of this email serves as formal
notice of the ongoing violations and your awareness of the legal
consequences.

Should you or your client choose to share this email with adverse
parties, I have preemptively included the U.S. Trustee for full
transparency.

I await your client's response to my Motion for Damages and Sanctions
Against Former Counsel, Mike Rafi, for Willful Violation of the

Automatic Stay, Breach of Fiduciary Duty, and Professional Misconduct.
Once the motion is filed, your client will have the opportunity to
formally respond within the statutory timeline.

My intentions were always without prejudice as written in  the  my
MOTION TO VOLUNTARILY DISMISS CERTAIN DEFENDANTS. I have attached it for
your convenience. While the dismissal of claims in the state court was
sought to streamline litigation, the claims now brought in bankruptcy
court are distinct, arising from breaches of fiduciary duties and
violations of the automatic stay. Mr. Rafi and others were aware of the
bankruptcy proceedings and their obligations under federal law, yet they
failed to uphold these duties. Their actions not only undermined my
rights but also challenged the integrity of the bankruptcy process.

Let's not rewrite history, but move forward in the spirit of litigation.
I look forward to your response — at which point, my motion may be
updated. It is up to your client.

Sincerely,
Sonja Ross
Debtor, Pro Se
sonja@skyvier.com
(210) 960-6898

PS: The State Court did dismiss your client.

On 2024-12-12 15:24, Richard Waddington wrote:

Dear Ms. Ross:

As you have copied Ms. Copeland on your email, I am including your
original message showing that you initiated contact with us in a pro
se capacity regarding a bankruptcy proceeding. To the extent Ms.
Copeland is still counsel of record in the Alexander case, we address
this communication to her.

Attached is documentation of the enforceable settlement agreement
between Mr. Rafi and Ms. Ross, which, among other things, provides for
dismissal with prejudice of all claims against Mr. Rafi in
consideration of Mr. Rafi dismissing with prejudice his counterclaim
and abusive litigation claims. We intend to file a Motion to Enforce
Settlement and seek our fees if Ms. Ross fails to comply with the
settlement agreement, which includes dismissing with prejudice her
claims and executing a release in form and substance similar to the
proposed release which was forwarded to you on 11/26/24 and again on
12/4/24. Further, Ms. Ross must dismiss with prejudice the new claims
against Mr. Rafi purportedly filed in the Bankruptcy Court. Such
claims are clearly a breach of the settlement agreement and subject to
sanctions in the Bankruptcy Court, which we will pursue if necessary.

Please acknowledge your intent to comply with the above by 5:00 p.m.
EST December 16, 2024, or we will initiate proceedings to enforce the
settlement agreement and seek our fees.

-----Original Message-----
From: sonja.ross@skyvier.com <sonja.ross@skyvier.com>
Sent: Thursday, December 12, 2024 3:02 PM
To: Richard Waddington <richard@chandler-law.net>
Cc: Douglas Chandler <Douglas@chandler-law.net>; Al Myers
<al@chandler-law.net>; Kimberly L. Copeland <kim12cope@aol.com>
Subject: Re: Sonja Williams Ross, CASE NO. 19-56304

Dear Mr. Waddington,

Thank you for your well wishes. While I continue to navigate my health
challenges, I am also steadfastly addressing the legal matters at
hand.

Regarding your inquiry, I have not yet finalized new counsel. However,
I want to emphasize that any discussion about finalizing a settlement

involving Mr. Rafi must consider the important and
substantive issues I have raised in connection with his
representation.
These concerns include, but are not limited to, violations of
fiduciary duty, procedural mismanagement, and alignment with adverse
parties that resulted in harm to my estate and interests.

I also wish to stress that any future discussions must take into
account the evidence already submitted to this Court and the claims
currently under consideration. Any settlement dialogue must ensure the
integrity of the process and acknowledge the full scope of damages
caused by Mr.
Rafi's actions. I will ensure to look the Chapter 7 Trustee into the
discussions.

Should I retain new counsel, I will inform you promptly. In the
meantime, I trust that you will proceed with due regard for the
seriousness of the matters before the Court.

I will send you a file-stamp copy with exhibits soon. Rafi wasn't on
my list today. However, your email, moved him promptly at the top.
Please see attached.

Sincerely,
Sonja Ross
Pro Se Debtor
(678) 602-8451

On 2024-12-12 11:23, Richard Waddington wrote:

Dear Ms. Ross:

We are sorry to hear that you are not feeling well and wish you a
speedy recovery.

We received the 12/11/24 Motion to Withdraw filed by your attorney
Ms.
Copeland. Please let us know if you have retained new counsel, so
that
we can reach out to them in regard to finalizing the settlement with

Mr. Rafi. Thank you and take care.

-Richard

-----Original Message-----
From: sonja.ross@skyvier.com <sonja.ross@skyvier.com>
Sent: Thursday, December 12, 2024 8:08 AM
To: Douglas Chandler <Douglas@chandler-law.net>; Richard Waddington
<richard@chandler-law.net>; Al Myers <al@chandler-law.net>;
cmast@hpylaw.com; jdavis@hpylaw.com; germaine@beliesol.com;
will@call-ellis.com
Cc: Richard.Robbins@robbinsfirm.com; cspalding@kslaw.com;
mbrigman@kslaw.com; lslovensky@kslaw.com; dbalser@kslaw.com
Subject: Fwd: Sonja Williams Ross, CASE NO. 19-56304

Good Morning,

Each of you are fully aware of your actions and the harm they have
caused. I write this as I prepare to return to the hospital,
overwhelmed with extreme anxiety, to preempt what is next. As you
know--or should have known--the bankruptcy code and its protections
are
clear. Yet, in your representation of Captain Craig A. Alexander,
you
have not only violated these principles but caused significant harm.
While I hold Mr.
Alexander accountable for his decade-long behavior, I hold each of
you
more responsible. You are the professionals who should have upheld

the
law, yet you chose otherwise.

You weaponized my bankruptcy filings in the State Court action,
knowingly using them to harm me deeply. Congratulations--you
succeeded.
I am battered, exhausted, and financially depleted. In the coming
hours and days, you can expect a comprehensive legal response
addressing every pleading and every action each of you has filed,
exposing the harm your choices have inflicted on me and my family.

Because of the relentless litigation you've imposed upon me, my
resources are drained. Left with no alternative, I've spent what
little energy I have educating myself in law--learning to defend
myself
against the combined force of my own child's father, your firms, and

the world's largest airline. I do this while enduring pain and
fighting for my health, and still, I stand ready for this fight.

To Mr. Nix, Morgan and Morgan:

Considering the role you've played, I thought there might still be
an
opportunity for you to do the right thing. The work you performed on

behalf of Craig A. Alexander was, in reality, done for me and my
estate.
At one time, I held high hopes for a relationship with you,
believing
you to be a man of God. But this--this was not Godly. Your decision
to
aid and abet Mr. Alexander in stealing QrewLive from me, like a
thief
in the night, has left me and my family in utter despair. Sleep
eludes
us all because of the weight of your actions.

I send this message because, despite being tired, I will leave this
hospital with renewed resolve. I will dedicate my life to ensuring
that people like me--creators, real inventors, small business
owners,
Black female entrepreneurs, and others who endure the procedural
abuse
you have inflicted--are seen, heard, and never forgotten. The harm
you
have caused will not go unnoticed nor unaddressed.

A billion dollars, as I once told you, Mr. Nix, is not enough. My
treasure chest is filled with innovation, but if you knew me--truly
knew me--you'd understand that I would rather be poor than sell my
soul
to corporate greed. Ask your client: I've raised millions for
QrewLive, and I have stood firm in my principles. If this battle
robs
me of my peace, I will walk away--not in defeat but to save myself.
That is the depth of my resolve.

With this said, and as I prepare for the biggest fight of my life, I

offer you this. Consider your actions. Each of them. Afterwards and
by
3:00 pm today, provide an offer of a resolution. This doesn't seem
like a lot of time, however – I don't expect any of you to accept
this
offer.
But I will give you, what you did not give me. I will not state what

that is because, no dollar amount moves me. However, it will assist
my

family in not carrying the burden of their releases, or defend
their
legacy. Each of you saw a struggling mother, filing bankruptcy 5
times, you missed the bigger picture, or maybe you did not care: The

United States Bankruptcy is designed to protect people like me from
people like you. My bankruptcy estate was an active minefield when
this case was filed, and each of you decided to take your chances,
then use the body of armor as a shield against me.

You missed one minor but mighty detail. The law is on my side and
bankruptcy is THE PEOPLE'S COURT. I look forward to your separate,
offer of settlement today by 3 pm.

To Delta and King and Spaulding: While I do not condone Alexander or

any of these firms playing this out in the media, you brought this
on
yourself. Well, let's hope you do the right thing.

Sonja Williams Ross,
(210) 960-6898.

PS, This is a formal request to send me copies of your insurance, as
I
prepare for an adversary proceeding in bankruptcy court. Nix, I also

know you like to do media tours, I suspect, they'll follow up with
you
shortly. I would hope you would issue an apology to the true
inventor.
For your reference, I have provided you a starting point. Please
copy
me on your official statement.

