FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

2025 JAN 16 PM 2: 02

VANRA C. ALLEN
CLERK
BY: [signature] Rachael Smith
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>SONJA NICOLE WILLIAMS,<br><br>Debtor. | CASE NO. 19-56304<br><br>CHAPTER 7 |

## CRAIG ALEXANDER'S OPPOSITION TO MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

Craig Alexander (hereinafter, "Mr. Alexander") hereby opposes Debtor Sonja Ross's (hereinafter, "Debtor") Motion for Sanctions for Willful Violation of the Automatic Stay Against Delta Air Lines, Inc. and Craig Alexander (Docket No. 229) (hereinafter, the "Motion") as follows:

### I. INTRODUCTION

This Motion is yet another attempt by Debtor to wrongfully become involved in Craig Alexander's business affairs following the end of their romantic involvement. Debtor failed to assert any ownership of Craig Alexander's application QrewLive within these bankruptcy proceedings, of which Debtor has no such ownership. Debtor later discovered, however, through a subpoena for documents issued by Delta to Debtor that Mr. Alexander was pursuing a claim in State Court against his employer for misappropriation of trade secrets. Debtor filed a Motion to Intervene, wrongfully asserting ownership of QrewLive, which was soon dismissed; however, because of this wrongful and meritless assertion, Debtor has caused long dismissed proceedings before this Court to be reopened due to an alleged failure to disclose estate property that she never had any ownership in.

Now, representing herself *pro se* after at least three sets of lawyers have withdrawn as Debtor's counsel, Debtor uses disorganized and harassing emails and filings, which are laden with inaccuracies and falsehoods, to rehash Debtor's grievances against her former romantic partner

Page 1 of 11

Craig Alexander. However, the Motion must fail on the grounds that Debtor never had ownership of QrewLive and never listed Craig Alexander as a creditor of the estate. As such, Craig Alexander never received actual notice of these proceedings such that any alleged violation of the automatic stay could be considered willful. Debtor's egregious and unchecked behavior should not be allowed to continue. This Court should therefore DENY Debtor's Motion.

## II.    FACTS AND PROCEDURAL HISTORY

As a long-time pilot for Delta, Craig Alexander recognized the need for better real-time communication between the flight crew and flight operations. Mr. Alexander sought the assistance of application developers to bring his idea to life in the hope that he could pitch a completed application to his employer. One such developer, ShockTheory, was owned by Sonja Williams Ross, the Debtor in this matter. Mr. Alexander paid ShockTheory a sum of money to develop the application after another technology corporation failed to deliver in the time frame contractually agreed-upon. Debtor and ShockTheory unfortunately failed to deliver *any* product to Mr. Alexander and refused to return his funds. To move forward with the project and not lose his potential deal with Delta, Mr. Alexander enlisted a third company not affiliated with these proceedings to develop the application. Despite many rounds of development and discussion over many years, including the signing of a non-disclosure agreement between Craig Alexander and Delta, Delta informed Mr. Alexander that they would not be moving forward with the application and instead released their own version of the application in violation of the non-disclosure agreement and Georgia trade secret laws.

On July 12, 2021, Craig Alexander filed a State Court action against Delta and other co-defendants for misappropriation of trade secrets under the Georgia Trade Secrets Act. As part of these proceedings, Craig Alexander responded to a number of discovery requests from Delta, which requested disclosure of any entity that may have knowledge of his claims. As a former

romantic partner and the mother of his minor child, Debtor fell within that definition, and Alexander listed Debtor's name within his discovery responses. In response, Delta requested documents from Debtor, which in turn informed Debtor of Mr. Alexander's proceedings and his potential for recovery in the State Court matter. Debtor initially claimed thirty percent ownership of Mr. Alexander's application, QrewLive. After her erroneous ownership claims were rebuffed, she filed a Petition to Intervene in the State Court suit, asserting one hundred percent ownership of Mr. Alexander's application under various conflicting and meritless theories – including agency theory and partnership.

All of her claims against all parties have been dismissed from State Court for lack of standing after she filed affidavits on the eve of the motion to dismiss hearings in December 2024 claiming for the first time that QrewLive belonged to one of her companies and not herself personally. *See e.g.,* Attachment 1, December 20, 2024 Order.

