Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FEB 1 1 2025

By: _____ 7:46AM
Deputy Clerk

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 19-56304 |
| | : | |
| SONJA WILLIAMS ROSS, | : | CHAPTER 7 |
| Debtor. | : | |

**DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S AMENDED
MOTION FOR RECONSIDERATION AND REQUEST FOR AN EVIDENTIARY
HEARING**

## I. INTRODUCTION

### A. Purpose of This Motion

COMES NOW, Sonja Williams Ross (the "Debtor"), acting pro se, and submits this
Supplemental Brief in support of her Amended Motion for Reconsideration. This Brief is filed to
clarify ongoing legal uncertainties and to seek immediate judicial intervention in response to
continued violations of the automatic stay, the Trustee's failure to administer property of the
estate, and conflicting court rulings that jeopardize QrewLive™'s status as an estate asset.
Without this Court's intervention, the estate will continue to suffer harm from unauthorized use
of QrewLive™ by Delta Air Lines, Inc. ("Delta") and Craig Alexander ("Alexander"), and the
Trustee's failure to act will create further uncertainty regarding property of the estate rights.

The purpose of this Supplemental Brief is to:

- Clarify QrewLive™'s status as property of the estate under 11 U.S.C. § 541(a).
- Address the conflicting Bankruptcy Court rulings that create uncertainty over the
  administration of QrewLive™.
- Establish that the State Court's orders issued after the reopening of the bankruptcy case
  were void ab initio due to violations of the automatic stay under 11 U.S.C. § 362(a).

- Demonstrate Delta's and Alexander's continued unauthorized use of QrewLive™ as a willful violation of the automatic stay, warranting sanctions and injunctive relief under 11 U.S.C. § 362(k).

- Compel the Trustee to either administer or formally abandon QrewLive™ to remove ambiguity over its estate status. If the Trustee fails to act, the Debtor requests derivative standing under *In re Cybergenics Corp.,* 330 F.3d 548 (3d Cir. 2003) to protect the estate's interests.

- Clarify that the automatic stay was never lifted from QrewLive™ as an asset of the bankruptcy estate upon the unwinding of Skyvier, Inc., after its dissolution. Since Skyvier, Inc.'s statutory unwinding period expired while it remained property of the estate, QrewLive™ was never abandoned and remains protected under 11 U.S.C. § 362(a).

- Incorporate the January 2, 2025 (Dkt No. 238) and January 7, 2025 (Dkt No. 244) Amended Schedules, which explicitly include QrewLive™ as part of the bankruptcy estate and remains protected by the automatic stay.

- Acknowledge the Trustee's Report of No Distribution, filed on January 31, 2025, which fails to address QrewLive™ despite the Debtor's Amended Schedules, confirming the Trustee's failure to administer the asset.

- Highlight the February 4, 2025, Amended Schedules (Dkt No. 280), which explicitly include the Delta-drafted NDA (Dkt No. 284, Page 47 of 147 ) that protects QrewLive™ as an estate asset. Despite this, the Trustee has not administered the NDA or taken any action to enforce estate rights, requiring immediate judicial intervention. Delta submitted the NDA as an exhibit during its motion to dismiss against Alexander in the State Court Case.

- Address the Bankruptcy Court's denial of the Debtor's Motion for Clarification of Ownership of QrewLive™ (Dkt No. 279), ruling in Order (Dkt No. 282) that the Trustee's failure to administer QrewLive™ will result in its abandonment under 11 U.S.C. § 554(c) upon case closure, contrary to prior rulings confirming QrewLive™ as property of the estate and in direct violation of fundamental bankruptcy principles. The ruling improperly ignores the Trustee's failure to act and fails to account for the

substantial harm caused by Delta and Alexander's unauthorized use of QrewLive™ since 2016.**

## B. Conflicting Bankruptcy and State Court Orders

The December 12, 2024, Order (Dkt No. 224) explicitly ruled that QrewLive™ was an unadministered and unabandoned estate asset. However, conflicting orders issued after Judge Paul Baisier's recusal have created uncertainty regarding its legal status. These later rulings:

1. Misconstrue the Trustee's failure to act as abandonment, contradicting binding case law.
2. Ignore the automatic transfer of Skyvier, Inc.'s assets into the bankruptcy estate upon its dissolution, which included QrewLive™.
3. Fail to acknowledge that the automatic stay was never lifted from QrewLive™, as it remained property of the estate beyond Skyvier, Inc.'s statutory winding-up period.
4. Fail to acknowledge the Debtor's January 2, 2025 (Dkt No. 238) and January 7, 2025 (Dkt No. 244), Amended Schedules, which explicitly listed QrewLive™ as property of the estate.
5. Fail to address the February 4, 2025 (Dkt No. 280), Amended Schedules, which included the Delta-drafted NDA protecting QrewLive™ as property of the estate.
6. Create a jurisdictional conflict with the State Court, which continued adjudicating issues related to QrewLive™ despite the automatic stay.

The State Court compounded these errors by:

- The State Court exceeded its jurisdiction by issuing orders directly affecting QrewLive™—an estate asset—despite the automatic stay prohibiting such actions under 11 U.S.C. § 362(a). The November 19, 2024, dismissal order was not an independent judicial decision but was adopted verbatim from Delta's proposed order, demonstrating a lack of proper adjudication and disregard for the Bankruptcy Court's exclusive jurisdiction over property of the estate under 28 U.S.C. § 1334(e).
- Issuing an order on December 20, 2024, ruling that the Debtor lacked standing to assert claims over QrewLive™, despite the prior Bankruptcy Court determination that it remained property of the estate.