Related News Articles:

https://www.ajc.com/news/business/pilot-files-intellectual-property-la
wsuit-against-delta/YM3GFTE3UNFOJMXOEWGUMYQIN4/

https://www.bloomberg.com/news/articles/2021-07-14/delta-pilot-sues-ai
rline-for-1-billion-claiming-stolen-crew-app

https://arstechnica.com/tech-policy/2021/07/pilot-sues-delta-for-1-bil
lion-alleging-it-stole-his-messaging-app/

https://www.businessinsider.com/delta-pilot-sues-airline-1-billion-app
-lawsuit-2021-7

https://www.techtimes.com/articles/262893/20210715/delta-pilot-sues-ai
rline-1-billion-saying-stole-app.htm

-------- Original Message --------
Subject: Sonja Williams Ross, CASE NO. 19-56304
Date: 2024-12-12 06:11
From: sonja.ross@skyvier.com
To: David Balser <DBalser@KSLAW.com>
Cc: David Balser Attorney for Delta <DBalser@KSLAW.com>, Julia
Barrett
Bates <jbates@kslaw.com>, Alexandra Titus <ATitus@KSLAW.com>, Larry
Slovensky <LSlovensky@KSLAW.com>, Charlie Spalding
<cspalding@kslaw.com>, Willie Ellis Attorney for Alexander
<will@call-ellis.com>, Danielle Eloit <danielle@djelawfirm.com>,
"Kimberly L. Copeland" <kim12cope@aol.com>

Dear US Trustee and all interested parties,

I plan to file this Motion today. Please also expect an additional
pleadings against Delta Air Lines, Inc., and MABA Holdings, LLC.,
collectively,

Many thanks,

Sonja Williams Ross, Debtor, pro se

(678) 602-8451.
<u>sonja@skyvier.com</u>



Sonja Williams <sonja.ross@shocktheory.com>

---

## STATUTORY ELECTRONIC SERVICE - Notification of Service for Case: 21A03275, Craig AlexanderDelta Air Lines, Inc.,Edward Bastian,Rahul Samant,Darrell Haskin,David Smith,David Burton,Matthew Muta for filing Notice of Bankruptcy, Envelope Number: 16879717

1 message

**no-reply@efilingmail.tylertech.cloud** <no-reply@efilingmail.tylertech.cloud>
To: sonja.williams@shocktheory.com

Fri, Dec 20, 2024 at 3:50 PM



# Notification of Service

Case Number: 21A03275
Case Style: Craig AlexanderDelta Air Lines, Inc.,Edward Bastian,Rahul Samant,Darrell Haskin,David Smith,David Burton,Matthew Muta
Envelope Number: 16879717

This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
| --- | --- |
| **Case Number** | 21A03275 |
| **Case Style** | Craig AlexanderDelta Air Lines, Inc.,Edward Bastian,Rahul Samant,Darrell Haskin,David Smith,David Burton,Matthew Muta |
| **Date/Time Submitted** | 12/20/2024 2:46 PM EST |
| **Filing Type** | Notice of Bankruptcy |
| **Filing Description** | Notice of Bankruptcy |
| **Filed By** | Sonja Williams |
| **Service Contacts** | Delta Air Lines, Inc.: <br><br> Billie Pritchard (bpritchard@kslaw.com) <br><br> J. Pratt (apratt@kslaw.com) <br><br> Lenora Shealy (lshealy@kslaw.com) <br><br> Olivia Carnegie (ocarnegie@kslaw.com) <br><br> Ercy Castro (ecastro@kslaw.com) <br><br> Lawrence Slovensky (lslovensky@kslaw.com) <br><br> Evelyn Ward (eward@kslaw.com) <br><br> James Brigman (mbrigman@kslaw.com) <br><br> Silvia Beckmann (ebeckmann@kslaw.com) <br><br> Alexandra Hernandez (alexandra.hernandez@kslaw.com) <br><br> Peter Starr (pstarr@kslaw.com) |

Brandon Keel (bkeel@kslaw.com)

David Balser (dbalser@kslaw.com)

Charles Spalding (cspalding@kslaw.com)

Julia Barrett (jbarrett@kslaw.com)


Sonja N Williams:

Michael Rafi (mike@rafilawfirm.com)

Kacie Butcher (kacie@rafilawfirm.com)

Kailen Grant (kwg@anoziellp.com)

Diana Martinez (dm@anoziellp.com)

Christi Baker (cmb@anoziellp.com)

Ashana Stanley (as@anoziellp.com)

Nnamdi Anozie (nma@anoziellp.com)

Jourdan Dukes (jjd@anoziellp.com)

Jeanie George (cjg@anoziellp.com)


Other Service Contacts not associated with a party on the case:

James Brigman (mattbrigman@gmail.com)

Doreen Lundrigan (doreen@thecooperfirm.com)

Patricia Nesbitt (panesbitt@dekalbcountyga.gov)

Christopher Graddock (CGraddock@ForThePeople.com)

David Balser (dbalser@kslaw.com)

Debbie Allbritton (dallbritton@hpylaw.com)

Chris Leopold (attycleopold@yahoo.com)

Patrick Dawson (pat@thecooperfirm.com)

Ramsey Knowles (rknowles@knowlesgallant.com)

Darren Summerville (darren@summervillefirm.com)

Tyler Henderson (THenderson@joneswalden.com)

W Ray Persons (rpersons@kslaw.com)

Tonay Burch (tsburch@dekalbcountyga.gov)

Emily Franze (efranze@hpylaw.com)

Christine Mast (cmast@hptylaw.com)

Jacob Davis (jdavis@hpylaw.com)

Albert Myers (al@chandler-law.net)

Julia Barrett (jbarrett@kslaw.com)

Craig Alexander (redfire26@yahoo.com)

Sonja Williams (sonja.williams@shocktheory.com)

Charles Spalding (cspalding@kslaw.com)

D. Miller (smiller@hpylaw.com)

Lawrence Slovensky (lslovensky@kslaw.com)

Ronald Conde (rconde@hpylaw.com)

Christine Mast (cmast@hpylaw.com)

Lee Wallace (Lee@thewallacelawfirm.com)

Dawn Prather (dprather@kslaw.com)

Tawaii Barnes (tbarnes@forthepeople.com)

Falyn Waters (fwaters@knowlesgallant.com)

Michael Rafi (mike@rafilawfirm.com)

Richard Waddington (richard@chandler-law.net)


Craig Alexander:

Germaine Austin (Germaine@beliesol.com)

Anna Cross (anna@crosskincaid.com)

Meredith Kincaid (meredith@crosskincaid.com)

Keenan Nix (KNix@forthepeople.com)

ShaMiracle Rankin (srankin@forthepeople.com)

Krystal Martinez (KMartinez@forthepeople.com)

Tyler Henderson (Tyler@briarwoodlegal.com)

marilyn silva (marilyn@call-ellis.com)

Willie Ellis (will@call-ellis.com)

Diamond Nimene (diamond@call-ellis.com)


Darren Summerville:

Kris Alderman (kris@summervillefirm.com)


Sandra Sowers:

Amy Zupancic (amyzupancic@gmail.com)


Sonja Ross:

Kimberly Copeland (kim12cope@aol.com)

Christie Copeland (christiehand@kimberlycopelandlaw.com)


Michael Rafi:

Douglas Chandler (douglas@chandler-law.net)

| Document Details | |
|---|---|
| **Served Document** | Download Document |
| This link is active for 90 days. To access this document, you will be required to enter your email address. Click here for more information. | |

**IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA**

SONJA ROSS,

**Plaintiff/Intervenor,**

v.

CRAIG ALEXANDER,                                        CIVIL ACTION FILE NO. 21A03275

**Cross-Defendant/Plaintiff,**                          <u>**JURY TRIAL DEMANDED**</u>

**and,**

**DELTA AIR LINES, INC., EDWARD BASTIAN,
RAHUL SAMANT, MATTHEW MUTA,
DARRELL HASKIN, DAVID SMITH, DAVID
BURTON, CORPORATE DOES 1 o 5, AND
JOHN DOES 1 to 10, MABA HOLDINGS, LLC,
DARREN SUMMERVILLE, KEENAN NIX,
MORGAN AND MORGAN, P.A., SHEILA
ALEXANDER, AND MICHEAL RAFI;**

**Defendants.**

**NOTICE OF REOPENING OF
BANKRUPTCY CASE AND APPOINTMENT OF TRUSTEE**

TO THE HONORABLE COURT AND ALL PARTIES:

Plaintiff/Intervenor, Sonja Ross (formerly, Williams), respectfully submits this notice to
inform the Court of significant developments in the related bankruptcy case, **In re: Sonja Nicole
Williams, Case No. 19-56304**, pending in the United States Bankruptcy Court for the Northern
District of Georgia.

## Recent Developments in Bankruptcy Case

1. **Reopening of Bankruptcy Case:**
   On December 13, 2024, the Bankruptcy Court entered an order reopening the Chapter 7
   bankruptcy case upon motion of the United States Trustee. This action was taken to

**STATE COURT OF
DEKALB COUNTY, GA.
12/20/2024 2:46 PM
E-FILED
BY: Patricia Nesbitt**

address unresolved matters, including the status of QrewLive™, a proprietary technology that remains part of the bankruptcy estate under 11 U.S.C. § 541(a).

2. **Appointment of Successor Trustee:**

On December 17, 2024, Neil C. Gordon was appointed as the interim successor trustee to administer the estate, investigate claims, and ensure the proper handling of estate property.

3. **Exclusive Jurisdiction of the Bankruptcy Court:**

As a result of the reopening, the Bankruptcy Court has exclusive jurisdiction over QrewLive™ and any related claims under **28 U.S.C. § 1334(e)**.

## Relevance to State Court Proceedings

The Bankruptcy Court's reopening and appointment of a trustee directly affect the jurisdiction and adjudication of matters before this Court, specifically claims relating to the ownership, use, and misappropriation of QrewLive™.

1. **Misrepresentation by Defendant's Counsel:**

Defendant Craig Alexander's counsel, Wille Ellis, Jr., previously represented to this Court that the bankruptcy case would not be reopened. This assertion has now been proven false, as the case has been reopened, and the trustee is actively investigating claims.

2. **Jurisdictional Preemption:**

Pursuant to federal bankruptcy law, any actions impacting estate property, including the proprietary technology at issue, are subject to the exclusive jurisdiction of the Bankruptcy Court. Further proceedings in this Court may conflict with the trustee's authority and ongoing investigation.

## Request for Relief

In light of these developments, Plaintiff respectfully requests that this Court:

1. **Take Judicial Notice** of the reopening of the bankruptcy case and appointment of the successor trustee.