The Trustee of Debtor's estate in bankruptcy reopened these proceedings because Debtor never declared any such ownership of QrewLive throughout any of the schedules filed with this Court. As Debtor now finds herself in a precarious situation for failure to declare estate property, of which she had no ownership to begin with, she now wrongfully seeks recovery from Craig Alexander through the filing of this Motion.

The Motion is without merit as, among other things, neither Debtor nor any of company she purports to be involved with ever had any interest in QrewLive and, importantly, Mr. Alexander has not asserted any claims against her. Indeed, it was Debtor who impermissibly sought to intervene in the State Court case. Therefore, Debtor's Motion should be DENIED.

### III.   LAW AND ARGUMENT

Upon the filing of a bankruptcy case, the automatic stay codified in 11 USC § 362(a) is immediately in effect over the bankruptcy estate.[1] The estate includes the property interests specified in 11 USCA § 541(a). "Once the creditors have been notified of the automatic stay, the debtor is not required to take any more action to halt the attempts of creditors to collect on pre-petition debt. The automatic stay requires the creditor to cease any steps to begin or maintain any action against the property of the estate" and is "necessary to permit the debtor breathing space so that she may reorganize her affairs."[2]

A willful violation of an automatic stay "occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay."[3] "The defendant must have actual notice of the stay for the violation to be willful."[4] "When a creditor receives actual notice of the filing of a case, the burden is on the creditor to ensure that the automatic stay is not violated."[5] "However, proof of the defendant's intent to violate the stay is not required, only the defendant's intent to act must be shown. This intent to act can be shown where the defendant, after notice, fails to affirmatively halt actions that will violate the stay."[6]

Craig Alexander has not violated any stay imposed by this Court prior to the closure of these bankruptcy proceedings. The application QrewLive has always been Craig Alexander's property, and Debtor has never possessed any real right to this application. Importantly, Debtor *correctly* declined to list QrewLive as her property in these bankruptcy proceedings because QrewLive was never Debtor's property to declare. Additionally, because QrewLive was never

---

[1] *In re Stephens*, 495 B.R. 608 (Bkrtcy.N.D.Ga.,2013).
[2] *In re Roche*, 361 B.R. 615 (Bkrtcy.N.D.Ga.,2005)
[3] *In re Stephens*, 495 B.R. at 608.
[4] *In re Roche*, 361 B.R.at 615.
[5] *Id.*
[6] *Id.*

formally declared because it was never Debtor's property, Craig Alexander did not have actual notice as a creditor of the bankruptcy estate. Due to lack of actual notice, any alleged violation, which Mr. Alexander firmly denies, cannot be willful. As such, Craig Alexander respectfully requests this Court DENY Debtor's Motion.

### A. Qrewlive is Not Property of the Debtor's Estate.

Debtor states that at the time of the alleged violations, Qrewlive was property of the bankruptcy estate under 11 U.S.C.A § 541, and Mr. Alexander's assertion of ownership in State Court proceedings was a willful violation of the automatic stay. This allegation is patently false as Qrewlive never belonged to Debtor personally or to any of her affiliated companies.

First, 11 USCA § 541 clearly outlines that "[p]roperty of the estate does not include – any power that the debtor may exercise solely for the benefit of an entity other than the debtor…"[7] Mr. Alexander contracted with ShockTheory, a technology company formerly owned by the Debtor, whom he paid to produce an application that was never delivered. Mr. Alexander had no contract with Debtor for the development of this application nor did Debtor purport to develop this application personally. After Debtor intervened in Mr. Alexander's state court suit against Delta, Mr. Alexander filed a Motion to Dismiss against Debtor, to which Debtor responded by producing days before the hearing on the Motion to Dismiss an affidavit declaring that QrewLive was the property of Skyvier, Inc, another of Debtor's companies. Debtor's intervention was dismissed on December 20, 2024, for lack of standing, as Debtor's affidavit made clear that she did not purport to own QrewLive in any personal capacity. For this same reason, because Debtor alleges to be able to exercise power over QrewLive on behalf of Skyvier, Inc. and/or ShockTheory and that

---

[7] 11 USCA § 541(b).

power is not solely for her own personal benefit, QrewLive cannot be property of the bankruptcy estate by the plain meaning of 11 USCA § 541(b).