- Failing to acknowledge the reinstated automatic stay upon reopening of the bankruptcy case, making its rulings legally void.

### C. Delta's Ongoing Stay Violations and Misappropriation of Estate Assets

Delta continues to use, profit from, and incorporate QrewLive™ into its platforms despite:

1. The Bankruptcy Court's determination that QrewLive™ is property of the estate.
2. The Trustee's reappointment to investigate and administer QrewLive™.
3. The automatic stay, which prohibits any act to obtain possession of or exercise control over property of the estate under 11 U.S.C. § 362(a)(3).

These actions constitute knowing and willful violations of the automatic stay, justifying immediate injunctive relief and sanctions under 11 U.S.C. § 362(k).

### D. Trustee's Inaction and Need for Judicial Intervention

Despite the Court's reaffirmation of QrewLive™ as property of the estate, the Chapter 7 Trustee has failed to take any formal action to:

- Administer or list QrewLive™ as an estate asset.
- Administer the Delta-drafted NDA that protects QrewLive™ as an estate asset, which the Debtor explicitly included in her Amended Schedules on February 4, 2025.
- Enforce the automatic stay to prevent further unauthorized use.
- Assess the damages caused by Delta's and Alexander's continued exploitation of QrewLive™.

If the Trustee continues to take no action, the Debtor requests that this Court:

1. Compel the Trustee to administer QrewLive™ within 14 days or formally abandon it under 11 U.S.C. § 554(a).
2. Grant the Debtor derivative standing under *In re Cybergenics Corp.,* 330 F.3d 548 (3d Cir. 2003), to prosecute estate claims against Delta and any other parties unlawfully exploiting QrewLive™.

3. Issue an injunction prohibiting Delta from further using QrewLive™ or deriving revenue from it.

4. Impose sanctions under 11 U.S.C. § 362(k) against Delta and Alexander for their willful violations of the automatic stay.

## II. SKYVIER, INC.'S DISSOLUTION AND WINDING-UP PERIOD IN BANKRUPTCY

### A. Skyvier, Inc.'s Dissolution and the Automatic Transfer of Its Assets into the Bankruptcy Estate

Skyvier, Inc. was administratively dissolved on August 24, 2017. Under O.C.G.A. § 14-2-1405, a dissolved Georgia corporation has two years to wind up its affairs, liquidate assets, and resolve outstanding obligations. Accordingly, Skyvier's statutory winding-up period lasted until August 24, 2019.

The Debtor filed for Chapter 7 bankruptcy on April 23, 2019, while Skyvier's winding-up period was still active. This timing is critical because any assets not distributed by the end of the winding-up period automatically transfer to the appropriate recipient—which, in this case, was the bankruptcy estate under 11 U.S.C. § 541(a).

### 1. Legal Basis for the Automatic Transfer of Skyvier's Assets into the Estate

Under Georgia law, if a dissolved corporation has undistributed assets at the end of its winding-up period, those assets do not simply disappear or remain in limbo. Instead, they either:

- Revert to the corporation's shareholders or owners if no bankruptcy is involved, or
- Transfer to the bankruptcy estate if the corporation's owner has filed for bankruptcy before the expiration of the winding-up period.

Because Skyvier's winding-up period expired on August 24, 2019, while the Debtor's Chapter 7 bankruptcy case was pending, all of Skyvier's undistributed assets—including QrewLive™—automatically transferred to the bankruptcy estate upon expiration of the winding-up period.

Legal Support for the Automatic Transfer of Assets to the Estate:

- O.C.G.A. § 14-2-1405 – Establishes that a dissolved corporation has a two-year period to wind up its affairs, after which any undistributed assets must be transferred.
- 11 U.S.C. § 541(a)(1) – Provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."
- *In re Beaton*, 211 B.R. 755 (Bankr. N.D. Ala. 1997) – Holding that if a corporation dissolves before a bankruptcy filing but still has remaining assets, those assets become part of the bankruptcy estate.
- *In re Steenstra*, 307 B.R. 732 (1st Cir. B.A.P. 2004) – Finding that a dissolved corporation's assets revert to the individual owner only if the winding-up period expires before the bankruptcy is filed.

Thus, because Skyvier's winding-up period expired after the Debtor's Chapter 7 bankruptcy was filed, its remaining assets—including QrewLive™—became property of the estate automatically.

## 2. The Debtor's Bankruptcy Filing Preserved Skyvier's Assets for the Estate

Because the Debtor listed Skyvier, Inc. as a business entity on her bankruptcy schedules (Dkt No. 173 - 9/2/20), the Trustee was placed on notice that Skyvier may have had assets that required administration. The failure to separately schedule QrewLive™ does not negate its estate status, because:

- Skyvier's dissolution and winding-up period were governed by Georgia law, which required undistributed assets to revert to the bankruptcy estate.
- Bankruptcy courts have held that property remains property of the estate unless properly abandoned under 11 U.S.C. § 554(a).
- The December 12, 2024, Order (Dkt No. 224) confirmed that QrewLive™ remains an unadministered and unabandoned asset of the estate.

Relevant Case Law Supporting Estate Status of QrewLive™:

- *In re Yonikus*, 996 F.2d 866 (7th Cir. 1993) – Holding that unscheduled property remains part of the estate indefinitely unless explicitly abandoned.
- *In re Krachun*, 2020 WL 362790 (Bankr. S.D. Ga. 2020) – A trustee's failure to schedule an asset does not remove it from the estate.