2. **Void** State Court Proceedings Pursuant to **Plaintiff/Intervenor Motion To Void State Court Action For Violation Of Automatic Stay And Lack Of Jurisdiction** filed on December 13, 2024, or accept **this notice as a Renewed Motion to Stay Proceedings** in this matter to allow the trustee to evaluate and address any claims relating to estate property, including QrewLive™.

3. **Order Additional Relief as Necessary** to preserve the integrity of the bankruptcy process and prevent prejudice to the Plaintiff.

## Conclusion

Plaintiff submits this notice to ensure that this Court is fully informed of developments in the related bankruptcy case and to avoid any potential jurisdictional conflicts or duplicative proceedings.

Respectfully submitted this 19 day of December, 2024.

*/s/ Sonja Williams Ross*

Sonja Williams Ross, Plaintiff/Intervenor

Sonja Ross
PO BOX 3930
Alpharetta, GA 30023
Tel: (210) 960-6898
Email: sonja.ross@skyvier.com

STATE COURT OF
DEKALB COUNTY, GA.
12/20/2024 2:46 PM
E-FILED
BY: Patricia Nesbitt

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| | * | |
| SONJA NICOLE WILLIAMS, | * | CASE NO.  19-56304-PMB |
| | * | |
| DEBTOR. | * | |

**NOTICE OF APPOINTMENT OF INTERIM SUCCESSOR TRUSTEE
AND SPECIAL MEETING OF CREDITORS**

The United States Trustee gives notice that, pursuant to 11 U.S.C. §§ 701 and 703, **Neil Gordon** is appointed as interim successor trustee and is designated to preside over the meeting of creditors. The trustee shall serve under the blanket bond heretofore approved. Pursuant to Bankruptcy Code sections 702 and 703(a) and F.R.Bankr.P 2003(f), the United States Trustee will convene a special meeting of creditors. Unless creditors elect another trustee, the interim successor trustee appointed herein shall serve as trustee without further appointment or qualification under the same bond. The name and address of the interim successor trustee and the date, time, and location of the meeting of creditors are as follows.  Debtor and Debtor's attorney must appear via Zoom. Other parties may appear by telephone.

| | |
|---|---|
| Neil C. Gordon<br>1600 Parkwood Circle<br>Suite 200<br>Atlanta, GA 30339<br>Phone: (404) 640-5917 | **January 7, 2025, at 8:40 a.m.**<br>The meeting will be held by zoom video meeting.<br>Go to **Zoom.us/join.**<br>Enter Meeting ID: **777 983 7645** and<br>Passcode: **4887773004** or call **(470) 924-8824** |

Notice given by:

MARY IDA TOWNSON
UNITED STATES TRUSTEE, REGION 21

*s/ Jeneane Treace*
R. Jeneane Treace
Georgia Bar No. 716620
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia  30303
(404) 331-4437
*jeneane.treace@usdoj.gov*

# UNITED STATES BANKRUPTCY COURT

## Northern District of Georgia

In    Debtor(s)
Re:   **Sonja Nicole Williams**
      1334 Holcombs Pond Ct
      Alpharetta, GA 30022

      **xxx–xx–7291**

Case No.: **19–56304–pmb**
Chapter: **7**
Judge:  **Paul Baisier**

### NOTICE OF APPOINTMENT OF INTERIM TRUSTEE
### AND SCHEDULING OF MEETING OF CREDITORS

**NOTICE IS HEREBY GIVEN** that the United States Trustee has appointed an Interim Trustee in the above–styled bankruptcy case:

**Neil C. Gordon**
**Taylor English Duma LLP**
**Suite 200**
**1600 Parkwood Circle SE**
**Atlanta, GA 30339**

**404–640–5917**

The former Interim Trustee resigned due to a conflict.

**YOU ARE FURTHER NOTIFIED** that, pursuant to 11 U.S.C. Section 341, the Meeting of Creditors will be held on **January 7, 2025** at **08:40 AM** at the following location:
**Zoom video meeting. Go to Zoom.us/join, Enter Meeting ID 777 983 7645, and Passcode 4887773004, OR call 1 (470) 924–8824**

Vania S. Allen
Clerk of Court
U.S. Bankruptcy Court

Dated:  December 18, 2024

Form 192

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                              :        **CASE NO. 19-56304**

                                    :

**SONJA NICOLE WILLIAMS**           :        **CHAPTER 7**

                                    :

   **Debtor.**                      :

## MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AGAINST DELTA AIR LINES, INC. AND CRAIG ALEXANDER

**COMES NOW** the Debtor, Sonja Ross, formerly Williams (hereinafter "Debtor"), acting pro se, and respectfully submits this **Motion for Sanctions for Willful Violation of the Automatic Stay** pursuant to **11 U.S.C. § 362(k)** against Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander"). This Motion seeks redress for specific and deliberate violations of the automatic stay committed by the Defendants during the Debtor's Chapter 7 bankruptcy proceedings. These violations directly interfered with the protections afforded under **11 U.S.C. § 362(a)** and caused significant personal harm to the Debtor, including:

- Financial loss,
- Emotional distress,
- Reputational damage, and
- Procedural inequities.

At the time of the violations, **QrewLive™,** the Debtor's proprietary aviation trade secret, intellectual property, and confidential technology, was property of the bankruptcy estate under **11 U.S.C. § 541(a)** and subject to this Court's exclusive jurisdiction. Both Delta and Alexander acted with actual and constructive knowledge of the Debtor's bankruptcy filing and the automatic stay. Nevertheless, their actions—taken without leave or authorization from this Court—violated federal bankruptcy law and disrupted the orderly administration of the estate.

This Motion is narrowly tailored and does not interfere with or usurp the Chapter 7 Trustee's authority to administer estate property, including **QrewLive™**, or to pursue claims on behalf of the estate. Instead, the Debtor seeks redress for **personal harm** arising directly from the Defendants' willful violations of the automatic stay. The harms asserted here are distinct from claims involving the estate's value and include:

- Emotional distress,
- Reputational damage, and
- The burdens of litigation caused by the Defendants' unlawful conduct.

**WHEREFORE**, the Debtor respectfully requests that this Honorable Court:

1. Impose sanctions on Delta Air Lines, Inc. and Craig Alexander for their willful violations of the automatic stay;
2. Award compensatory damages to address the financial and personal harm caused by Defendants' actions;
3. Award punitive damages to deter future violations and uphold the protections of federal bankruptcy law; and
4. Grant such other relief as deemed just and proper to remedy the harm caused by Defendants' egregious conduct.

## I. INTRODUCTION

This motion arises from the deliberate and willful violations of the automatic stay imposed by 11 U.S.C. § 362(a) by Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") during the Debtor's Chapter 7 bankruptcy proceedings. The automatic stay is one of the most fundamental protections afforded to bankruptcy debtors, ensuring a temporary pause in creditor actions and any interference with property of the bankruptcy estate. The Defendants' conduct—undertaken with actual and constructive knowledge of the Debtor's bankruptcy filing—flagrantly disregarded these protections, undermining both the integrity of the bankruptcy process and the Debtor's rights under federal law.

The automatic stay safeguards procedural integrity by ensuring that estate property is administered exclusively under the supervision of the Bankruptcy Court. Defendants' willful violations undermined this integrity, disrupting the orderly administration of justice.

At the time of the Defendants' actions, QrewLive™, a proprietary aviation trade secret, intellectual property, and confidential technology developed by the Debtor, was property of the bankruptcy estate under 11 U.S.C. § 541(a). As estate property, QrewLive™ was subject to the exclusive jurisdiction of the Bankruptcy Court. Despite this, Delta and Alexander engaged in actions that sought to assert control over QrewLive™ and its derivative functionalities, including through:

- **State Court Litigation**: Alexander initiated litigation in state court asserting ownership of QrewLive™ without authorization from the Bankruptcy Court or the Chapter 7 Trustee, directly interfering with estate property. Delta actively facilitated or failed to intervene in this litigation, further enabling Alexander's unauthorized actions.
- **Commercial Exploitation**: Delta developed and deployed the Flight Family Communication ("FFC") platform, incorporating proprietary functionalities derived from QrewLive™ without Court approval, generating significant operational and financial benefits.
- **Other Unauthorized Actions**: The Defendants engaged in additional conduct that interfered with the orderly administration of the estate and violated the automatic stay.

These actions were taken with both actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ as estate property. Despite these protections, the Defendants knowingly acted in contravention of the automatic stay, demonstrating a disregard for their legal obligations under 11 U.S.C. § 362(a).

This motion does not infringe upon the Chapter 7 Trustee's authority to administer estate property or pursue claims on behalf of the estate. Instead, it seeks redress for distinct, personal harms suffered by the Debtor due to the Defendants' willful violations, including:

- **Emotional Distress**: The Debtor experienced significant emotional harm, including anxiety, sleeplessness, and mental anguish, due to unauthorized litigation and the exploitation of her proprietary technology.
- **Financial Harm**: Delta's unauthorized use of QrewLive™ resulted in significant financial loss to the bankruptcy estate, including lost licensing revenue and avoided development costs. The Debtor also incurred substantial legal fees defending against Alexander's baseless claims during the automatic stay.
- **Reputational Damage**: Delta's unauthorized commercialization of QrewLive™ without attribution and Alexander's assertions of personal ownership damaged the Debtor's professional credibility and diminished future business opportunities.

The Debtor's personal claims are distinct from the estate's value and reflect independent harm suffered due to the Defendants' egregious conduct. The automatic stay is intended to shield not only estate property but also the debtor from precisely this type of improper conduct.

Through this motion, the Debtor respectfully requests that this Court impose sanctions on Delta and Alexander for their willful violations of the automatic stay under 11 U.S.C. § 362(k). These sanctions should include:

1. **Compensatory Damages**: To address the financial and personal harm caused by the Defendants' actions.
2. **Punitive Damages**: To deter future violations and uphold the protections of federal bankruptcy law.
3. **Any Other Relief**: Deemed just and proper to remedy the harm caused by the Defendants' egregious conduct.

By addressing these violations, this Court will reinforce the importance of procedural safeguards, deter similar violations in future bankruptcy cases, and preserve public trust in the integrity of the judicial process.