Additionally, Debtor did not declare QrewLive as property of the estate in the bankruptcy proceedings. Though she now claims to have done so in her Motion, the record of this court makes clear that Debtor's claims are false.[8] Debtor has attempted on multiple occasions to insert herself into Mr. Alexander's affairs following the end of their business and personal relationship, including her Petition for Intervention in Mr. Alexander's State Court proceedings. In doing so, however, Debtor's discharge from bankruptcy proceedings was revoked because "fraudulently failing to report the acquisition of property of the estate post-petition was a bad enough act to warrant...revocation of the discharge, if raised [after the discharge was entered]."[9] It is well established that "[f]ailing to report the acquisition of assets would seriously hinder a Chapter 7 trustee in the exercise of his duty, and would constitute a cardinal sin against the bankruptcy system."[10] By Debtor's own actions in asserting ownership of QrewLive, though she has no such ownership, years after discharge from the bankruptcy proceedings, she has committed a "cardinal sin against the bankruptcy system" and has also discovered a new avenue by which to continue to harass Mr. Alexander following the end of their involvement. Debtor should not be allowed to continue such behavior.

As such, this Court should DENY Debtor's Motion for Willful Violation of the Automatic Stay as QrewLive was never property of Debtor's estate; Debtor's declaration of same in Craig Alexander's State Court proceedings is nothing more than a mere tactic of manipulation and a waste of this Court's time and resources.

---

[8] See Docket Nos. 1, 33, and 105.
[9] *In Matter of Thompson*, 561 B.R. 581, 593 (Bkrtcy.N.D.Ga., 2016).
[10] *Id.*

### B. Craig Alexander Never Received Actual Notice as a Creditor of Debtor's Estate.

Upon filing a petition with the clerk of the bankruptcy court, a debtor is required to file a list of the debtor's creditors, which must include the name and address of each creditor.[11] The Code requires that proper notice of the entry of the order for relief be sent to creditors.[12] To send such notice, the clerk mails Official Form No. 9, entitled Notice of Commencement of Case, to those creditors at the addresses listed by the debtor on the list of creditors, which contains explanations of creditor benefits and, in a Chapter 7 case, advisors creditors not to file a proof of claim unless they receive further notice that requests a claim be filed.[13]

Craig Alexander is not and was never listed as a creditor to Debtor's estate and therefore never received actual notice of Debtor's filing. Although a burden of inquiry is sometimes imposed on a creditor who has actual knowledge of the debtor's case, Mr. Alexander had no such burden here. He is not a creditor that is known to this court and received no actual written notice of the bankruptcy proceeding that would "apprise [him] of the pendency of the action and afford [him] and opportunity to present [his] objections" if any.[14] Moreover, he has no cause of action against Debtor personally for any debt declared to this Court. It is nonsensical to assume that because Mr. Alexander knew of one of Debtor's many bankruptcy proceedings filed in August 2016 – i.e., Case Number 16-64709 – as a result of the stay of his case against her former company, this would constitute sufficient notice under the law of any automatic stay and to what property this stay would apply.

---

[11] 11 USC § 521(a)(1)(A); Fed. R. Bankr. P. 1007(a)(1).
[12] 11 USC § 342(a); Fed. R. Bankr. P. 2002(f).
[13] Fed. R. Bankr. P. 2002.
[14] *In re Simpkins,* 448 B.R. 84 (Bkrtcy.N.D.Ga.,2011) (citing *In re Alton,* 837 F.2d 457 (C.A.11 (Fla.),1988)).

Additionally, it is truly unclear what is meant by the "substantial legal fees" Debtor now claims were incurred due to "defending against Alexander's baseless claims during the automatic stay." Craig Alexander commenced a breach of contract action in 2016 against ShockTheory *prior to* Debtor's bankruptcy petition filing and thus prior to any automatic stay being imposed. Further, Mr. Alexander's claim was stayed due to ShockTheory being declared as property of the estate. Even if Mr. Alexander had attempted to pursue a claim against the estate in his personal capacity to recover the funds paid to Debtor's company, he would not have had standing to do so because his action was not with the Debtor directly. This argument is baseless and has no merit.

Therefore, due to Craig Alexander's lack of actual notice of the automatic stay, there can be no willful violation of that notice. Only actual notice will suffice as proof of willful violation. Debtor has provided no such proof of actual notice, nor is any such notice in the record of these proceedings. As such, Craig Alexander respectfully requests this Court DENY Debtor's Motion for Willful Violation of the Automatic Stay.