- *In re Smith*, 966 F.2d 1527 (7th Cir. 1992) – Holding that a trustee's inaction does not constitute abandonment unless formal abandonment procedures are followed.

### 3. The Automatic Stay Prevents Any Unauthorized Use of Property of the Estate

Since QrewLive™ became property of the estate upon expiration of Skyvier's winding-up period, it remains protected by the automatic stay under 11 U.S.C. § 362(a)(3), which prohibits any act to obtain possession of or exercise control over property of the estate.

Despite this, Delta has continued using QrewLive™ without Court authorization, in clear violation of the automatic stay. The December 12, 2024, Order (Dkt No. 224) confirmed that QrewLive™ remains an estate asset, meaning any use of it without Trustee or Court approval is unlawful. Given these circumstances, the Court must reaffirm that QrewLive™ remains property of the estate and is subject to the automatic stay.

### B. The Bankruptcy Estate's Interest in Skyvier's Assets

Since QrewLive™ was an asset of Skyvier, Inc., and Skyvier's assets automatically transferred to the bankruptcy estate upon the expiration of its winding-up period, QrewLive™ has been property of the estate since August 24, 2019.

Neither the Debtor nor the Chapter 7 Trustee formally scheduled, administered, or abandoned QrewLive™, which means it remains property of the estate today. The automatic stay under 11 U.S.C. § 362(a) applies to QrewLive™, preventing any unauthorized use, transfer, or control of the asset without Bankruptcy Court approval.

Legal Basis for Property Estate Property Status:

- O.C.G.A. § 14-2-1405(c) and 11 U.S.C. § 541(a) – Establish that a dissolved corporation's assets become property of the estate upon the expiration of the winding-up period.
- *In re Mahendra*, 131 F.3d 750, 755 (8th Cir. 1997) – The scope of property of the estate is extremely broad and includes property the debtor is entitled to receive without further action.

- *In re Potter*, 228 B.R. 422 (8th Cir. B.A.P. 1999) – Confirming that property of the estate includes assets not yet received by the debtor but to which the debtor had an automatic right upon a triggering event.

Because Skyvier's winding-up period expired while the Debtor's Chapter 7 case was pending, its assets—including QrewLive™—automatically transferred to the bankruptcy estate under 11 U.S.C. § 541(a).

- The Trustee's failure to schedule or administer QrewLive™ does not negate its estate status.
- The automatic stay under 11 U.S.C. § 362(a) protects QrewLive™ from unauthorized use.
- Delta's continued use of QrewLive™ constitutes an unauthorized exercise of control over property of the estate, violating 11 U.S.C. § 362(a)(3).

**E. Relief Requested**

The Trustee's continued failure to act creates ongoing legal uncertainty, necessitating immediate judicial intervention. Accordingly, the Debtor respectfully requests that this Court order the Trustee to take one of the following actions within 14 days of this Court's ruling:

1. Schedule and administer QrewLive™ as an estate asset, conducting a full investigation into:
    - The value of the asset as part of the bankruptcy estate.
    - Delta's unauthorized use of QrewLive™ and any potential claims arising from its misappropriation.
2. Formally abandon QrewLive™ under 11 U.S.C. § 554(a) so that the Debtor may pursue legal claims on behalf of the estate without further delay.
3. If the Trustee fails to act, the Debtor requests that this Court grant derivative standing under In re Cybergenics Corp., 330 F.3d 548 (3d Cir. 2003), allowing the Debtor to prosecute estate claims related to QrewLive™ and enforce rights against unauthorized third-party users, including Delta.

Because QrewLive™ remains property of the estate due to the expiration of Skyvier's winding-up period while the Chapter 7 case was pending, the Debtor further requests that this Court:

4. Reaffirm that QrewLive™ remains property of the estate under 11 U.S.C. § 541(a) due to its automatic transfer into the estate upon the expiration of Skyvier's winding-up period.

5. Declare that QrewLive™ was never abandoned because:
   o The Trustee never scheduled or administered QrewLive™.
   o No formal abandonment order was entered under 11 U.S.C. § 554(a).

6. Confirm that the automatic stay under 11 U.S.C. § 362(a)(3) remains in effect and applies to QrewLive™, preventing:
   o Delta from continuing its unauthorized use of QrewLive™.
   o Any other third-party claims that would interfere with the estate's interest in QrewLive™.

7. Order the Trustee to administer or formally abandon QrewLive™ within 14 days to remove ongoing legal uncertainty and ensure the estate's rights are protected.

8. If the Trustee fails to act, grant the Debtor derivative standing under *In re Cybergenics Corp.,* allowing her to pursue estate claims for trade secret misappropriation, breach of contract, and unauthorized use of QrewLive™.

## III. CONFLICTING BANKRUPTCY AND STATE COURT ORDERS

The conflicting rulings from the Bankruptcy Court and the State Court have created legal uncertainty and resulted in violations of the automatic stay under 11 U.S.C. § 362(a). This section will outline the key rulings, the contradictions between them, and how they impact QrewLive™'s status as an estate asset.