## II. FACTUAL BACKGROUND

### A. The Debtor's Bankruptcy Filing

On April 23, 2019, the Debtor, Sonja Ross (formerly Williams), filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Georgia. This filing triggered the automatic stay under 11 U.S.C. § 362(a), which prohibited all actions to obtain possession of, or exercise control over, property of the bankruptcy estate without authorization from the Court.

As part of the bankruptcy proceedings, QrewLive™—the Debtor's proprietary aviation trade secret, intellectual property, and confidential technology—was explicitly listed as property of the estate under 11 U.S.C. § 541(a). Prior to bankruptcy, Qrewlive became a part of a larger business strategy, under Skyvier, Inc., in 2016 (an aviation industry related company); Debtor accepted a $50,000 loan; Debtor obtained a $10,000,000.00 investment commitment, which Debtor declined at closing to due to but not limited to terms and value of Debtor's collective technology properties. QrewLive™ is a valuable intellectual property asset with significant commercial potential and was subject to the exclusive jurisdiction of the Bankruptcy Court during the bankruptcy case.

The Chapter 7 Trustee was tasked with the exclusive authority to administer the estate, including any claims or rights associated with QrewLive™. As such, any litigation, development, or use of QrewLive™ required prior approval from either the Bankruptcy Court or the Trustee. Upon information and belief, because of Qrewlive, Alexander *and* Delta have launched a tool chest of technology inspired by and ripped directly from Qrewlive's playbook.

### B. Defendants' Knowledge of the Bankruptcy Filing

Both Defendants, Delta Air Lines, Inc. and Craig Alexander, had actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the bankruptcy estate:

1. **Craig Alexander**:
   - As a former business associate of the Debtor and Debtor child's father, Alexander executed a Mutual Confidentiality Agreement (NDA) with Delta Air Lines, Inc. on August 22, 2016 under his company named, MABA Holdings, LLC. The NDA

explicitly identified QrewLive™ as proprietary and confidential and acknowledged its status as the "sole and exclusive property" of the Debtor.

- Alexander's direct involvement in QrewLive™'s development and the NDA process provided him firsthand knowledge of its proprietary and estate-protected status.

2. **Delta Air Lines, Inc.**:

- Delta Air Lines executed the same NDA with Alexander and MABA Holdings, LLC., which clearly described QrewLive™ as proprietary and confidential. This agreement restricted the use of QrewLive™ to authorized purposes.

- Delta's ongoing relationship with Alexander and involvement in the litigation asserting control over QrewLive™ demonstrates its knowledge of the bankruptcy case and the platform's inclusion as an estate asset.

- Additionally, the public nature of bankruptcy filings provided constructive notice to both Defendants of the automatic stay and QrewLive™'s estate-protected status.

3. **Mental Impressions and Delta's Violation of the NDA Terms**

Delta Air Lines entered into a Non-Disclosure Agreement (NDA) with MABA Holdings, LLC., (acting as Debtor's Agent) explicitly acknowledging QrewLive™ as proprietary and confidential technology. This agreement imposed strict restrictions on the use of QrewLive™, limiting it to authorized purposes and prohibiting its misappropriation. Despite these clear obligations, Delta leveraged mental impressions and concepts derived from QrewLive™ to develop its own technology, a direct violation of the NDA.

Delta's internal policies further compound the significance of this violation. Under its supplier protocols, Delta was obligated to disclose to vendors if similar technology already existed which it inferred from its own *Ethics and Compliance* policy. However, Delta's blatant theft of Qrewlive from Debtor's bankruptcy estates chalks up to corporate greed, as Delta neither possessed comparable technology nor the foundational ideas behind QrewLive™, as evidenced by Delta and Alexander historical actions:

- **2013: Delta** Announces a $140 Million Investment in Technology
  - Delta lacked role-based text messaging technology.

- **2013: Alexander** received Debtor's Property, Qrewlive for Delta Pitch.
- **2014: Alexander** chance cockpit presentation to then-CEO Richard Anderson.
- **2014 (May 28, 2014): Delta** officially received Qrewlive documentation.
    - Delta provided its 5 Yr IT Plan to retro fit Qrewlive into their plans.
- **2014 (June 10, 2014):** Qrewlive is showcased again to Delta. Delta requested a Prototype of QTalk feature.
- **2014 (August):** AKQA, Designs Fly Delta App - Employee worked at ShockTheory (Debtor Tech Company) prior to arriving at AKQA. (14 years ago).
- **2015 (February 26, 2015):** An unauthorized version of Qrewlive/QTalk was presented to Delta by Alexander.
- **2016 (April):** Delta indicated Qrewlive was not a "good fit" and did not have the resources (after the Company that boasts of annual profits in excess of $5 billion and recently announced a $140 million investment in new tech.)
- **2016 (May): Delta** names new CEO, Edward Bastian who confirmed Delta still needed (Qrewlive) text messaging capabilities.
- **2016 (August): Delta** received detailed information on Qrewlive, signed NDA August 2016. Unleashing a treasure trove of confidential information and trade secrets.
- **2016 (August): Alexander** sued Debtor and her company ShockTheory *for ownership of* Qrewlive based upon a two year old Professional Service Agreement; Debtor filed bankruptcy. Alexander failed to follow up on his lawsuit, subsequently the lawsuit case file was administratively closed for lack of action.
- **2016 (September):** Delta floats the idea of buying Qrewlive, and leans into its requirement for Supply Chain Management, but never directs Alexander to become a vendor.
- **2016 (October): Delta goes dark.** *Upon information and belief,* **Delta** went dark on **Alexander**, while in Development. Sky Pro Tablet app, an estimated two-year development process. Refuse questions about Qrewlive integration.
- **2017 (April) TECH LAUNCH: Delta** *discreetly* introduced its "SkyPro Tablet App" to flight attendants, deliberately bypassing Alexander, and Delta Pilot to avoid scrutiny or association with QrewLive™.

- **2017 (May 24, 2017): Delta** shares Qrewlive did not fit a need. Upon information and belief, Delta hires BlueFletch, Tech company to build Qrewlive/FFC.
- **2018 (April) TECH LAUNCH: Delta** *quietly* launched the "Flight Family Communication" ("FFC") platform, enabling real-time digital communication among flight crews—a feature central to QrewLive™'s proprietary design.
- **2018 (November) - Present: Alexander** forced to use FFC (aka "Qrewlive") as a Pilot.
- **November 2018: Delta** posted a public announcement of Flight Family Communication on its website. Does not support it with media buys and advertisements, like other announcements.
  - *Delta reported a 45 percent decrease in the amount of time Delta employees spent traversing the jet bridge to talk with one another, a benefit to 50 percent of all Delta departures, and a 65 percent jump in the ability to depart on time when a team has less than the minimum allotted time to push out.*
- **2021: Alexander**, *as an* **individual,** *sued* **Delta Air Lines** for a *billion dollars*. Never tell the child's mother, inventor ("Debtor") about Delta's theft Qrewlive.
- **2022:** Debtor reformulated Qrewlive™ on Skyvier's blockchain.
- **2023: Delta** concealed Flight Family Communication announcement and blocks public view of its highly successful outcomes using stolen intellectual property.
- **2023: Delta** served Debtor through Alexander's Attorney, Keenan Nix Reproduction of Documents.
- **2024 (April) TECH LAUNCH: Delta** updated its "Fly Delta 6.0" app, *intuitively embedding* and *incorporating* functionalities directly inspired by QrewLive™, enhancing user experience and operational efficiency.
- **2024:** Debtor forced to file for trademarks, provisional patents revealing trade secrets.

Delta's actions demonstrate a calculated strategy to exploit pre-petition **_and_** post-petition QrewLive™'s proprietary concepts and transform them into unauthorized applications, violating the NDA's core terms and the trust inherent in such agreements.

Furthermore, Delta Air Lines' broader business practices underscore this deliberate misappropriation. Delta launched its Supplier Diversity Portal on December 1, 2009, a

collaborative effort with CVM Solutions, LLC., designed to facilitate partnerships with small, minority, and women-owned businesses. However, Delta did not invite MABA Holdings, LLC., or its principal, Captain Craig A. Alexander (a full-time Delta pilot and a non-technological professional), to register in this portal—a standard protocol for potential suppliers under Delta's Supplier Code of Conduct.

Delta was acutely aware that Alexander lacked the capacity to deliver an enterprise-level platform like QrewLive™, given his role as a full-time pilot and the fact that MABA Holdings, LLC. functioned solely as a holding company. Despite this, Delta engaged with Alexander and QrewLive™ over a two-year period, executing an NDA while simultaneously avoiding the application of its supplier protocols. This omission was a deliberate attempt to retain control over QrewLive™'s concepts and derivatives without the oversight that formal supplier registration would have required.

### Key Takeaways:

1. **Violation of NDA Terms:** Delta's development of technology based on mental impressions derived from QrewLive™ demonstrates a breach of its confidentiality obligations under the NDA.
2. **Pattern of Misappropriation:** The timeline of Delta's technology rollouts aligns closely with features inherent to QrewLive™, evidencing intentional and systematic exploitation of proprietary information.
3. **Deceptive Business Practices:** Delta bypassed its own Supplier Diversity protocols, sidestepping ethical supplier engagement processes and concealing its actions to misappropriate QrewLive™ for its own benefit.

These covert actions reveal a calculated disregard for the protections afforded by the NDA, as well as a broader strategy to misappropriate QrewLive™ while avoiding accountability. Delta's actions undermine trust in NDAs, ethical supplier relations, and the protection of proprietary innovations, demonstrating a deliberate and bad-faith exploitation akin to theft in the night..