### C. Debtor's Requested Damages are Outside of the Allowable Relief Under § 362.

Debtor's claims must also fail because she has not suffered damages as a result of any violation, willful or otherwise. The relief Debtor seeks is excessive and far outside the scope of what is allowable under § 362, including financial harm as a result of defending against Mr. Alexander's "unauthorized litigation," severe emotional harm to include the "stress of defending unauthorized litigation and the exploitation" of her alleged technology, and reputational damage that undermined Debtor's professional credibility and preventing future business opportunities.[15] None of these are provided remedies under § 362 and as such cannot be awarded as part of these proceedings.

---

[15] Docket No. 229, p. 11.

Debtor also provides contradictory requests within her Motion, as she first states that the Motion is narrowly tailored to redress her own personal harms and will not interfere with the Trustee's ability to administer the estate or pursue claims on behalf of the estate.[16] Debtor then seeks compensatory damages for both herself and the bankruptcy estate by requesting the award of legal fees and emotional damages personally and requesting the award of lost licensing revenues of an estimated $10 million annually and avoided development costs of approximately $50 million for the estate.[17] Debtor fails to provide any legal basis or proof for these wildly speculative estimations, but even so, Debtor has no standing to bring claims on behalf of the estate, as this is the responsibility of the Trustee. Further, legal fees and emotional damages are not "actual damages" of a willful violation of an automatic stay under § 362 and are Debtor's attempt to recover the same damages sought in her now-dismissed State Court Action.

Debtor's request for emotional distress damages and punitive damages are also meritless as Debtor failed to provide any connection or proof of emotional distress that would fall within the bounds of the statute and has not demonstrated the level of egregious conduct that could warrant an award of punitive damages. In order to recover actual emotional distress damages, Debtor must establish that she not only suffered significant emotional distress but must also clearly establish the connection between that distress and the alleged violation.[18] No such connection or establishment of the alleged emotional distress has been demonstrated by Debtor, as she claims to have suffered "severe emotional harm" without providing further proof or explanation. Punitive damages are only awarded in situations that involve "egregious, intentional misconduct" or "maliciousness or bad faith."[19] This case does not meet that threshold as Mr. Alexander is not a

---

[16] Docket No. 229, p. 2.
[17] Docket No. 229, p. 24.
[18] *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014).
[19] *In re Roche*, 361 B.R. 615 (Bkrtcy.N.D.Ga.,2005)

creditor to Debtor's estate, Debtor never had ownership interest in QrewLive, and Mr. Alexander was never provided actual notice of the bankruptcy proceedings to establish grounds for a willful violation.

Therefore, as the damages requested by Debtor fall outside the scope of what is allowable under the statute and Debtor has failed to provide the information necessary to indicate any of these damages are warranted, Debtor's Motion should be DENIED.

## IV. CONCLUSION

For the aforementioned reasons, the Court should DENY Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay against Craig Alexander.

Respectfully submitted this 15th Day of January 2025.

THE ELLIS FIRM

Willie C. Ellies, Jr.
Georgia Bar No. 246116
*Attorney for Craig Alexander*

3500 Lenox Road
Suite 1500
Atlanta, Georgia 30326
Telephone: (770) 212-1432
Facsimile: (404) 393-2392
Will@call-ellis.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, January 15, 2025, I hand filed the foregoing *Opposition to Motion for Sanctions for Willful Violation of the Automatic Stay*, and served a copy to the below parties via email:

| | |
|---|---|
| **Sonja N. Ross** | sonja@sonjaross.com |
| | sonja.ross@shocktheory.com |
| **Adriano Omar Iqbal** | adriano.o.iqbal@usdoj.gov |
| **Danielle J. Eliot** | danielle@djelawfirm.com, ecfdjma@gmail.com |
| | R44723@notify.bestcase.com |
| **Thaddeus D. Wilson** | thadwilson@kslaw.com |
| **David L. Balser** | dbalser@kslaw.com |
| **Lawrence A. Slovensky** | lslovensky@kslaw.com |
| **Brian Jenabzadeh** | brianjamont@yahoo.com |
| **Paul R. Knighten** | paul@knightenlawfirm.com |

THE ELLIS FIRM

/s/

Willie C. Ellies, Jr.
Georgia Bar No. 246116
*Attorney for Craig Alexander*

3500 Lenox Road
Suite 1500
Atlanta, Georgia 30326
Telephone: (770) 212-1432
Facsimile: (404) 393-2392
Will@call-ellis.com