### A. The December 12, 2024, Order Confirming QrewLive™ as Property of the Estate

On December 12, 2024, the Bankruptcy Court issued an order (Dkt No. 224) confirming that QrewLive™ remains an unadministered and unabandoned estate asset under 11 U.S.C. § 541(a). This ruling:

- Recognized that QrewLive™ was never abandoned by the Trustee and remains protected by the automatic stay under 11 U.S.C. § 362(a)(3).
- Directed the Trustee to investigate and administer QrewLive™ as property of the estate.
- Undermined any argument that QrewLive™ was no longer part of the estate, establishing that any further litigation involving QrewLive™ outside of Bankruptcy Court violates the automatic stay.

Despite this clear ruling, subsequent conflicting Bankruptcy Court orders and State Court rulings have undermined the December 12, 2024, Order, necessitating judicial intervention.

**B. Conflicting Bankruptcy Court Orders Following Judge Baisier's Recusal**

After Judge Paul Baisier's recusal, newly assigned Judge Sage M. Sigler issued conflicting rulings that:

1. Misinterpreted the Trustee's failure to act as abandonment—contradicting the prior ruling that QrewLive™ was an unadministered and unabandoned asset.
2. Ignored the automatic stay—by suggesting that QrewLive™ would be abandoned upon case closure, despite the Trustee's failure to formally administer or abandon it under 11 U.S.C. § 554(a).
3. Contradicted the December 12, 2024, Order (Dkt No. 224)—by failing to uphold the prior determination that QrewLive™ remains property of the estate.

Specifically, the following rulings created legal uncertainty:

- Dkt No. 277, 278, and 282: These orders failed to recognize that QrewLive™'s status as an estate asset had already been affirmed.
- Dkt No. 282 (February 5, 2025): Denied the Debtor's Motion for Clarification of Ownership of QrewLive™ (Dkt No. 279), ruling that the Trustee's failure to administer QrewLive™ would result in its abandonment upon case closure under 11 U.S.C. § 554(c).
  - This ruling is inconsistent with bankruptcy law because an asset cannot be deemed abandoned when it was never formally scheduled, administered, or abandoned through court approval.

- o The order failed to account for Delta and Alexander's continued unauthorized use of QrewLive™ since 2016, which has caused ongoing harm to the estate.

These rulings improperly disregard the Trustee's duty to administer property of the estate and fail to uphold the protections of the automatic stay.

### C. The State Court's Improper Exercise of Jurisdiction Over QrewLive™

Despite QrewLive™ being confirmed as an estate asset by the Bankruptcy Court, the State Court improperly exercised jurisdiction over the asset, issuing multiple rulings that violate the automatic stay under 11 U.S.C. § 362(a).

### 1. November 19, 2024 – State Court's Dismissal of Debtor's Claims

- The State Court dismissed the Debtor's claims against Delta and Alexander, adopting verbatim a dismissal order drafted by Delta.
- This order was issued despite the pending bankruptcy proceedings and the automatic stay protecting QrewLive™.
- The ruling is procedurally defective because the State Court lacked jurisdiction to adjudicate matters involving property of the estate.

### 2. December 20, 2024 – State Court's Ruling on Debtor's Standing

- The State Court ruled that the Debtor lacked standing to assert claims over QrewLive™.
- This ruling ignored the December 12, 2024, Bankruptcy Court Order (Dkt No. 224), which confirmed that QrewLive™ remains property of the estate.
- By issuing this order, the State Court directly violated the automatic stay.

### 3. Legal Argument: State Court Rulings Are Void Ab Initio

Under 11 U.S.C. § 362(a)(3), any act to obtain possession of or exercise control over property of the estate is automatically stayed.

- Since QrewLive™ was confirmed as an estate asset on December 12, 2024 (Dkt No. 224), the State Court had no authority to rule on it.

- Any rulings affecting QrewLive™ were issued in violation of the automatic stay and are therefore void ab initio under well-established case law.

Relevant Case Law Supporting the Void Nature of These Rulings:

- *Kalb v. Feuerstein*, 308 U.S. 433 (1940) – A state court lacks jurisdiction over bankruptcy matters and its rulings are void if they violate the automatic stay.
- *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992) – Actions taken in violation of the automatic stay are void, not merely voidable.
- *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) – Federal bankruptcy jurisdiction supersedes conflicting state court rulings.

Accordingly, the State Court orders of November 19, 2024, and December 20, 2024, must be declared void ab initio.

**D. Judicial Relief Requested to Resolve These Conflicts**

Given the conflicting rulings and legal uncertainty, the Debtor respectfully requests that this Court:

1. Reaffirm the December 12, 2024, Order (Dkt No. 224) confirming QrewLive™ as property of the estate.
2. Declare that the February 5, 2025, Order (Dkt No. 282) improperly ignored the Trustee's failure to act and contradicted the prior ruling affirming QrewLive™'s estate status.
3. Hold that the November 19, 2024 (Dkt No. 286-3, Page 2), and December 20, 2024 (Dkt No. 286-6, Page 2), State Court rulings are void ab initio for violating the automatic stay under 11 U.S.C. § 362(a)(3).
4. Issue an injunction barring further unauthorized litigation over QrewLive™ in State Court.
5. Sanction Delta and Alexander for willful violations of the automatic stay.

These actions are necessary to:

- Ensure compliance with prior Bankruptcy Court rulings.
- Enforce the automatic stay.

- Prevent further jurisdictional overreach by the State Court.
- Protect the estate's interest in QrewLive™.

The conflicting rulings from the Bankruptcy Court and the State Court have allowed Delta to exploit this legal uncertainty to its advantage. Despite clear rulings affirming QrewLive™ as property of the estate, Delta has continued to use and commercialize the asset without authorization. The following section details Delta's willful violations of the automatic stay and the necessity for immediate judicial intervention.