## C. Defendants' Actions Violating the Automatic Stay

Despite their knowledge of the bankruptcy filing and the automatic stay, the Defendants engaged in the following actions that violated 11 U.S.C. § 362(a):

1. **Unauthorized State Court Litigation Involving QrewLive™**:
   - ○ In July 2021, Alexander initiated litigation in state court asserting personal ownership of QrewLive™ without seeking authorization from the Bankruptcy Court or the Chapter 7 Trustee.
   - ○ Delta actively facilitated or failed to intervene in this litigation, enabling its employee, Alexander to assert control over estate property in violation of the automatic stay.

2. **Commercial Exploitation of QrewLive™ Functionalities**:
   - ○ During the pendency of the bankruptcy, Delta developed and deployed the Flight Family Communication ("FFC") platform, which incorporated key features and functionalities derived directly from QrewLive™, including:
     - ■ **Real-time Role-Based Communication Tools**: To streamline crew coordination.
     - ■ **Irregular Operations (IROPs) Management**: Tools designed to improve situational awareness and address operational inefficiencies.
     - ■ **Workflow Efficiencies**: Consistent with QrewLive™'s proprietary design.
   - ○ Delta's public disclosures highlight these functionalities, demonstrating their direct reliance on QrewLive™'s capabilities.

3. **Failure to Seek Court Authorization**:
   - ○ Neither Delta nor Alexander sought permission from the Bankruptcy Court or the Chapter 7 Trustee to litigate, develop, or use QrewLive™ during the automatic stay. These actions constituted an unauthorized exercise of control over estate property, in direct violation of 11 U.S.C. § 362(a)(3).

The Defendants' unauthorized actions disrupted the procedural safeguards guaranteed under federal bankruptcy law, caused harm to the bankruptcy estate, and imposed substantial burdens on the Debtor.

**D. Harm Caused to the Debtor**

The Defendants' willful violations of the automatic stay caused significant harm to the Debtor, including:

1. **Financial Harm**:
   - The Debtor incurred substantial legal fees defending against Alexander's unauthorized litigation.
   - Delta's unauthorized use of QrewLive™ deprived the estate of significant licensing or monetization opportunities, with comparable platforms generating licensing revenues of approximately $10 million annually. Additionally, Delta avoided development costs estimated at $50 million by exploiting QrewLive™'s functionalities.

2. **Emotional Distress**:
   - The Defendants' actions caused severe emotional harm to the Debtor, including anxiety, sleeplessness, and mental anguish. The stress of defending unauthorized litigation and the exploitation of her proprietary technology compounded the emotional toll of the bankruptcy process.

3. **Reputational Damage**:
   - Delta's unauthorized commercialization of QrewLive™ without attribution and Alexander's baseless assertions of ownership undermined the Debtor's professional credibility as an innovator and entrepreneur. These actions have materially impacted her ability to secure future business opportunities.

4. **Disruption of the Bankruptcy Process**:
   - The Defendants' actions delayed the Chapter 7 Trustee's ability to investigate and monetize QrewLive™ as an estate asset, further burdening the administration of the bankruptcy estate and reducing its value for creditors.

**E. Summary of Defendants' Violations**

The Defendants' actions demonstrate a pattern of willful and egregious disregard for federal bankruptcy law, including:

- **Delta Air Lines' Misconduct**: Unauthorized commercialization of QrewLive™ through the FFC platform, which leveraged estate property for substantial operational and financial gain.
- **Craig Alexander's Misconduct**: Unauthorized initiation of state court litigation and continued procedural misconduct, asserting control over QrewLive™ in violation of the automatic stay.
- **Failure to Seek Authorization**: Both Defendants failed to obtain approval from the Bankruptcy Court or the Trustee, undermining the orderly administration of the estate.

These violations caused substantial harm to the Debtor and the estate, necessitating sanctions to remedy the harm and deter future misconduct.

### III. LEGAL FRAMEWORK

The automatic stay, codified in **11 U.S.C. § 362(a)**, is a fundamental protection afforded to bankruptcy debtors. It prohibits creditors and other parties from taking actions that interfere with the debtor or property of the bankruptcy estate without prior authorization from the Bankruptcy Court. This provision ensures an orderly and equitable administration of the bankruptcy estate while shielding the debtor from unauthorized actions during the pendency of the case.

### A. The Purpose and Scope of the Automatic Stay

The automatic stay serves several critical purposes, including:

1. **Preservation of Estate Property:**
   - Ensures that all property of the bankruptcy estate remains under the jurisdiction of the Bankruptcy Court.
   - Prohibits creditors and third parties from taking possession of or exercising control over estate property without authorization.
2. **Protection of Debtor Rights:**
   - Shields the debtor from harassment, litigation, and other actions that could disrupt the bankruptcy process.
3. **Equitable Treatment of Creditors:**

    ○  Prevents creditors from pursuing individual remedies at the expense of other creditors, ensuring a fair and orderly resolution.

Under **11 U.S.C. § 362(a)**, the automatic stay applies broadly and prohibits actions including:

- "Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." (§ 362(a)(3))
- "Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." (§ 362(a)(6))

These provisions create a clear mandate: creditors and other parties must obtain express court approval before acting in any way that interferes with the property of the estate or the debtor's rights.

### B. Consequences of Violating the Automatic Stay

Actions taken in violation of the automatic stay are **void ab initio**, meaning they are invalid from the outset. Courts have consistently upheld this principle:

- **Kalb v. Feuerstein, 308 U.S. 433 (1940):** Reinforced that actions in violation of the automatic stay are null and without effect.
- **In re Schwartz, 954 F.2d 569 (9th Cir. 1992):** Established that violations of the automatic stay are automatically void unless ratified by the Bankruptcy Court.

Violations of the automatic stay disrupt the integrity of the bankruptcy process and subject violators to liability under federal law.

### C. Remedies for Violations of the Automatic Stay

Under **11 U.S.C. § 362(k)(1)**, a debtor injured by a willful violation of the automatic stay is entitled to recover damages. These include:

1. **Compensatory Damages:**
    ○  Actual financial losses, including legal fees and costs incurred due to the violation.

- ○ Emotional distress damages, which are recoverable if the violation caused significant personal harm.
  - ■ **In re Dawson, 390 F.3d 1139 (9th Cir. 2004):** Confirmed that emotional distress damages are appropriate for willful violations causing significant harm.

2. **Punitive Damages:**
   - ○ Awarded in cases of egregious, reckless, or bad-faith violations to deter future misconduct.
     - ■ **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003):** Punitive damages are justified when violations are particularly egregious or undertaken in bad faith.

## D. Criteria for a Willful Violation

A violation of the automatic stay is willful if:

1. The violator had **knowledge** of the bankruptcy filing.
2. The violator committed an **intentional act** that violated the stay, even if there was no intent to violate bankruptcy law.
   - ○ **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999):** Clarified that willfulness requires only knowledge of the bankruptcy and intent to act, not intent to violate the law.

Both Delta Air Lines, Inc. and Craig Alexander had actual or constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the bankruptcy estate. Despite this, they engaged in deliberate actions to assert control over QrewLive™, violating the automatic stay.

## E. The Bankruptcy Court's Exclusive Jurisdiction

Under **28 U.S.C. § 1334(e)(1)**, the Bankruptcy Court has exclusive jurisdiction over all property of the estate. This authority extends to:

- Enforcing the automatic stay.

- Voiding unauthorized actions that interfere with estate property.
- Imposing sanctions and awarding damages to remedy harm caused by stay violations.

The Court's authority to protect the estate and the debtor from unauthorized interference underscores the critical importance of compliance with the automatic stay.

### F. Application to the Defendants' Actions

The actions of Delta Air Lines, Inc. and Craig Alexander constitute willful violations of the automatic stay under **11 U.S.C. § 362(k)**:

1. **Delta Air Lines, Inc.:**
   - Developed and commercialized the Flight Family Communication (FFC) platform, incorporating proprietary functionalities derived from QrewLive™, without Court approval.
   - These acts directly interfered with estate property, violating § 362(a)(3).

2. **Craig Alexander:**
   - Initiated state court litigation asserting personal ownership of QrewLive™, despite its clear inclusion in the bankruptcy estate.
   - His actions disrupted the Trustee's administration of estate property, violating § 362(a)(3) and § 362(a)(6).

Both Defendants' willful disregard for the automatic stay caused significant harm to the Debtor and the bankruptcy estate, warranting sanctions, compensatory damages, and punitive damages to address their misconduct and deter future violations.

### IV. ARGUMENTS

The actions of Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") constitute clear and willful violations of the automatic stay under **11 U.S.C. § 362(a)**. These violations disrupted the procedural integrity of the bankruptcy process, caused significant harm to the Debtor, and obstructed the Trustee's administration of the bankruptcy estate. This section sets forth the legal and factual basis for imposing sanctions, awarding damages, and deterring future violations.

## A. Delta Air Lines, Inc. Willfully Violated the Automatic Stay

### 1. Unauthorized Exercise of Control Over Estate Property

Delta's actions constitute a willful violation of **11 U.S.C. § 362(a)(3)**, which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

- **QrewLive™ as Estate Property:** QrewLive™, the Debtor's proprietary aviation technology, was explicitly listed as property of the bankruptcy estate under **11 U.S.C. § 541(a)** and was under the exclusive jurisdiction of the Bankruptcy Court.
- **Delta's Unauthorized Actions:** Delta developed and deployed the Flight Family Communication (FFC) platform during the pendency of the bankruptcy, leveraging proprietary functionalities derived from QrewLive™ without authorization from the Court or the Chapter 7 Trustee. These actions directly interfered with estate property.

### 2. Delta's Actions Were Willful

Delta's violation of the automatic stay was willful because it had actual and constructive knowledge of the Debtor's bankruptcy filing and the inclusion of QrewLive™ in the estate:

- **Actual Knowledge:** Delta executed a Mutual Confidentiality Agreement (NDA) in 2016 that explicitly identified QrewLive™ as proprietary and confidential.
- **Constructive Knowledge:** The bankruptcy filing and QrewLive™'s inclusion as estate property were publicly available, providing constructive notice to Delta of the automatic stay's applicability. Despite this knowledge, Delta knowingly commercialized QrewLive™'s functionalities, demonstrating a blatant disregard for the protections afforded under federal bankruptcy law.