## IV. DELTA'S ONGOING STAY VIOLATIONS AND UNAUTHORIZED USE OF QREWLIVE™

Delta has continued to exploit and use QrewLive™ without Bankruptcy Court approval, despite QrewLive™ being confirmed as property of the estate in the December 12, 2024, Order (Dkt No. 224). Delta's actions constitute knowing and willful violations of the automatic stay under 11 U.S.C. § 362(a)(3).

This section will demonstrate:

1. How Delta continues to use QrewLive™ despite Bankruptcy Court rulings.
2. The legal basis for automatic stay violations under 11 U.S.C. § 362(a).
3. Judicial estoppel against Delta's contradictory positions.
4. The necessity for an injunction and sanctions against Delta.

### A. Delta's Continued Use of QrewLive™ in Violation of the Automatic Stay

Delta cannot claim ignorance of the automatic stay, as it has been aware of the Debtor's bankruptcy case since at least February 2023, per its own legal filings. Delta actively participated in State Court litigation referencing the bankruptcy and acknowledged the NDA's relevance to QrewLive™ in that proceeding. Despite this, Delta has continued to profit from and incorporate QrewLive™ into its platforms, in direct violation of 11 U.S.C. § 362(a)(3).

- In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999) – Holding that a creditor cannot avoid sanctions by claiming ignorance of the stay when they had actual or constructive knowledge of the bankruptcy case.

Delta has knowingly and willfully violated the automatic stay by continuing to use and profit from QrewLive™ in its platforms. Delta had actual knowledge of the Debtor's bankruptcy case as early as February 2023, based on its own filings in the State Court litigation. Despite this knowledge, Delta continued using QrewLive™ in direct violation of 11 U.S.C. § 362(a)(3). Under well-established case law, willful violations of the automatic stay justify not only compensatory damages but also punitive sanctions. See *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003) (punitive damages warranted where creditor's violation of the stay was reckless and intentional); *In re Ramirez*, 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995) (sanctions appropriate where creditor had notice of the stay and proceeded with unauthorized actions regardless). Courts have consistently held that intentional violations of the stay warrant injunctive relief and sanctions, including punitive damages where the conduct is egregious. See *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003) (holding that punitive damages may be imposed where a party's stay violation is willful and demonstrates reckless disregard for bankruptcy protections); *In re Sharon*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999) (creditor's continued use of property of the estate without authorization constituted a knowing violation of § 362(a), justifying injunctive relief and monetary sanctions). The December 12, 2024, Order (Dkt No. 224) explicitly confirmed that:

- QrewLive™ remains an unadministered and unabandoned estate asset under 11 U.S.C. § 541(a).
- Any unauthorized use of QrewLive™ constitutes an automatic stay violation under 11 U.S.C. § 362(a)(3).
- The Trustee was ordered to investigate and administer QrewLive™.

Despite this ruling, Delta has:

1. Continued integrating QrewLive™ into its commercial platforms without obtaining Bankruptcy Court approval.
2. Opposed the Debtor's motions while still using QrewLive™, further violating the automatic stay and bankruptcy protections.
3. Denied in Bankruptcy Court that QrewLive™ is an estate asset while simultaneously benefiting from QrewLive™ in its business operations.

Delta's actions constitute willful violations of the automatic stay and warrant injunctive relief and sanctions under 11 U.S.C. § 362(k).

**B. Legal Basis for Automatic Stay Violations Under 11 U.S.C. § 362(a)(3)**

Under 11 U.S.C. § 362(a)(3), the automatic stay prohibits any act to obtain possession of or exercise control over property of the estate without court approval.

Delta's continued use of QrewLive™ violates the automatic stay because:

- QrewLive™ was confirmed as property of the estate (Dkt No. 224), meaning Delta had no right to use or control it without Bankruptcy Court approval.
- Delta's actions directly interfere with the administration of the bankruptcy estate, violating the core protections of 11 U.S.C. § 362(a)(3).

Case Law Supporting Stay Violations

Courts have consistently held that any unauthorized use or control over property of the estate constitutes a stay violation:

- *In re Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996) – Holding that actions taken in violation of the stay are automatically void.
- *In re Krystal Cadillac*, 337 B.R. 135 (Bankr. E.D. Pa. 2006) – Establishing that continued use of an estate asset without approval constitutes a willful violation of the automatic stay.
- *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) – Confirming that state court actions taken in violation of the automatic stay are void ab initio.

Accordingly, Delta's unauthorized use of QrewLive™ is unlawful and warrants immediate judicial intervention.

**C. Judicial Estoppel Against Delta's Contradictory Positions**

Delta has taken inconsistent legal positions in separate courts, attempting to disavow QrewLive™ in Bankruptcy Court while relying on it in State Court.

1. In State Court: Delta argued that the NDA protects QrewLive™ and precludes Craig Alexander's claims.
2. In Bankruptcy Court: Delta denied that QrewLive™ remains property of the estate and attempted to prevent the Debtor from enforcing her rights.

This contradiction supports applying judicial estoppel, preventing Delta from taking inconsistent positions in different courts to manipulate legal outcomes.