### 3. Harm Caused by Delta's Violations

Delta's actions caused substantial harm to the Debtor and the estate, including:

- **Financial Loss:** The estate was deprived of licensing revenues, conservatively estimated at $10 million annually, and Delta avoided development costs of approximately $50 million by exploiting QrewLive™.
- **Reputational Damage:** Delta's unauthorized use of QrewLive™ without attribution undermined the Debtor's professional credibility as an innovator and aviation technology leader.
- **Procedural Harm:** Delta's actions delayed the Trustee's ability to monetize QrewLive™ for the benefit of creditors, disrupting the equitable administration of the estate.

### B. Craig Alexander Willfully Violated the Automatic Stay

### 1. Interference with Estate Property Through Unauthorized Litigation

Alexander's initiation of state court litigation asserting ownership of QrewLive™ constitutes a direct violation of **11 U.S.C. § 362(a)(3)** and § 362(a)(6):

- **Assertion of Ownership:** Alexander's baseless claims over QrewLive™ interfered with the Trustee's exclusive authority to administer estate property.
- **Litigation Without Leave of Court:** Alexander initiated the litigation without seeking authorization from the Bankruptcy Court or coordinating with the Trustee, in direct violation of the automatic stay.

### 2. Alexander's Actions Were Willful

Alexander's willful violation of the automatic stay is evidenced by:

- **Knowledge of the Bankruptcy Filing:** As a former business associate of the Debtor, Alexander was aware of her bankruptcy case and the inclusion of QrewLive™ as estate property.
- **Intentional Interference:** Alexander deliberately pursued litigation to assert control over QrewLive™, despite knowing that his actions violated the automatic stay.

### 3. Harm Caused by Alexander's Violations

Alexander's actions caused substantial harm, including:

17 • Motion For Sanctions For Willful Violation Of The Automatic Stay

- **Legal Costs:** The Debtor was forced to incur significant legal fees to defend against Alexander's baseless litigation.
- **Emotional Distress:** The stress of defending unauthorized claims exacerbated the emotional burdens of the bankruptcy process.
- **Procedural Delays:** Alexander's litigation disrupted the Trustee's efforts to monetize QrewLive™, reducing its potential value to the estate.

### C. Procedural Misconduct and Disruption of the Bankruptcy Process

The actions of Delta and Alexander undermined the procedural integrity of the automatic stay and the Bankruptcy Court's exclusive jurisdiction over estate property.

### 1. Procedural Integrity of the Automatic Stay

The automatic stay is essential to maintaining a fair and orderly framework for bankruptcy proceedings. By circumventing this framework, the Defendants:

- Disrupted the Trustee's administration of QrewLive™.
- Undermined the equitable treatment of creditors by reducing the value of estate property.

### 2. Impact on the Trustee's Administration of the Estate

The Defendants' violations forced the Trustee to address unauthorized litigation and commercial use of estate property, delaying the monetization of QrewLive™ and increasing administrative costs.

### 3. Harm to Creditors

The unauthorized exploitation of QrewLive™ deprived the estate of valuable licensing and monetization opportunities, reducing the funds available for distribution to creditors.

### D. The Need for Sanctions and Deterrence

The Defendants' willful violations of the automatic stay warrant the imposition of sanctions to remedy the harm caused and deter future misconduct.

## 1. Compensatory Damages

Under **11 U.S.C. § 362(k)(1)**, the Debtor and the estate are entitled to recover compensatory damages, including:

- **Legal Costs:** Fees and expenses incurred to address the Defendants' violations.
- **Financial Losses:** Lost licensing revenues and avoided development costs caused by Delta's unauthorized use of QrewLive™.
- **Emotional Distress:** Damages for the mental anguish and reputational harm suffered by the Debtor.

## 2. Punitive Damages

Punitive damages are appropriate to deter egregious conduct and uphold the sanctity of the automatic stay:

- The Defendants' actions were reckless, intentional, and undertaken with knowledge of their obligations under bankruptcy law.
- Punitive damages will serve as a deterrent to prevent future violations by similarly situated parties.

## 3. Restoration of Procedural Integrity

By imposing sanctions, this Court will reinforce the fundamental protections of the automatic stay, ensuring that the bankruptcy process remains fair, equitable, and free from unauthorized interference.

## IN CONCLUSION

The actions of Delta Air Lines, Inc. and Craig Alexander demonstrate a pattern of willful and egregious violations of the automatic stay. These actions caused substantial harm to the Debtor and the estate, disrupted the administration of the bankruptcy process, and necessitates corrective action by this Court. The imposition of sanctions, compensatory damages, and punitive damages will not only remedy the harm caused but also deter future misconduct and reinforce the procedural integrity of bankruptcy law.

## V. CASE LAW

The automatic stay is a cornerstone of bankruptcy law, designed to protect debtors and estate property while ensuring the equitable administration of bankruptcy proceedings. The following case law underscores the principles governing the automatic stay, the consequences of its violation, and the remedies available to parties injured by willful violations.

### A. Violations of the Automatic Stay Are Void and Sanctionable

1. **In re Schwartz, 954 F.2d 569 (9th Cir. 1992)**
   - **Principle:** Actions taken in violation of the automatic stay are void ab initio and without legal effect.
   - **Application:** This foundational ruling establishes that unauthorized litigation or other actions involving estate property during the automatic stay cannot stand, even if undertaken in good faith or without malicious intent.

2. **Kalb v. Feuerstein, 308 U.S. 433 (1940)**
   - **Principle:** The Supreme Court emphasized the inviolability of the automatic stay, holding that violations undermine the integrity of the bankruptcy process and are subject to nullification.
   - **Application:** All actions by Delta Air Lines, Inc. and Craig Alexander involving QrewLive™ during the automatic stay are void ab initio, including litigation and commercial exploitation.

3. **Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002)**
   - **Principle:** The automatic stay is mandatory and imposes a strict prohibition on creditor actions.
   - **Application:** This case underscores the duty of all parties with knowledge of the bankruptcy filing to cease actions affecting the estate or the debtor, reinforcing the willful nature of the Defendants' misconduct.

### B. Willful Violations of the Automatic Stay

1. **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999)**

- ○ **Principle:** A willful violation occurs when the violator has knowledge of the bankruptcy case and intentionally performs an act that violates the stay. Malicious intent is not required.
- ○ **Application:** Both Delta and Alexander acted willfully by knowingly engaging in litigation and commercial exploitation of QrewLive™ after the Debtor's bankruptcy filing.

2. **In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325 (3d Cir. 1990)**
   - ○ **Principle:** Intent to violate the stay is irrelevant; knowledge of the bankruptcy filing and the act itself suffice to establish willfulness.
   - ○ **Application:** Delta and Alexander's actions demonstrate willful disregard for federal bankruptcy protections, warranting sanctions under 11 U.S.C. § 362(k).

## C. Damages for Emotional Distress and Financial Loss

1. **In re Dawson, 390 F.3d 1139 (9th Cir. 2004)**
   - ○ **Principle:** Emotional distress damages are recoverable under § 362(k) when a violation causes significant personal harm.
   - ○ **Application:** The anxiety, sleeplessness, and mental anguish experienced by the Debtor due to unauthorized litigation and the exploitation of her proprietary technology qualify as recoverable damages.

2. **In re Lile, 103 B.R. 830 (Bankr. S.D. Tex. 1989)**
   - ○ **Principle:** Evidentiary hearings are necessary to address complex damages, including emotional distress, reputational harm, and financial losses.
   - ○ **Application:** This case supports the Debtor's request for an evidentiary hearing to quantify damages and establish the full scope of harm caused by the Defendants' actions.

3. **In re Roman, 283 B.R. 1 (B.A.P. 9th Cir. 2002)**
   - ○ **Principle:** Actual damages, including legal fees and costs, are recoverable for willful violations of the stay.
   - ○ **Application:** The significant legal fees incurred by the Debtor in defending against Alexander's baseless litigation qualify as actual damages under § 362(k).

## D. Punitive Damages and Deterrence

1. **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003)**
   - **Principle:** Punitive damages are appropriate in cases of egregious, reckless, or bad-faith violations of the automatic stay.
   - **Application:** The Defendants' knowing and deliberate violations, including Delta's commercial exploitation of QrewLive™ without attribution and Alexander's unauthorized litigation, meet the threshold for punitive damages.

2. **In re Roche, 361 B.R. 615 (Bankr. N.D. Ga. 2005)**
   - **Principle:** Punitive damages are necessary to deter future violations and emphasize the sanctity of the automatic stay.
   - **Application:** Awarding punitive damages will deter Delta and Alexander, and similarly situated parties, from disregarding federal bankruptcy law.

## E. Jurisdiction and Injunctive Relief

1. **In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**
   - **Principle:** The Bankruptcy Court has exclusive jurisdiction over disputes involving property of the estate and actions affecting its administration.
   - **Application:** This Court has the authority to enjoin Delta and Alexander from continuing litigation or exploiting QrewLive™ and to void unauthorized actions taken during the stay.

2. **In re Spirtos, 221 F.3d 1079 (9th Cir. 2000)**
   - **Principle:** The Bankruptcy Court's authority extends to issuing injunctions and corrective orders to preserve estate property and enforce compliance with the automatic stay.
   - **Application:** Injunctive relief is necessary to prevent further harm and ensure that the Defendants adhere to federal bankruptcy law.

3. **In re Gallo, 539 B.R. 88 (Bankr. S.D.N.Y. 2015)**
   - **Principle:** Injunctive relief under 11 U.S.C. § 105(a) is appropriate to protect estate property and remedy ongoing harm caused by violations of the automatic stay.

    ○ **Application:** The Court should issue injunctions prohibiting Delta and Alexander from further unauthorized actions and directing corrective measures to address procedural harm.