### Legal Precedent for Judicial Estoppel

- *New Hampshire v. Maine*, 532 U.S. 742 (2001) – Holding that a party cannot assert contradictory positions in separate courts to gain an unfair advantage.
- *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) – Establishing that judicial estoppel applies when a party's inconsistent statements are intended to mislead the court.
- *In re Kane*, 628 F.3d 631 (3d Cir. 2010) – Confirming that courts have the authority to estop parties from asserting contradictory legal positions in separate proceedings.

Since Delta has used QrewLive™ to its advantage while simultaneously denying its estate status, judicial estoppel should bar Delta from contesting QrewLive™'s estate status in Bankruptcy Court.

### D. Injunctive Relief and Sanctions Against Delta

Given Delta's intentional and profitable exploitation of QrewLive™, sanctions under 11 U.S.C. § 362(k) are necessary. Delta has repeatedly ignored Bankruptcy Court rulings confirming QrewLive™ as property of the estate and has continued unauthorized use of QrewLive™, despite having actual knowledge of the automatic stay. Courts have held that monetary sanctions are necessary to deter creditors from blatantly disregarding bankruptcy protections.

Accordingly, the Debtor respectfully requests that this Court:

1. Issue an injunction prohibiting Delta from any further use, modification, or commercial exploitation of QrewLive™.
2. Declare that Delta's continued use of QrewLive™ constitutes a willful stay violation under 11 U.S.C. § 362(a)(3).

3. Impose sanctions under 11 U.S.C. § 362(k), including:
   o Compensatory damages for financial losses caused by Delta's continued unauthorized exploitation of QrewLive™.
   o Attorney's fees and costs associated with enforcing the automatic stay.
   o Punitive damages due to Delta's knowing and intentional violations.

Supporting Case Law for Stay Violations & Sanctions

- *In re Ramirez*, 183 B.R. 583 (9th Cir. B.A.P. 1995) – Holding that actual damages, attorney's fees, and punitive damages are appropriate for willful violations of the automatic stay.
- *In re Snowden*, 769 F.3d 651 (9th Cir. 2014) – Confirming that compensatory and punitive damages are necessary to deter willful violations of the automatic stay.
- *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) – Establishing that punitive damages may be awarded for egregious conduct that disregards bankruptcy protections.
- *In re Eskanos & Adler, P.C.*, 309 F.3d 1210 (9th Cir. 2002) – Holding that violations of the stay warrant immediate corrective actions and monetary sanctions..

**E. Relief Requested**

To remedy Delta's ongoing stay violations, the Debtor respectfully requests that this Court:

1. Declare that Delta has willfully violated the automatic stay under 11 U.S.C. § 362(a)(3).
2. Issue an injunction barring Delta from any further use, distribution, or modification of QrewLive™.
3. Impose sanctions under 11 U.S.C. § 362(k), including compensatory damages, attorney's fees, and punitive damages.
4. Apply judicial estoppel to bar Delta from contesting QrewLive™'s estate status in Bankruptcy Court.
5. Schedule an evidentiary hearing to determine the full extent of Delta's stay violations and the appropriate remedies.

These measures are necessary to:

- Enforce the automatic stay.
- Prevent Delta from continuing to exploit property of the estate.
- Hold Delta accountable for its violations.

## V. THE TRUSTEE'S INACTION AND THE NEED FOR JUDICIAL INTERVENTION

The Chapter 7 Trustee has failed to act despite being ordered by the Bankruptcy Court on December 12, 2024 (Dkt No. 224), to administer QrewLive™ as an estate asset. This failure has:

1. Allowed Delta to continue using QrewLive™ without authorization, violating the automatic stay.
2. Created legal uncertainty, leading to conflicting court rulings.
3. Hindered the enforcement of property of the estate rights, leaving QrewLive™ unprotected.
4. Failed to recognize that the Debtor properly exempted QrewLive™ and the NDA, requiring Trustee action.

The Trustee's inaction necessitates immediate judicial intervention to enforce the automatic stay and ensure QrewLive™ is properly administered or abandoned.

### A. The Trustee's Failure to Administer QrewLive™ and the Delta-Drafted NDA

Initially, the former Chapter 7 Trustee, William J. Layng, Jr., was responsible for administering the Debtor's Chapter 7 case. However, upon reopening of the case, S. Gregory Hays was appointed as the new Chapter 7 Trustee to administer the estate. While certain administrative failures predated the appointment of Trustee Hays, the ongoing failure to administer QrewLive™ or seek abandonment under 11 U.S.C. § 554(a) has persisted under his tenure.

This failure to act has created unnecessary legal uncertainty and enabled Delta to continue unauthorized use of property of the estate in violation of 11 U.S.C. § 362(a)(3).

The Debtor does not seek to assign blame to any individual Trustee but rather requests that the Court clarify the estate status of QrewLive™ and enforce the automatic stay to prevent continued harm.

The Trustee had an affirmative duty under 11 U.S.C. § 704(a)(1) to collect and evaluate all property of the estate, regardless of exemption status, and determine whether it should be administered, abandoned, or retained in the estate. The Trustee failed to take any action regarding QrewLive™, leading to continued uncertainty.

Recognizing this issue, the Debtor took corrective action by amending her schedules:

- January 2, 2025 (Dkt No. 238), explicitly listing QrewLive™ as property of the estate.
- January 7, 2025 (Dkt No. 244), confirming QrewLive™ remains unadministered.
- February 4, 2025 (Dkt No. 280), explicitly listing the Delta-drafted NDA protecting QrewLive™ as a confidential asset.