## F. Procedural Integrity and Accountability

1. **Law v. Siegel, 571 U.S. 415 (2014)**
   - ○ **Principle:** Bankruptcy Courts have inherent authority to impose sanctions for bad-faith conduct that undermines the integrity of the judicial process.
   - ○ **Application:** The Defendants' procedural misconduct, including unauthorized litigation and exploitation of estate property, justifies sanctions to uphold the integrity of the bankruptcy system.

2. **In re Quin v. County of Kauai Dep't of Transp., 733 F.3d 267 (9th Cir. 2013)**
   - ○ **Principle:** Courts must address procedural misconduct to ensure fairness and accountability in bankruptcy proceedings.
   - ○ **Application:** Corrective actions are necessary to address the procedural harm caused by the Defendants' unauthorized actions.

The Defendants' actions violated the automatic stay under 11 U.S.C. § 362(a), disrupted the administration of the bankruptcy estate, and caused substantial harm to the Debtor. The case law cited provides a robust framework for the remedies sought in this Motion, including compensatory damages, punitive damages, injunctive relief, and corrective actions. By applying these principles, this Court can address the harm caused, restore procedural integrity, and deter future violations of the automatic stay.

## VI. RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that this Honorable Court grant the following relief to address the harm caused by Delta Air Lines, Inc. and Craig Alexander's willful violations of the automatic stay under **11 U.S.C. § 362(k):**

## 1. Declare Violations of the Automatic Stay

- **Findings of Fact:** Declare that the actions of Delta Air Lines, Inc. and Craig Alexander, as outlined herein, constitute willful violations of the automatic stay under **11 U.S.C. § 362(a)**.
- **Void Unauthorized Actions:** Declare that all actions taken by the Defendants in violation of the automatic stay, including state court litigation and unauthorized use of QrewLive™, are void ab initio and without legal effect.

## 2. Award Compensatory Damages

- **To the Debtor:**
  - **Legal Fees:** Award all costs and fees incurred in defending against unauthorized litigation initiated by Alexander and addressing Delta's unauthorized use of QrewLive™.
  - **Emotional Distress:** Award damages for the mental anguish, sleeplessness, anxiety, and reputational harm caused by the Defendants' misconduct.
- **To the Bankruptcy Estate:**
  - **Lost Licensing Revenues:** Award damages for the estate's lost licensing opportunities, conservatively estimated at $10 million annually.
  - **Avoided Development Costs:** Compensate the estate for the approximate $50 million in avoided development costs resulting from Delta's unauthorized use of QrewLive™.

## 3. Award Punitive Damages

Impose punitive damages against Delta Air Lines, Inc. and Craig Alexander to:

- **Deterrence:** Deter future violations of the automatic stay by these or other parties.
- **Reaffirmation of Legal Protections:** Reinforce the importance of compliance with bankruptcy law and uphold the integrity of the judicial process.

## 4. Issue Injunctive Relief

Issue an injunction under **11 U.S.C. § 105(a)** to:

- Prohibit Delta Air Lines, Inc., Craig Alexander, and any affiliated parties from:
    - Continuing litigation or asserting claims relating to QrewLive™ in any forum without express authorization from this Court.
    - Engaging in any unauthorized use, development, or commercialization of QrewLive™ or its derivative functionalities.
- Require the Defendants to:
    - **Cease Exploitation:** Immediately cease the use of QrewLive™ or any related intellectual property.
    - **Submit Accounting:** Provide a detailed report of all actions taken during the bankruptcy proceedings involving QrewLive™, including development efforts, revenues earned, and parties involved.

## 5. Order Corrective Actions

Direct the Defendants to:

- **Discovery Disclosure:** Provide all withheld materials and communications related to QrewLive™, litigation efforts, or commercialization attempts to the Debtor and the Chapter 7 Trustee.
- **Restitution:** Compensate the bankruptcy estate for any damages caused by their unauthorized use and interference.

## 6. Request an Evidentiary Hearing

Direct that an evidentiary hearing be held to:

- Quantify the financial harm caused to the Debtor and the bankruptcy estate, including lost licensing revenue and avoided development costs.
- Document the emotional and reputational harm inflicted upon the Debtor.
- Clarify procedural inefficiencies caused by the Defendants' violations.

## 7. Additional Relief as Deemed Just and Proper

Grant such other and further relief as this Court deems just and equitable under the circumstances, including:

- **Referral for Review:** Referral of the Defendants' actions to appropriate disciplinary authorities for review of ethical violations, where applicable.
- **Acknowledgment of Personal Harm:** Recognize the Debtor's personal claims arising directly from the Defendants' willful violations, independent of the bankruptcy estate's value.

## IN CONCLUSION

By granting this relief, the Court will remedy the harm caused by Delta Air Lines, Inc. and Craig Alexander, deter future violations of the automatic stay, and reaffirm the integrity of the bankruptcy process. The requested sanctions and damages will not only compensate the Debtor and the bankruptcy estate for their losses but also protect the fundamental protections afforded under federal bankruptcy law.

## IV. CASE LAW

The automatic stay is a cornerstone of bankruptcy law, designed to protect debtors and ensure the orderly administration of the bankruptcy estate. Courts have repeatedly emphasized the mandatory nature of the automatic stay and the consequences for parties that willfully violate its protections. The following cases provide a robust framework for this Court's authority to impose sanctions, award damages, and issue injunctive relief in response to the Defendants' actions.

### Violations of the Automatic Stay Are Void and Sanctionable

1. **In re Schwartz, 954 F.2d 569 (9th Cir. 1992)**
   - Holds that actions taken in violation of the automatic stay are void ab initio and without legal effect.
   - Establishes that the automatic stay is a fundamental protection for debtors, and violations undermine the integrity of the bankruptcy process.
2. **Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002)**

- ○ Reinforces the mandatory nature of the automatic stay, requiring strict compliance by all parties.
- ○ Supports the imposition of sanctions to deter future violations and protect the rights of debtors.

3. **In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999)**
   - ○ Defines a willful violation of the automatic stay as occurring when a party has knowledge of the bankruptcy filing and engages in intentional acts that violate the stay.
   - ○ Clarifies that intent to violate the stay is not required; only knowledge of the filing and the resulting actions suffice.

**Damages for Emotional Distress and Financial Loss**

1. **In re Dawson, 390 F.3d 1139 (9th Cir. 2004)**
   - ○ Affirms that emotional distress damages are recoverable under § 362(k) when a willful violation of the automatic stay causes significant personal harm.
   - ○ Recognizes the severe emotional toll that stay violations can impose on debtors, including anxiety, mental anguish, and reputational harm.

2. **In re Lile, 103 B.R. 830 (Bankr. S.D. Tex. 1989)**
   - ○ Supports the use of evidentiary hearings to address complex damages caused by stay violations, including financial loss, emotional distress, and reputational harm.
   - ○ Emphasizes the importance of transparency and a full factual record to ensure proper assessment of damages.

**Jurisdiction and Injunctive Relief**

1. **In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**
   - ○ Highlights the Bankruptcy Court's exclusive jurisdiction over estate property and disputes involving such property.
   - ○ Requires litigants to seek relief from the Bankruptcy Court before pursuing state court actions involving estate property, underscoring the preemptive scope of federal bankruptcy law.

2. **In re Spirtos, 221 F.3d 1079 (9th Cir. 2000)**

- ○ Confirms the Bankruptcy Court's exclusive authority to resolve disputes related to property of the estate.
- ○ Demonstrates the necessity of injunctive relief to prevent further violations of the automatic stay and protect estate property.

3. **In re Gallo, 539 B.R. 88 (Bankr. S.D.N.Y. 2015)**
   - ○ Justifies injunctive relief under 11 U.S.C. § 105(a) to prevent ongoing harm when violations of the automatic stay disrupt estate administration or debtor protections.
   - ○ Affirms the Court's authority to issue orders preserving the integrity of the bankruptcy process.

## Misuse of Evidence and Procedural Misconduct

1. **Law v. Siegel, 571 U.S. 415 (2014)**
   - ○ Addresses the Bankruptcy Court's authority to impose sanctions for bad-faith litigation conduct, including the misuse of tainted evidence.

2. **In re Quin v. County of Kauai Dep't of Transp., 733 F.3d 267 (9th Cir. 2013)**
   - ○ Demonstrates the consequences of failing to disclose relevant evidence or tampering with materials in bankruptcy cases, warranting sanctions and additional scrutiny.

3. **In re Denis v. Attorney General, 633 F.3d 201 (3d Cir. 2011)**
   - ○ Emphasizes the importance of maintaining the integrity of the judicial process, particularly when evidence is mishandled or misused in a manner that obstructs justice.

## Sanctions and Deterrence

1. **In re Gagliardi, 290 B.R. 808 (Bankr. D. Colo. 2003)**
   - ○ Supports punitive damages under § 362(k) in cases of egregious or bad-faith violations of the automatic stay.
   - ○ Demonstrates that punitive damages are a necessary deterrent to prevent future violations and uphold the integrity of bankruptcy protections.

2. **In re Atl. Bus. & Cmty. Corp., 901 F.2d 325 (3d Cir. 1990)**

- Reinforces the Court's ability to impose punitive damages when violations are reckless, intentional, or egregious, ensuring that violators are held accountable.

## Procedural Integrity

**In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)**: The court underscored the importance of procedural integrity by reaffirming the Bankruptcy Court's exclusive jurisdiction over disputes involving estate property. Unauthorized actions by litigants undermine this integrity, warranting intervention and sanctions.

## Additional Arguments Based on Case Law

1. **Transparency in Damages Assessment:**
   - **In re Schwartz** and **In re Lile** both emphasize the need for evidentiary hearings to address complex damages caused by violations of the automatic stay.
   - Debtor requests a hearing to establish the full extent of financial, emotional, and reputational harm.

2. **Jurisdiction and Injunctive Relief:**
   - **In re Gruntz** and **In re Spirtos** confirm this Court's exclusive jurisdiction over QrewLive™ as a bankruptcy estate asset.
   - Injunctive relief is necessary to prevent further violations of the automatic stay and protect the integrity of the bankruptcy process.