Despite these amendments, the Trustee failed to act, leaving QrewLive™ in legal limbo and enabling Delta's unauthorized use of property of the estate in violation of 11 U.S.C. § 362(a)(3).

### B. The Trustee's Report of No Distribution and Its Legal Implications

On January 31, 2025, Trustee S. Gregory Hays posted a Report of No Distribution, stating that there were no non-exempt assets available for distribution and requesting a discharge from further duties. However, this report:

1. Failed to acknowledge QrewLive™ as an estate asset, despite its inclusion in Amended Schedules filed on January 2, 2025 (Dkt No. 238) and January 7, 2025 (Dkt No. 244).
2. Did not recognize that QrewLive™ was properly exempted, requiring either administration or abandonment.
3. Was filed before the Debtor amended her schedules again on February 4, 2025 (Dkt No. 280) to include the Delta-drafted NDA, meaning the Trustee never reviewed its estate significance.

Since the Trustee has neither administered nor abandoned QrewLive™, the automatic stay remains in effect, and Delta's continued use is unlawful.

### C. The Trustee's Failure to Enforce the Automatic Stay

Because the Trustee has not enforced the automatic stay, Delta has been allowed to:

- Continue using QrewLive™ without Bankruptcy Court approval.
- Defend its use of QrewLive™ in multiple legal proceedings.
- Ignore the December 12, 2024, Order confirming QrewLive™ as property of the estate

By failing to enforce the automatic stay, the Trustee has enabled continued violations under 11 U.S.C. § 362(a)(3).

Case Law Supporting the Trustee's Obligation to Act

- *In re Smith*, 966 F.2d 1527 (7th Cir. 1992) – A Trustee's inaction does not constitute abandonment unless formal abandonment procedures under 11 U.S.C. § 554(a) are followed.
- *In re Beaton*, 211 B.R. 755 (Bankr. N.D. Ala. 1997) – A Trustee cannot unilaterally choose to ignore property of the estate.

Since the Trustee has neither administered nor abandoned QrewLive™, the automatic stay remains in effect, and Delta's continued use is unlawful.

**D. Request for Derivative Standing if Trustee Fails to Act**

If the Trustee fails to take action within 14 days, the Debtor requests that this Court grant her derivative standing under *In re Cybergenics Corp.,* 330 F.3d 548 (3d Cir. 2003), allowing the Debtor to:

1. Pursue estate claims for trade secret misappropriation against Delta.
2. Seek damages for Delta's unauthorized use of QrewLive™.
3. Enforce the automatic stay on behalf of the bankruptcy estate.

Legal Basis for Derivative Standing

- *In re Cybergenics Corp.,* 330 F.3d 548 (3d Cir. 2003) – When a Trustee refuses to act, a debtor or creditor may be granted derivative standing to pursue claims on behalf of the estate.
- *In re Racing Services, Inc.,* 540 F.3d 892 (8th Cir. 2008) – Derivative standing is appropriate when a Trustee neglects their duty to protect property of the estate.

Since the Trustee has ignored QrewLive™ as an estate asset, derivative standing is necessary to protect the estate's rights.

**E. Relief Requested**

Given the Trustee's inaction, the Debtor respectfully requests that this Court:

1. Compel the Trustee to administer or formally abandon QrewLive™ within 14 days.
2. Issue an injunction prohibiting Delta from further use or exploitation of QrewLive™.
3. Declare that QrewLive™ remains property of the estate under 11 U.S.C. § 541(a).
4. Confirm that the automatic stay under 11 U.S.C. § 362(a)(3) remains in effect and prohibits unauthorized use of QrewLive™.
5. If the Trustee fails to act, grant the Debtor derivative standing under In re Cybergenics Corp. to pursue estate claims against Delta.
6. Schedule an evidentiary hearing to determine the full scope of the Trustee's failure to administer QrewLive™ and Delta's stay violations.

These measures are necessary to:

- Ensure the estate's rights are enforced.
- Prevent Delta from continuing to exploit QrewLive™.
- Hold the Trustee accountable for their failure to act.

Given the Trustee's inaction, failure to administer QrewLive™, and continued violations of the automatic stay, judicial intervention is necessary. The Court must now consider the full scope of the relief requested in Section VI to protect the estate and prevent further harm.

**VI. RELIEF REQUESTED**

For the reasons set forth in this Supplemental Brief, the Debtor respectfully requests that this Court grant the following relief to address:

1. The ongoing violations of the automatic stay under 11 U.S.C. § 362(a)(3).
2. The Trustee's failure to act under 11 U.S.C. § 704(a)(1).
3. The conflicting rulings affecting QrewLive™'s estate status.

**A. Enforcing the Bankruptcy Court's Prior Rulings**

The Debtor requests that this Court:

1.  Reaffirm the December 12, 2024, Order (Dkt No. 224), confirming that QrewLive™ remains an unadministered and unabandoned estate asset under 11 U.S.C. § 541(a).

2.  Declare that QrewLive™ has not been formally abandoned under 11 U.S.C. § 554(a), and the Trustee's failure to act does not satisfy the legal requirements for abandonment under § 554(c).

3.  Confirm that QrewLive™ remains property of the estate under 11 U.S.C. § 541(a) and is protected by the automatic stay under 11 U.S.C. § 362(a)(3), prohibiting any unauthorized use, control, or disposition of the asset.

**B. Declaring the State Court Orders Void Ab Initio**

The Debtor requests that this Court:

4.  Declare that the November 19, 2024 (Dkt No. 236-3, Page 2), and December 20, 2024 (Dkt No. 236-6, Page 2), State Court rulings are void ab initio because they were issued in violation of the automatic stay under 11 U.S.C. § 362(a).