3. **Sanctions and Deterrence:**
   - **Eskanos & Adler** and **In re Gagliardi** underscore the importance of sanctions in deterring violations of the automatic stay.
   - Punitive damages are warranted to prevent future misconduct by Delta and Alexander and to uphold the fundamental protections of bankruptcy law.

## VII. CONCLUSION

The willful violations of the automatic stay by Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander") constitute a grave breach of the protections afforded under 11 U.S.C. § 362(a). These violations—comprising unauthorized litigation, commercial exploitation, and

procedural misconduct—interfered with the orderly administration of the bankruptcy estate, caused substantial harm to the Debtor, and undermined the integrity of the judicial process.

The automatic stay is a cornerstone of bankruptcy law, designed to protect both estate property and the debtor from unauthorized actions, while ensuring an equitable and orderly framework for resolving disputes. The Defendants' actions flagrantly disregarded these protections, harming not only the Debtor but also the bankruptcy estate and its creditors. Such conduct compromises the sanctity of the automatic stay, disrupts the balance of the bankruptcy process, and necessitates decisive action by this Court to remedy the harm and deter future misconduct.

The relief sought in this Motion is narrowly tailored to address the personal harm suffered by the Debtor and the procedural disruptions caused by the Defendants' violations. Importantly, this Motion does not infringe upon the Chapter 7 Trustee's authority to administer estate property or pursue claims related to QrewLive™. Instead, it seeks redress for the specific and personal harms inflicted by Delta and Alexander's willful actions, which include:

- **Emotional Distress:** The stress of defending against unauthorized litigation and the exploitation of QrewLive™ has caused the Debtor significant emotional harm, including anxiety, sleeplessness, and reputational injury.
- **Financial Harm:** The Defendants' unauthorized use of QrewLive™ deprived the bankruptcy estate of substantial licensing and monetization opportunities, delayed its administration, and forced the Debtor to incur unnecessary legal expenses.
- **Procedural Inequities:** The Defendants' actions undermined the procedural safeguards of the bankruptcy process, delaying the Trustee's efforts to monetize QrewLive™ and diminishing the estate's overall value.

By addressing these violations and imposing sanctions, this Court will reaffirm the importance of the automatic stay and uphold the integrity of the bankruptcy system. The remedies requested are necessary to correct the harm caused, restore procedural fairness, and deter future violations by similarly situated parties.

**WHEREFORE, the Debtor respectfully requests that this Honorable Court:**

1. **Declare Violations of the Automatic Stay:**

   Declare that the actions of Delta Air Lines, Inc. and Craig Alexander constitute willful violations of the automatic stay under 11 U.S.C. § 362(a).

2. **Void Unauthorized Actions:**

   Void all actions taken by the Defendants in violation of the automatic stay, including state court litigation involving QrewLive™ and commercial exploitation of its proprietary functionalities.

3. **Award Compensatory Damages:**

   Award compensatory damages to the Debtor and the bankruptcy estate, including:

   - Legal fees and costs incurred by the Debtor due to unauthorized litigation.
   - Damages for emotional distress, mental anguish, and reputational harm.
   - Compensation for lost licensing revenue and monetization opportunities resulting from Delta's unauthorized use of QrewLive™.

4. **Impose Punitive Damages:**

   Impose punitive damages to deter future violations of the automatic stay and to underscore the critical importance of adherence to federal bankruptcy law.

5. **Issue Injunctive Relief:**

   Grant injunctive relief under 11 U.S.C. § 105(a) to:

   - Prohibit Delta Air Lines, Inc., Craig Alexander, and their agents from continuing litigation or exploiting QrewLive™ without prior Court authorization.
   - Enjoin all parties from interfering with the Trustee's administration of QrewLive™ and other estate property.

6. **Direct Corrective Actions:**

   Require the Defendants to:

   - Cease reliance on improperly obtained evidence or information.
   - Provide a detailed accounting of their actions involving QrewLive™ during the bankruptcy proceedings.
   - Ensure full compliance with the automatic stay and related Court orders.

7. **Schedule an Evidentiary Hearing:**

   Direct an evidentiary hearing to:

   - Quantify the financial and emotional harm caused to the Debtor.

- ○ Establish the full extent of the estate's financial losses resulting from the Defendants' misconduct.
- ○ Address procedural inequities arising from the Defendants' unauthorized actions.

8. **Grant Additional Relief:**

   Grant such other and further relief as this Court deems just and proper to address the egregious nature of the Defendants' misconduct, including referral to appropriate disciplinary authorities for further investigation of ethical violations.

The Debtor has no intention to challenge any relief that overlaps with the Trustee's administration of the bankruptcy estate. Recognizing the global scale of Delta's operations and the worldwide expansion of this technology upon information and belief, the Debtor submits that a delay in addressing these violations would impose significant burdens on the Trustee to gain familiarity with the complexities of the case. By taking decisive action, this Court will not only remedy the substantial harm inflicted by the Defendants but also reaffirm the foundational protections of the automatic stay, deterring future violations and preserving public trust in the integrity of the bankruptcy process.

Respectfully submitted this 18 day of December, 2024.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

**Debtor, Acting Pro Se**

Sonja Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 19-56304** |
| | : | |
| **SONJA NICOLE WILLIAMS** | : | **CHAPTER 7** |
| | : | |
| **Debtor.** | : | |

## CERTIFICATION OF SERVICE

I hereby certify that on this 16 day of December, 2024, I served a true and correct copy of the foregoing **MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AGAINST DELTA AIR LINES, INC. AND CRAIG ALEXANDER** by first-class mail, postage prepaid, and/or via electronic mail to the following parties:

**Willie C. Ellis, Jr.**
Ellis Legal Group LLC

*Attorney for Craig A. Alexander, MABA Holdings, LLC., and Shelia Alexander.*

**Darren Summerville**
Georgia Bar No. 691978
1226 Ponce de Leon Ave.
Atlanta, GA 30306
 T: (770) 635-0030
 F: (770) 635-0029
darren@summervillefirm.com

*Former Attorney for Craig A. Alexander*

**Christine L. Mast**
Georgia Bar No. 461349
**Jacob D. Davis**

**Richard F. Waddington**
Chandler Law LLC
4080 McGinnis Ferry Road,
Building 500, Suite 502
Alpharetta, GA 30005
Email:
richard@chandler-law.net

*Attorney for Mike Rafi*

ANOZIE, LLP,
Nnamdi M. Anozie
Georgia Bar No. 211407
6120 Swiss Avenue #140838
Dallas, Texas, 75214.
 T: 210-606-3440
 E: nma@anoziellp.com

*Former Counsel For Intervenor Sonja Ross*

**Office of the United States Trustee**
Northern District of Georgia
75 Ted Turner Dr
Room 362
Atlanta, GA 30303

**Mary Ida Townson**
United States Trustee
Region 21

**United States Department of Justice**
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Georgia Bar No. 382586

303 Peachtree Street,
Suite 4000
Atlanta, GA 30308-3243
(404) 614-7400 (phone)
(855) 889-4588 (fax)
cmast@hpylaw.com
jdavis@hpylaw.com

*Counsel for Defendants
Darren Summerville
Keenan Nix, Morgan & Morgan
Atlanta, PLLC*

Komal Patel, Esq.
Department 981
1030 Delta Boulevard
Atlanta, GA 30354-1989
komal.a.patel@delta.com

*Assistant General Counsel
Delta Air Lines, Inc.*

Keenan R.S. Nix, Esq.
Christopher J. Graddock, Esq.
Patrick A. Dawson, Esq.
Morgan & Morgan Atlanta,
PLLC
P.O. Box 57007
Atlanta, GA 30343-1007
knix@forthepeople.com
cgraddock@forthepeople.com
pdawson@forthepeople.com

.
Anna Green Cross, Esq.
Meredith C. Kincaid, Esq.
The Summerville Firm, LLC
1226 Ponce de Leon Ave, NE
Atlanta, GA 30306

anna@summervillelaw.com
meredith@summervillelaw.com

Lee Wallace, Esq.

**Kimberly L. Copeland**
Georgia Bar No. 186783

261 N. Brunswick St,
P.O. Box 1091,
Jesup, Georgia, 31546.
T: 912-530-7317
kim12cope@aol.com

*Former Counsel For
Intervenor Sonja Ross*

**David L. Balser**
Georgia Bar No. 035835

**Lawrence A. Slovensky**
Georgia Bar No. 653005

**James M. Brigman**
Georgia Bar No. 254905

**Charles G. Spalding, Jr**.
Georgia Bar No. 411926

KING & SPALDING, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: 404-572-4600
Fax: 404-572-5100

dbalser@kslaw.com
lslovensky@kslaw.com
mbrigman@kslaw.com
cspading@kslaw.com

**Julia C. Barret**t
Georgia Bar No. 354322
KING & SPALDING LLP
500 W. Second Street, Suite
1800
Austin, Texas 78701
Telephone: 512-457-2053
Fax: 512-457-2100
jbarrett@kslaw.com

Tel. (404) 331-4488

**Adriano O. Iqbal**
Georgia Bar No. 217122
adriano.o.iqbal@usdoj.go

*Trustee for Bankruptcy
Estate of Intervenor Sonja
Nicole Williams Ross*

Danielle J Eliot
GA Bar #142243

Law Office of Danielle J
Eliot PC 1001 Weatherstone
Pkwy, Suite 420 Woodstock,
GA 30188
Phone: 770-672-6735
danielle@djelawfirm.com

*Former Counsel For
Debtor Sonja Ross*

The Wallace Law Firm, LLC    **Attorney for**
6030 River Chase Circle      **Delta Air Lines, Inc.**
Atlanta, GA 30328
lee@thewallacelawfirm.com

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted this 18 day of December, 2024.

*/s/ Sonja Ross*
Sonja Ross (Formerly Williams), Inventor

**Debtor, Acting Pro Se**

Sonja Williams Ross
PO BOX 3920
Alpharetta, GA 30023
T: (210) 960-6898
E: sonja@sonjaross.com