5.  Issue an injunction preventing any further litigation over QrewLive™ in State Court unless expressly authorized by the Bankruptcy Court.

**C. Injunctive Relief Against Delta**

The Debtor requests that this Court:

6.  Issue an injunction under 11 U.S.C. § 105(a) and § 362(a)(3), prohibiting Delta from any further unauthorized use, exploitation, disclosure, or modification of QrewLive™ without Bankruptcy Court approval.

7.  Compel Delta to provide a full accounting of its use of QrewLive™ since 2016, including profits derived from its unauthorized use and any modifications made to QrewLive™.

**D. Sanctions for Delta's Willful Violations of the Automatic Stay**

The Debtor requests that this Court:

8. Declare that Delta's continued use of QrewLive™ constitutes a willful violation of the automatic stay under 11 U.S.C. § 362(a)(3).
9. Impose sanctions against Delta under 11 U.S.C. § 362(k), including:
   - Compensatory damages for financial losses caused by Delta's continued misappropriation of QrewLive™.
   - Attorney's fees and costs associated with enforcing the automatic stay.
   - Punitive damages to deter further violations and penalize Delta's knowing and intentional disregard of bankruptcy protections.

**E. Compelling the Trustee to Act**

The Debtor requests that this Court:

10. Order the Trustee to either administer or formally abandon QrewLive™ within 14 days.
11. If the Trustee fails to act, grant the Debtor derivative standing under *In re Cybergenics Corp.,* 330 F.3d 548 (3d Cir. 2003), to enforce estate claims against Delta.

**F. Scheduling an Evidentiary Hearing**

The Debtor requests that this Court schedule an evidentiary hearing to resolve the following key issues affecting estate administration and enforcement of the automatic stay:

- The full extent of Delta's unauthorized use, modification, and commercialization of QrewLive™.
- The financial harm suffered by the estate due to Delta's continued misappropriation.
- The Trustee's failure to investigate, administer, or take legal action to protect QrewLive™.
- The necessity of sanctions, injunctive relief, and derivative standing to ensure estate rights are enforced.

The automatic stay is one of the fundamental protections of bankruptcy law. The continued violations by Delta and the Trustee's failure to act have resulted in significant harm to the estate and legal uncertainty regarding QrewLive™.

For these reasons, the Debtor respectfully requests that this Court grant the relief outlined above, ensuring that:

- QrewLive™ remains protected as an estate asset.
- The automatic stay is properly enforced.
- Delta is held accountable for its willful violations.
- The Trustee either administers or abandons QrewLive™ within 14 days.
- Derivative standing is granted if the Trustee continues to fail in their duties.

Respectfully submitted on this 11th Day of February 2025.


Sonja Williams Ross
Debtor, Pro Se


Sonja Williams Ross, Debtor
Po Box 3930
Alpharetta Ga 30023
Tel: (210) 960-6898
Sonja.Ross@Shocktheory.com

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | **CASE NO. 19-56304** |
| | : | |
| **SONJA WILLIAMS ROSS,** | : | **CHAPTER 7** |
| Debtor. | : | |

## CERTIFICATE OF SERVICE

    This is to certify that I have on this day emailed the foregoing **DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S AMENDED MOTION FOR RECONSIDERATION AND REQUEST FOR AN EVIDENTIARY HEARING,** this document in this case and parties of interest.

**S. Gregory Hays**
Hays Financial Consulting, LLC
2964 Peachtree Road. Ste 555
Atlanta, GA 30305
(404) 926-0060
(404) 926-0055 (fax)
ghays@haysconsulting.net

Chapter 7 Trustee

**Thaddeus D. Wilson**
King & Spalding LLP
1180 Peachtree St NE
Suite 1600
Atlanta, GA 30309
404-572-4842
404-572-5135 (fax)
thadwilson@kslaw.com

**David S. Weidenbaum**
Office of the United States Trustee 362 Richard B. Russell Building 75 Ted Turner Drive, SW
Atlanta, GA 30303
david.s.weidenbaum@usdoj.gov

**Adriano Omar Iqbal**
adriano.o.iqbal@usdoj.gov
Office of the United States Trustee

**Gregory D. Ellis**
Lamberth, Cifelli, Ellis & Nason,
6000 Lake Forrest Drive, N.W. Ste 290
Atlanta, GA 30328
404-495-4485
404-262-9911 (fax)
gellis@lcenlaw.com

Richard Waddington richard@chandler-law.net

Counsel for
Delta Air Lines, Inc.

**Willie Ellis, Jr.**
The Ellis Firm
3500 Lenox Road
Suite 1500
Atlanta, Georgia 30326
(770) 212-1432
(404) 393-2392
Will@call-ellis.com

Counsel for Defendant Craig A.
Alexander

Counsel for Mike Rafi

**Germaine Austin**
Beliesol Legal LLC
1424 Westboro Drive SW
Atlanta, Georgia 30310
(404) 863-7620
(470) 751-8805
Germaine@Beliesol.com

Counsel for Defendant Craig A. ALexander

Respectfully submitted on this 10th Day of February 2025

Sonja Williams Ross
Debtor, Pro Se

Sonja Williams Ross, Debtor
Po Box 3930
Alpharetta Ga 30023
Tel: (210) 960-6898
Sonja.Ross@Shocktheory.com